## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| LESLEY LAMARCHE, *et al.*, | Case No. 3:23-cv-30029-MGM |
| *Plaintiffs*, | HON. J. MARK D. MASTROIANNI |
| v. | |
| ALEJANDRO MAYORKAS, *et al*., | |
| *Defendants*. | |

## DEFENDANTS' MOTION TO DISMISS PURSUANT TO
## FED. R. CIV. P. 12(B)(1) AND (6)

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney General*
Civil Division

WILLIAM C. PEACHEY
*Director*
Office of Immigration Litigation
District Court Section

YAMILETH G. DAVILA
*Assistant Director*

ALEXANDER J. HALASKA
*Senior Litigation Counsel*

*/s/ Sergio Sarkany*
SERGIO SARKANY
*Trial Attorney* (CA Bar #223584)
United States Department of Justice Civil
Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Benjamin Franklin Station
Washington, D.C. 20044
202-598-5624 | sergio.f.sarkany@usdoj.gov

## INTRODUCTION

Except for a single immediate family member, Plaintiffs are petitioners for, and beneficiaries of, pending requests for parole filed with U.S. Citizenship and Immigration Services (USCIS). If granted, parole may allow Plaintiff beneficiaries, all of whom reside in Afghanistan, to temporarily enter the United States. Plaintiffs claim that under the Administrative Procedure Act (APA), USCIS has unlawfully withheld or unreasonably delayed adjudication of their pending requests. Plaintiffs ask the Court to order USCIS to adjudicate their parole requests under a standard that allegedly applied as of August 31, 2021—the day the United States completed its withdrawal from Afghanistan and officially suspended operations at U.S. Embassy Kabul.

Defendants are acutely aware of the humanitarian crisis in Afghanistan and have worked diligently to assist Afghan nationals eligible for temporary parole into the United States. But that crisis does not provide Plaintiffs with a cause of action. Federal Rule of Civil Procedure 12(b)(1) mandates that Plaintiffs' claims be dismissed because they are not subject to judicial review. Specifically, Plaintiffs' APA claims are nonjusticiable because a separate statute precludes review of decisions and actions related to parole and parole is expressly committed to the Department of Homeland Security (DHS)discretion by statute. Additionally, because USCIS has acted on five parole requests at issue in this case since Plaintiffs filed their complaint, claims related to those requests should be dismissed as moot. Dismissal under Rule 12(b)(6) is also proper because USCIS, has no duty to adjudicate parole requests such as those submitted by Plaintiffs, much less decide them within a fixed period. Plaintiffs also fail to state a legally cognizable claim that would permit the court to compel USCIS to immediately adjudicate their parole requests. Thus, the Complaint should be dismissed in its entirety.

## LEGAL BACKGROUND

Plaintiffs challenge the pace and standards under which USCIS is processing their requests for "humanitarian parole," which is a term that generally refers to the parole authority vested with the Secretary of Homeland Security (Secretary) under 8 U.S.C. § 1182(d)(5)(A). This statute provides that "[t]he [Secretary][1] may . . . in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States . . . ." 8 U.S.C. § 1182(d)(5)(A)[2]; *see also* 8 C.F.R. § 212.5 (implementing regulation). Parole allows a recipient to enter and remain in the United States for a set period but does not confer immigration status. *See* 8 U.S.C. § 1182(d)(5)(A); *see also Humanitarian or Significant Public Benefit Parole for Individuals Outside the United States*, USCIS (last updated May 2, 2023), https://www.uscis.gov/humanitarian/humanitarianpublicbenefitparoleindividuals outsideUS (Parole Request Website) (explaining general eligibility and process for parole); *Giragosian v. Ryan*, 547 F.3d 59, 65 (1st Cir. 2008 (on a motion to dismiss, courts may consider "documents incorporated by reference in [the complaint], matters of public record, and other matters susceptible to judicial notice") (internal citation omitted).

Although no statute or regulation requires USCIS to consider requests for § 1182(d)(5)(A) parole, USCIS allows anyone to file a Form I-131, Application for Travel Document, to request parole for themselves or for someone outside the United States. USCIS's Humanitarian Affairs Branch (HAB) officers adjudicate parole requests filed on behalf of

---

[1] Although the statute refers to the Attorney General, in 2002, Congress transferred enforcement of immigration laws to the Secretary of Homeland Security ("Secretary") under the Homeland Security Act of 2002, Pub. L. No. 107-296, § 402, 116 Stat. 2135, 2178 (2002).

[2] The Secretary's discretion to parole is delegated to his designees, including USCIS. *See* 8 C.F.R. Section 212.5(a).

individuals located outside the United States which are in USCIS' jurisdiction, like those filed by Plaintiffs. USCIS individually considers each request and any supporting evidence on a case-by-case basis to determine if parole is appropriate in the totality of the circumstances and as a matter of discretion. *See* Parole Request Website, Parole Process. As part of that process, officers may issue requests for evidence (RFEs) or notices of intent to deny (NOIDs), as permitted by 8 C.F.R. § 103.2(b)(8). *Id.* USCIS provides notice of the decision to the petitioner. If the beneficiary is conditionally approved, USCIS issues a notification of the conditional approval to a U.S. embassy or consulate, in the beneficiary's country of residence. *Id.* Conditionally approved beneficiaries must then complete a Form DS-160, Request for a Nonimmigrant Visa, and appear for an appointment with a Department of State consular section to verify their identity and collect biometrics for security screening. *Id.* If the beneficiary is successfully vetted, the U.S. embassy or consulate issues that individual a travel document on behalf of USCIS in lieu of a visa, which authorizes parole under 8 C.F.R. § 212.5(f) and permits the beneficiary to travel to a U.S. port of entry to seek parole from a U.S. Customs and Border Protection (CBP) officer . *Id.* CBP officers inspect the beneficiary at a port of entry, and if CBP grants parole into the United States in its discretion,, CBP will issue documentation indicating the length of the parole period and allow the beneficiary to enter the United States. *Id.*

USCIS is "currently receiving an extremely high number of requests for parole" and cautions applicants that "[i]t will take time to work through the unprecedented number of parole requests . . . .received since fall 2021 and return to normal processing times." Parole Request Website, Processing Website Alert. In addition, because the "U.S. Embassy Kabul has suspended operations, including all consular services, [] USCIS cannot fully process requests for parole for individuals in Afghanistan." *See Information for Afghan Nationals on Requests to USCIS for*

*Humanitarian Parole*, USCIS (last updated February 9, 2023),

https://www.uscis.gov/humanitarian/humanitarian-parole/information-for-afghan-nationals-on-

requests-to-uscis-for-humanitarian-parole (Afghan Parole Website, Afghan Nationals in

Afghanistan). For this reason, USCIS is currently prioritizing parole requests for individuals

located outside Afghanistan, "because the U.S. government is able to complete processing for

those individuals at a U.S. embassy or consulate." *Id.* For beneficiaries located in Afghanistan

whom USCIS determines may warrant parole, USCIS will issue a notice informing petitioners

that the beneficiary must arrange their own travel outside Afghanistan to complete processing at

another U.S. embassy or consulate. *See id*. If the beneficiary travels to a third country and

notifies USCIS of their new location, USCIS will continue processing their parole requests as

expeditiously as possible, but processing may still take several months depending on the

location. *Id.*

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

Plaintiffs are 16 individuals: two U.S. citizens (Leslie LaMarche and Aminullah Noori)

residing within the United States; one recipient of temporary protected status (TPS)[3] (Ahmad

Temory) residing in the United States; and thirteen Afghan nationals residing in Afghanistan

("Afghan plaintiffs"). ECF 1 (Compl.) ¶ 6-7. In September 2021 and March 2022, Ms. LaMarche

filed Forms I-131 on behalf of seven non-relative Afghan plaintiffs. *Id*. at 9–10. Plaintiffs' allege

Ms. Noori is the sister of Mr. Temory, the TPS holder. *Id*. at 12. In December 2021, at Mr.

Temory's request, Ms. Noori initiated requests for humanitarian parole by filing Forms I-131 on

---

[3] TPS allows noncitizens from certain countries designated by the Secretary who meet eligibility
requirements to temporarily live and work in the United States. *See generall*y 8 U.S.C. §
1254a(a)(1)(A)–(B), (2).

behalf of Mr. Temory's mother, spouse, brother, and two of his children, all of whom remain in Afghanistan. *Id.*

Plaintiffs allege that, starting with the withdrawal of U.S. troops from Afghanistan in August 2021, USCIS through its website held out the possibility of "expedited" parole for Afghan nationals under § 1182(d)(5). Compl. ¶ 24. They claim that until early September 2021, USCIS had been approving (or conditionally approving subject to further screening at a U.S. consulate) most, if not all, requests filed on behalf of Afghan national nationals seeking parole. *Id.* ¶ 6. Plaintiffs allege that between September and November 2021, USCIS "stopped adjudicating Afghan humanitarian parole requests" and subsequently adopted "new standards and procedures" to "ensure that the vast majority of Afghan humanitarian parole requests would be denied." *Id.* at 7–8. Specifically, Plaintiffs assert that USCIS stopped approving requests for Afghan nationals residing in Afghanistan, and instead began denying or administratively closing the requests until notified that the beneficiary had left Afghanistan. *Id.* at 8. For Afghans residing outside of Afghanistan, Plaintiffs allege USCIS began to approve requests only in "extreme cases" of "imminent harm or an imminent risk of return to Afghanistan." *Id.*[4] Plaintiffs, however, do not allege USCIS's purported new standards and procedures are arbitrary and capricious or contrary to law. Instead, Plaintiffs allege USCIS has unreasonably delayed or unlawfully withheld adjudication of their parole requests in violation of the APA (Count I); and they are entitled to mandamus relief for USCIS's failure to adjudicate their requests (Count II). *See id.* at 13–14. Plaintiffs also seek a declaration that USCIS "improperly changed its adjudication standards and ignored agency standards, rules, or procedures" in processing humanitarian parole

---

[4] Although Plaintiffs allege that USCIS adopted new adjudication standards for requests filed on behalf of Afghans residing outside of Afghanistan, Compl. at 8, none of the intended beneficiaries in this case reside outside of Afghanistan, *see id.* at 1–2.

requests (Count III). *Id*. at 14. For relief, Plaintiffs ask the Court to order USCIS to "promptly adjudicate" Plaintiffs' pending requests "in accordance with the standards in effect on August 31, 2021," *id*., the day the U.S. completed its evacuation effort in Afghanistan and the last day that U.S. Embassy Kabul could complete parole processing for beneficiaries located in Afghanistan on behalf of USCIS.

**ARGUMENT**

**I.    Plaintiffs' Claims Are Not Subject to Judicial Review.**

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a party may request that a court dismiss a complaint if subject-matter jurisdiction is lacking. It is well settled that "[t]he part[y] asserting jurisdiction [has] the burden of demonstrating the existence of federal jurisdiction." *Acosta-Ramírez v. Banco Popular de Puerto Rico*, 712 F. 3d 14, 20 (1st Cir. 2013). Thus, when a defendant challenges the jurisdiction of the court under Rule 12(b)(1), the plaintiff is required to establish that jurisdiction exists. *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th Cir. 1995).

Section 702 of the APA confers a general cause of action upon persons "adversely affected or aggrieved by [federal] agency action within the meaning of a relevant statute." 5 U.S.C. § 702. If properly invoked, the APA permits courts to compel agency action unlawfully withheld or unreasonably delayed. 5 U.S.C. § 706(1). But APA review is unavailable if "statutes preclude judicial review" or "agency action is committed to discretion by law." 5 U.S.C. § 701(a)(1)–(2); *see Patel v. Garland*, 142 S. Ct. 1614, 1627 (2022) (presumption of judicial review of agency action under the APA "may be overcome by specific language in a provision or evidence drawn from the statutory scheme as a whole" (internal quotations omitted)).

As relevant here, under 8 U.S.C. § 1252(a)(2)(B)(ii), Congress has withdrawn from judicial review "any [] decision or action of the [Secretary] the authority for which is specified . . . to be in the discretion of the [Secretary]." *Bernardo v. Johnson*, 814 F.3d 481, 484 (1st Cir. 2016) (quoting § 1252(a)(2)(B)(ii)). Congress has vested the discretion of whether and under what conditions to exercise parole authority with DHS. Under 8 U.S.C. § 1182(d)(5)(A), the Secretary "may . . . *in his discretion* parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States." (Emphasis added.)

As set out below, Plaintiffs' APA claims should be dismissed as a matter of law under Rule 12(b)(1). Initially, Plaintiffs fail to allege that they have been harmed by the Department of State (DOS). DOS should therefore be dismissed as a defendant. Next, APA review is barred because a separate statute precludes judicial review of USCIS's processing of parole requests and because the law commits decisions regarding parole to USCIS's discretion. In this regard, the Court lacks judicially manageable standards as required under the APA to evaluate USCIS's non-exercise of parole authority under § 1182(d)(5)(A) and is further barred by statute from entertaining challenges to USCIS's group-based grants or denials of parole requests. Lastly, the Court lacks authority to review the pace or nature of the process USCIS has implemented to adjudicate requests under § 1185(d)(5)(A).

A.  **The Court Should Dismiss the Department of State as a Defendant for Failure to Satisfy Article III Requirements.**

As a threshold matter, the Court should dismiss DOS as a party. Federal courts have constitutional authority to decide legal questions only in resolving "Cases" or "Controversies" in which litigants have standing. Art. III, § 2. To establish standing, Plaintiffs "must show that

[they] suffered an injury in fact that is concrete, particularized, and actual or imminent; that the injury was likely caused by the defendant; and that the injury would likely be redressed by judicial relief." *Plazzi v. FedEx Ground Package Sys.*, 52 F.4th 1, 4 (1st Cir. 2022) (citing *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021)). "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)). To be "concrete," the injury in fact must be "real, and not abstract." *Id*. at 340.

Here, Plaintiffs make allegations against USCIS and DHS but make no claim they have been harmed by any action, inaction, or policy of DOS. *See generally* Compl. Thus, although naming DOS as a defendant, Plaintiffs fail to make the required showing under Article III that any injury is "fairly traceable" to DOS's conduct. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998) (To establish standing, the plaintiff must show "a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant."). Because the agency is not the source of any alleged harm, DOS should be dismissed as a party. *See Blum v. Holder*, 744 F.3d 790, 792 (1st Cir. 2014) (affirming district court decision to dismiss under Rule 12(b)(1) for plaintiffs' failure to allege injury by defendant); *Kelley v. Patrick*, No. 13-12513, 2013 WL 6234618, at *2 (D. Mass. Nov. 26, 2013) ("[C]ourts have consistently held that, where the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted.").

### B.  APA Review Is Unavailable Because a Separate Statute Precludes Review of Parole Decisions, and Parole is Committed to DHS Discretion By Law.

APA review is barred in this case because a separate statute precludes judicial review of USCIS's processing of parole requests and because the law commits decisions regarding parole to DHS discretion, to include USCIS. *See* 8 U.S.C. § 701(a)(1)–(2). As noted above, §

1252(a)(2)(B)(ii) withdraws judicial review from any decision or action of the Secretary that Congress has placed in the\ Secretary's discretion. *Bernardo*, 814 F.3d at 484. The Secretary's parole authority is codified at § 1182(d)(5)(A), which permits the Secretary "in his discretion" to temporarily parole noncitizens into the United States "under such conditions as he may prescribe." As the Supreme Court recognizes, § 1252(a)(2)(B)(ii) is a "catchall provision" which, when read together with the prohibitions on review of certain types of discretionary relief from removal contained in § 1252(a)(2)(B)(i), "convey[s] that Congress barred court review of discretionary decisions only when Congress itself set out the Attorney General's discretionary authority in the statute." *Kucana v. Holder*, 558 U.S. 233, 247 (2010). The authority under the parole statute is plainly discretionary: "[t]he Secretary *may . . . in his discretion* parole into the United States temporarily under such conditions *as he may prescribe* . . . any alien applying for admission to the United States." 8 U.S.C. § 1182(d)(5)(A) (emphasis added); *see also Samirah v. O'Connell*, 335 F.3d 545, 549 (7th Cir. 2003) (holding that the "decision to grant or revoke parole [under § 1182(d)(5)] is squarely within the ambit of § 1252(a)(2)(B)(ii)").

The First Circuit has emphasized the breadth of the Executive's discretion in making parole decisions, describing that authority in § 1182(d)(5) as "close to plenary." *Amanullah v. Nelson*, 811 F.2d 1, 6 (1st Cir. 1987).[5] In *Amanullah*, the First Circuit agreed with the Eleventh Circuit that "Congress has delegated remarkably broad discretion to executive officials under the [INA], and these grants of statutory authority are particularly sweeping in the context of parole."

---

[5] The predecessor version of § 1182(d)(5)(A) stated that "the Attorney General may, . . . in his discretion parole into the United States temporarily under such conditions as he may prescribe for emergent reasons or for reasons deemed strictly in the public interest any alien applying for admission to the United States . . . ." 8 U.S.C. § 1182(d)(5) (1982). In 1996, Congress amended this to limit the Attorney General's parole discretion to authorize grants "only on a case-by-case basis for urgent humanitarian reasons or significant public benefit.

*Id.* (citing *Jean v. Nelson*, 727 F.2d 957, 977 (11th Cir. 1984) (en banc), *aff'd in part on nonconstitutional grounds*, 472 U.S. 846 (1985). While at the time of that decision Congress had not enacted § 1252(a)(2)(B)(ii), the First Circuit's description of the breadth of discretion plainly supports reading that statute as precluding judicial review of parole decisions.

Defendants' position is further supported by *Bernardo*, 814 F.3d at 482–84. The *Bernardo* court held that § 1252(a)(2)(B)(ii) precluded review of USCIS's decision to revoke an approved visa petition, joining most other circuits in finding that DHS's authority to revoke approved visa petitions under 8 U.S.C. § 1155 conferred unreviewable discretion on the Secretary based on that statute's use of terms like "may," "at any time," and "for what he deems to be good and sufficient cause." *Id.* at 485–87. Likewise, the Supreme Court has "repeatedly observed" that "the word 'may' *clearly* connotes discretion." *Opati v. Republic of Sudan*, 140 S. Ct. 1601, 1609 (2020) (citations omitted). So too here, Section 1182(d)(5)(A) states that the Secretary "*may . . . in his discretion* parole" certain people into the United States "under such conditions *as he may prescribe*." (emphasis added).[6] The statute also confers discretion to terminate parole "when the purposes of such parole shall, *in the opinion of the* [*Secretary*], have been served." *Id.* (emphasis added). This language is sweeping and sufficient to find that § 1252(a)(2)(B)(ii) applies to, and precludes review of, "decisions or actions" under § 1182(d)(5)(A), as Congress has imposed no "standard[s] that meaningfully curtail[] the Secretary's discretion" sufficient to sustain judicial review. *Bernardo*, 814 F.3d at 487; *see also Hassan v. Chertoff*, 593 F.3d 785, 789 (9th Cir. 2010) (affirming district court's ruling it lacked jurisdiction to review § 1182(d)(5)(A) parole revocation decision because of § 1252(a)(2)(B)(ii)).

---

[6] The only limitation on that discretion is under § 1182(d)(5)(B), which places limits on the use of parole for those determined to be refugees, who might otherwise be admitted under 8 U.S.C. § 1157.

APA review of Plaintiffs' pending requests is also unavailable because the Court lacks judicially manageable standards to evaluate USCIS's non-exercise of parole authority under § 1182(d)(5)(A). *See* 5 U.S.C. § 701(a)(2) (providing that APA review is unavailable if agency action is committed to discretion by law). To obtain APA review notwithstanding §701(a)(2), there must exist "statutes constraining or guiding the relevant agency's discretion" to create 'judicially manageable standards.'" *See Union of Concerned Scientists v. Wheeler*, 954 F.3d 11, 21 (1st Cir. 2020). Section 1182(d)(5)(A) provides no such standard to evaluate USCIS's decision to decline to exercise its parole authority, or any procedures relied on in the process. While USCIS's parole authority may be exercised positively only on a case-by-case basis for "urgent humanitarian reasons" or for "significant public benefit," 8 U.S.C. § 1182(d)(5)(A), these qualifications do not limit USCIS's discretion *not* to exercise parole authority as the agency deems appropriate. The absence of any qualifying language constraining the decision not to approve parole renders unreviewable any decision by USCIS to deny or administratively close Afghan parole requests for applicants in Afghanistan, where the United States has no Embassy or consular post. *See New Mexico v. McAleenan*, 450 F. Supp. 3d 1130, 1195 (D.N.M. 2020) (Section 1252(a)(2)(B) precludes "structural challenges" to parole decisions).

Section 1252(a)(2)(B)(ii) likewise bars challenges to purported group-based grants, denials, or prioritization of parole as it does to individual parole decisions. As an initial matter, the pertinent statutes discussed above do not distinguish among the kinds of parole decisions—whether individual or group-based grants or denials. Decisions not to grant or prioritize parole to certain groups or classes of applicants, and the procedures adopted to implement those decisions, remain "agency action . . . committed to agency discretion by law" the same as agency action on individual applications, 5 U.S.C. § 701(a)(2), and thus remain unreviewable under the APA.

Indeed, if Congress had intended § 1252(a)(2)(B)(ii) to be applicable only to a discrete "decision or action" in an "individual" case, it could have imported language from neighboring § 1252(a)(2)(A)(i) or (iii). *See* 8 U.S.C. § 1252(a)(2)(A)(i) (providing that "no court shall have jurisdiction to review— … any *individual determination* or to entertain any other cause or claim arising from or relating to the implementation or operation of an order of removal pursuant to section 1225(b)(1)"), *id.* § 1252(a)(2)(A)(iii) (providing that "no court shall have jurisdiction to review— the application of such section to *individual [noncitizens]*, including the determination made under section 1225(b)(1)(B)") (emphases added). The fact that Congress has specified when litigation is permitted and prohibited on class or individual bases supports the position § 1252(a)(2)(B)(ii) withdraws review of a "decision or action" relating to § 1182(d)(5) parole, whether procedural or substantive, no matter how many persons challenge their parole decisions in any given case. As the Supreme Court recently emphasized when discussing congressional intent to reduce or eliminate judicial review of agency decisions relating to immigration matters, "where Congress intended to deny subject-matter jurisdiction over a particular class of claims, it did so unambiguously." *See Biden v. Texas*, 142 S. Ct. 2528, 2539–40 (2022) (noting § 1252(a)(2). . . . "is entitled 'Matters not subject to judicial review' and provides that '*no court shall have jurisdiction to review*' several categories of decisions . . . ."). unambiguous denial of subject-matter jurisdiction over decisions related to parole renders "the Secretary's "discretionary judgment regarding the application of parole—including the *manner* in which that discretionary judgment is exercised, and whether the procedural apparatus supplied satisfies regulatory, statutory, and constitutional constraints—[] not . . . subject to review.").  *See Loa-Herrera v. Trominski*, 231 F.3d 984, 991 (5th Cir. 2000) (discussing 8 U.S.C. § 1226(e)'s judicial bar on review of Secretary's parole authority under 8 U.S.C. § 1226(a)) (internal

quotation marks omitted). The unreviewable discretionary authority under § 1182(d)(5)(A) likewise extends to conditions imposed on noncitizens once paroled into the United States. In *McAleenan*, the city of Albuquerque and state of New Mexico challenged the federal government's decision to abruptly end its Safe Release policy, by which the United States' provided transportation coordination and other forms of aid to asylum seekers paroled into the country. 450 F. Supp. 3d at 1146. The *McAleenan* court dismissed the plaintiffs' APA challenge, concluding § 1252(a)(2)(B) precludes review of "structural challenges" to the Secretary's exercise of parole authority of the same type Plaintiffs advance in this case. *Id*. at 1196-97. As here, where USCIS declines to exercise its discretionary parole authority, the *McAleenan* court emphasized that the "absence of any statutory standard governing asylee parole conditions suggests that the law commits such decisions to agency discretion." *See id*. Based on the above, the Court lacks authority to entertain Plaintiffs' allegation that USCIS adopted a new and improper standard to adjudicate Afghan parole requests.[7]

### C. The Court Is Barred from Reviewing the Pace of USCIS's Adjudication of Humanitarian Parole Requests

Section 1252(a)(2)(B)(ii) bars review of the pace or nature of USCIS's *process* to adjudicate parole requests under § 1185(d)(5)(A). *See* § 701(a)(1)–(2). Although

---

[7] The Court should also dismiss Plaintiffs' vague request that USCIS adhere to its August 2021 policy regarding the issuance of "RFEs [and] NOIDs" Compl. at 14 (Prayer for Relief). As an initial matter, the USCIS Policy Manual does not require issuance of an RFE or NOID in every circumstance. Instead, it advises adjudicators that they may issue an RFE or NOID unless the officer determines that "there is no legal basis for the benefit request and no possibility that additional information or explanation will establish a legal basis for approval." *Id.* ¶ 62 (emphasis omitted) (quoting USCIS, Policy Manual E(6) § F(3)); *see also* 8 C.F.R. § 103.2(b)(8)(ii). The Policy Manual also states that "USCIS has the discretion to deny a benefit request without issuing an RFE or NOID." Policy Manual, E(6) § F. Decisions whether to issue RFEs and NOIDs are plainly within USCIS's discretion and thus unreviewable under the APA. *See* 5 U.S.C. § 701(a)(2). Additionally, such issuances are intermediate steps in the adjudication process and consequently not "final agency action" subject to APA review. *See id*. § 704.

the APA provides relief to an aggrieved party for an agency's failure to act in § 706(1), courts in this District have held in similar circumstances that courts lack authority to review the process by which USCIS arrives at an unreviewable discretionary decision. For example, the court in *Touarsi v. Mueller* examined whether the grant of discretionary power to the Secretary to adjust a noncitizen's status under 8 U.S.C. § 1255(a) is "limited to the substantive grant or denial of the adjustment . . . or whether it includes the discretion to determine how and when to make the substantive decision." 538 F. Supp. 2d 447, 452 (D. Mass. 2008). Section 1255(a) authorizes the Secretary to adjust the status of a noncitizen who has been inspected and admitted or paroled into the United States to that of a lawful permanent resident "in his discretion and under such regulations as he may prescribe" if the noncitizen applies to adjust status, is admissible and eligible for an immigrant visa, and one is immediately available to him. 8 U.S.C. § 1255(a). The *Touarsi* court found that the Secretary's authority to manage the adjustment of status request process, committed to his discretion by § 1255(a), "falls within the scope of § 1252(a)(2)(B)(ii)," and that therefore "judicial review of the 'pace' at which he does so is precluded." 538 F. Supp. 2d at 452. In support of its conclusion, the court noted that under § 1255(a) Congress had granted the Secretary discretion to adjust under "such regulations as he may prescribe." *Id*. at 451. The Court also noted that § 1255(a) contained definite limits on the Secretary's discretion to adjust, including that the noncitizen must be eligible for a visa, but that none of those limits curtailed decisions concerning the processing of applications. *Id*. Lastly, the court observed that "Congress has not been reticent about its intention to reduce or eliminate formerly existing means of judicial review of agency decisions relating to immigration matters." *Id*. at 451-52; *see also Li v. Chertoff*, 482 F. Supp. 2d 1172, 1179 (S.D. Cal. 2007) (concluding that § 1252(a)(2)(B)(ii) precludes review of USCIS's adjudication of Plaintiff's adjustment of status request within a

reasonable period of time under the APA); *Tao Luo v. Keisler*, 521 F. Supp. 2d 72, 74 (D.D.C. 2007) (agreeing with *Safadi v. Howard*, 466 F. Supp. 2d 696, 699 (E.D. Va. 2006) that the term "action" as used in § 1252(a)(2)(B)(ii) includes any act within the adjustment of status process, such as pace).

The *Touarsi* court's analysis of the Secretary's discretionary authority to adjust status under § 1255(a) applies with equal force to his parole authority. As in § 1255(a), the Secretary is expressly vested under § 1182(d)(5)(A) with the authority to parole as a matter of discretion. Similar to § 1255(a)'s grant of regulatory authority in the context of adjustment, § 1182(d)(5)(A) allows the Secretary to parole "under such conditions as he may prescribe." Lastly, while § 1182(d)(5)(A) limits the Secretary's authority to authorize grants of parole for humanitarian and public benefit reasons on a case-by-case basis, it contains no criteria delineating the processing of requests. Indeed, a holding that USCIS does not have discretion over the pace at which it processes parole requests leads to the "illogical conclusion that [USCIS] must reach an unreviewable decision within a reviewable period of time." *See Zhang v. Chertoff*, 491 F. Supp. 2d 590, 593 (W.D. Va. 2007) (noting same in the context of the Secretary's discretionary authority to adjust status under 8 U.S.C. § 1255(a)). Notably, Congress did not impose any time constraint on the adjudication of parole requests under § 1182(d)(5)(A). *See Grinberg v. Swacina,* 478 F. Supp. 2d 1350, 1352 (S.D. Fla. 2007) (stating that "if Congress intended to confer jurisdiction on a federal court to review the pace of adjudication for adjustment of status requests, it would have expressly provided for a time limitation" and the fact "[t]hat Congress did not do so here reflects its intent to leave the pace of adjudication discretionary with [USCIS] and outside the scope of judicial review"). And, as discussed above, the statutory language—that the Secretary "may" "in his discretion" parole "under such conditions as he may prescribe,"

8 U.S.C. § 1182(d)(5)(A)—evinces Congress' substantial deference to USCIS to determine the best way to exercise its parole authority in the face of global crisis. This broad authority renders USCIS's timeline unreviewable. Consequently, because USCIS's authority to manage the exercise of parole authority is committed to its discretion under § 1185(d)(5)(A), judicial review of the pace of adjudication is necessarily prohibited by § 1252(a)(2)(B)(ii).[8]

### D.  Plaintiffs' Request to Compel USCIS to Act on Five of the Parole Requests Has Been Mooted

Plaintiffs' claims of delay related to five of the parole requests at issue in this case should be dismissed under Rule 12(b)(1) as moot because intervening USCIS actions on those requests have negated the existence of an on-going case or controversy. Federal courts' jurisdiction is limited to those claims which embody actual cases or controversies. U.S. Const. art. III, s. 2 cl. 1; *Bais Yaakov of Spring Valley v. Act, Inc*., 987 F. Supp. 2d 124, 126 (D. Mass. 2013). A case or controversy "ceases to exist, rendering the case moot and depriving the court of jurisdiction, when the parties lack a legally cognizable interest in the outcome of the case." *Id*. (internal citation omitted). Article III considerations require that an actual case or controversy "must be extant at all stages of review, not merely at the time the complaint is filed." *Ramirez v. Ramos*, 438 F.3d 92, 100 (1st Cir. 2006) (internal citation omitted).

---

[8] In *Roe v. Mayorkas*, No. 22-cv-10808, 2023 WL 3466327 (D. Mass. Apr. 28, 2023), a court in this district held that § 1252(a)(2)(B)(ii) does not bar all judicial review of agency action taken under § 1182(d)(5)(A). That court found that the plaintiffs in that case adequately pled policy claims reviewable under the APA relating to USCIS's denial of in-country Afghan applications for humanitarian parole post-September 2021, as well unreasonable delay in adjudicating such applications. *See id.* at *25–26. For the reasons discussed above, however, the government disagrees with the *Roe* court's conclusions. *Roe*, moreover, is factually distinguishable from this action since, unlike *Roe*, none of the Plaintiffs have been denied parole. Lastly, *Roe* is not binding on this Court.

On June 26, USCIS issued Requests for Evidence ("RFE") in response to the parole requests filed by Ms. Noori on behalf of Hafasa Temory, Gull Dana Wardack, Yasamin Temori, Mahboba Hassan Zai, and Abdul Wakil Timori. *See* Exhibit 1; *see also Gonzalez v. United States*, 284 F.3d 281, 288 (1st Cir. 2002) (courts may consider materials such as exhibits outside the pleadings on a Rule 12(b)(1) motion without converting it to a motion for summary judgment under Rule 56); *Redfern v. Napolitano*, Civil Action No. 10-12048-DJC, 2011 U.S. Dist. LEXIS 49321, at *9 (D. Mass. May 9, 2011). The USCIS Policy Manual instructs adjudicators that where an application "does not establish eligibility for the benefit sought[,]" the officer should issue a [RFE] or [NOID] requesting such evidence unless the officer determines that "there is no legal basis for the benefit request and no possibility that additional information or explanation will establish a legal basis for approval. *See* USCIS, Policy Manual E(6) § F(3), https://www.uscis.gov/policy-manual/volume-1-part-e-chapter-6 (last visited Jun. 20, 2023); *see also* 8 C.F.R. § 103.2(b)(8)(ii), (iii); n.7 *supra*. Plaintiffs have not yet responded to those RFEs. By issuing Plaintiffs the RFEs, USCIS has acted on the five parole requests. The next step in the adjudication process is therefore now in Plaintiffs' hands. Because the RFEs have been issued, there is no longer a lack of agency action, which renders moot any controversy over USCIS's pace of processing under the APA and the Mandamus Act. *See Jean v. Garland*, 2022 U.S. Dist. LEXIS 191128, at *2-3 (D. Mass. Oct. 19, 2022) (finding that RFEs issued in response to an adjustment of status application mooted plaintiffs' mandamus claim because "all five of plaintiffs' applications have been acted upon and plaintiffs have been afforded all the relief they sought) citing *Meixian Ye v. Kelly*, No. 17-CV-3010, 2017 U.S. Dist. LEXIS 100317, 2017 WL 2804932, at *1-2 (E.D.N.Y. June 28, 2017) (holding that a plaintiff who had not yet responded to an RFE had received the USCIS action she sought and that her claims were, therefore, moot); *see*

*also Markandu v. Thompson*, No. 07-CV-4538, 2008 U.S. Dist. LEXIS 46136, 2008 WL

11510675, at *3 (D.N.J. June 11, 2008) (citing cases for the proposition that an application to

compel agency action in the immigration context becomes moot once the agency initiates action

that will eventually result in a decision).  The Court should therefore dismiss as moot claims by

Mr. Temory, Ms. Noori and the five putative beneficiaries she has petitioned to parole into the

United States because USCIS has taken the requested administrative action and their claims are

moot.

**II.    Plaintiffs Fail to State a Claim That Would Permit the Court to Compel USCIS to Adjudicate the Parole Requests.**

A complaint should be dismissed if it "fail[s] to state a claim upon which relief can be

granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a complaint

must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559

(2007). Although detailed factual allegations are not necessary to survive a motion to dismiss,

the standard "requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do." *Id.* at 555. "The relevant inquiry focuses on the

reasonableness of the inference of liability that the plaintiff is asking the court to draw from the

facts alleged in the complaint." *Ocasio-Hernandez v. Fortuño-Burset*, 640 F.3d 1, 13 (1st Cir.

2011).

**A.  USCIS Has No Duty to Adjudicate Parole Requests, Nor Adjudicate Them on a Fixed Timeline.**

Neither the APA nor the Mandamus Act authorizes the Court to compel USCIS to

adjudicate Plaintiffs' pending § 1182(d)(5)(A) parole requests. The court's authority under APA

§ 706(1) to compel agency action unlawfully withheld or unreasonably delayed can "proceed

only where a plaintiff asserts that an agency failed to take a discrete agency action that it

is required to take." *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004).

Where an agency is not required to do something, a court cannot compel the agency to act, much less act faster. *See id*. at 64 n.1 ("Of course § 706(1) also authorizes courts to 'compel agency action . . . unreasonably delayed'—but a delay cannot be unreasonable with respect to action that is not required.").

As noted above, § 1182(d)(5)(A) grants broad authority to grant parole on a case-by-case basis if USCIS determines "urgent humanitarian reasons" or "significant public benefit" warrant it and if the individual warrants a favorable exercise of discretion. Nothing in § 1182(d)(5)(A) requires USCIS to adjudicate requests for parole. Indeed, parole may be granted without anyone requesting it. *Louis v. Nelson*, 544 F. Supp. 973, 985 n.30 (S.D. Fla. 1982) ("[I]t is significant to note that the administrative procedure for seeking parole does not require a request to be filed, a hearing to be held or a record to be made."). If USCIS is not required by § 1182(d)(5)(A) to accept requests at all, the statute cannot be read to contain an implicit "reasonable time" limitation to act.

### B.  Dismissal Under Rule 12(b)(6) Is Proper Because Plaintiffs' APA and Mandamus Claims Are Legally Flawed.

Generally, in Rule 12(b)(6) motions to dismiss, a "plausibility standard does not apply to a complaint for judicial review of final agency action." *Atieh v. Riordan*, 727 F.3d 73, 76 (1st Cir. 2013) "The relevant inquiry is—and must remain—not whether the facts set forth in a complaint state a plausible claim but, rather, whether the administrative record sufficiently supports the agency's decision." *Id.* Nevertheless, "[t]his does not mean [] that Rule 12(b)(6) can never be in play in an APA appeal." *Id.* at 76 n.4. "Such a motion may be appropriate . . . where the agency claims that the underlying premise of the complaint is legally flawed (rather than factually unsupported)." *Id.* (citing *Zixiang Li v. Kerry*, 710 F.3d 995, 1000–01 (9th Cir. 2013)).

Plaintiffs' allegations are legally flawed and therefore subject to dismissal under Rule 12(b)(6). *Atieh*, 727 F.3d at 76. Plaintiffs complain of unreasonable delay by USCIS in the adjudication of their parole requests and seek a court order compelling adjudication. To this end, Plaintiffs speculate that starting in September 2021, USCIS "abandoned" the pre-existing standards used to adjudicate parole requests for Afghan nationals residing in Afghanistan and instead began to issue only denials or administrative closures pending confirmation that the intended beneficiary had left Afghanistan. Compl. ¶ 36.  The foregoing allegations are legally flawed in several respects. As a threshold matter, Plaintiffs fail to articulate a link between USCIS's adoption of purported adjudication standards that foreclose the immediate approval of in-Afghanistan parole requests to the time it takes USCIS to process Plaintiffs' (or indeed any applicant's) parole requests. Further, Plaintiffs fail to explain how purported denials or administrative closures to which they have *not* been subjected because their petitions have *not* been decided or closed, supports their delay claims. Finally, Plaintiffs do not allege—nor could they—that the purported denials of other parole requests on behalf of in-country Afghans are not based on the merits of those individual requests as required by statute. Plaintiffs notably eschew any allegation that USCIS's adjudication process is arbitrary, capricious, an abuse of discretion or otherwise unlawful. *See Craker v. DEA*, 44 F.4th 48, 55 (1st Cir. 2022) (Under the APA, courts set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law") (citing 5 U.S.C. § 706(2)(A)). Consequently, because the legal premise asserted by Plaintiffs is flawed, the Court should dismiss the Complaint pursuant to Rule 12(b)(6).

Aside from failing to link the alleged new standard to any delay in the adjudication of their requests, or even alleging that denials are not done on the merits of a request, Plaintiffs do

not explain how USCIS's processing of their parole requests under the "new standard" runs afoul of § 1182(d)(5)(A) or the regulation governing the issuance of travel documents at 8 C.F.R. § 212.5(f). Specifically, Plaintiffs fail to articulate how the relevant statute or implementing regulation either prohibit UCIS from administratively closing in-country applications until the intended beneficiary can continue the parole process at a U.S. embassy or deny an in-country request on the merits even if, as may be the case, USCIS continues to authorize parole requests elsewhere. Moreover, USCIS's purported "new standard" of denying or administratively closing in-country applications is not new, and cases of administrative closure are simply a reflection of the operational reality that parole processing cannot be completed outside the United States absent a functioning U.S. embassy or consulate to complete the necessary vetting steps and issue a travel document on USCIS' behalf. *See* 8 C.F.R. § 212.5(f).  As a matter of law, Plaintiffs cannot adequately allege that a new and illegal policy change exists when the purported new policy complies with existing law (8 U.S.C. § 1182(d)(5)(A)–(B)) and existing regulation (8 C.F.R. § 212.5(f)). The APA demands more before a Court can proceed to exercise jurisdiction over the inner working of an executive agency. As the Supreme Court observed, there is a "specificity requisite for agency action" that must be alleged to sustain an APA claim. *Norton v. S. Utah Wilderness All*., 542 U.S. 55, 66 (2004); *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990) ("Respondent alleges that violation of the law is rampant within this program . . . . But respondent cannot seek *wholesale* improvement of this program by court decree. . . . Under the terms of the APA, respondent must direct its attack against some particular 'agency action' that causes it harm."). Where, as here, a complaint does not satisfy the APA's requirement for challenged agency action, it is proper to dismiss under Rule 12(b)(6).

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion to dismiss and dismiss the case in its entirety under Fed. R. Civ. P. 12(b)(1) and (6).

DATED: July 6, 2023

Respectfully Submitted,

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney General*
Civil Division

WILLIAM C. PEACHEY
*Director*
Office of Immigration Litigation
District Court Section

YAMILETH G. DAVILA
*Assistant Director*

ALEXANDER J. HALASKA
*Senior Litigation Counsel*

*/s/ Sergio Sarkany*
SERGIO SARKANY
*Trial Attorney* (CA Bar #223584)
United States Department of Justice Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Benjamin Franklin Station
Washington, D.C. 20044
202-598-5624 | sergio.f.sarkany@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically

to the registered participants as identified on the Notice of Electronic Filing (NEF).

DATED: July 6, 2023

*/s/ Sergio Sarkany*
SERGIO SARKANY (CA Bar 223584)
*Trial Attorney*