UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LESLEY LAMARCHE, et al., | * |
| | * |
| Plaintiffs, | * |
| | *   Civil Action No. 23-30029-MGM |
| v. | * |
| | * |
| ALEJANDRO N. MAYORKAS, et al., | * |
| | * |
| Defendants. | * |

MEMORANDUM AND ORDER
RE: DEFENDANTS' MOTION TO DISMISS
(Dkt. No. 19)

September 6, 2023

MASTROIANNI, U.S.D.J.

Plaintiffs in this action are Afghan nationals, currently residing in Afghanistan, who are seeking humanitarian parole into the United States and their U.S.-based sponsors. Friends and family in the U.S., on behalf of the Plaintiffs who remain stranded in Afghanistan, submitted applications for humanitarian parole with the U.S. Citizenship and Immigration Services ("USCIS") in the fall of 2021 and early 2022. Of the Plaintiffs who remain in Afghanistan, many were employed or affiliated with the former U.S.-backed Afghan government or advocated for women's rights and other civil rights. These Plaintiffs and their families have been in danger since the Taliban returned to power in August 2021 and the U.S. withdrew from the country after 20 years of intervention.

In their Complaint, Plaintiffs contend Defendants publicly held out the possibility of expedited humanitarian parole in the aftermath of the withdrawal from Afghanistan, but have since unreasonably delayed and/or altogether suspended adjudication of their parole applications, which have been pending for anywhere from 18 to 24 months. Specifically, Plaintiffs assert that Defendants have

unreasonably withheld or delayed agency action under the Administrative Procedure Act ("APA") (Count I). Counts II and III seek mandamus relief and a declaratory judgment, respectively, to compel Defendants to adjudicate the still-pending applications and declare USCIS's actions unlawful. Defendants have moved to dismiss for lack of jurisdiction, mootness, and failure to state a claim. In the interest of issuing a timely ruling under the particularly concerning circumstances of this case, the court declines to recount the full factual and procedural history of this matter. The court assumes the parties' familiarity with the background of this case.

Defendants' motion to dismiss first challenges this court's jurisdiction over Plaintiffs' claims. Section 701(a) of the APA prohibits judicial review where "statutes preclude judicial review" or where "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(1)–(2). Defendants argue both apply here to bar review. First, Section 1252(a)(2)(B)(ii) of the Immigration and Nationality Act ("INA"), which governs review of the Department of Homeland Security's ("DHS") authority to grant humanitarian parole, states "no court shall have jurisdiction to review . . . any . . . decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified . . . to be in the discretion of the Attorney General or the Secretary of Homeland Security[.]" 8 U.S.C. § 1252(a)(2)(B)(ii). Second, section 1182(d)(5)(A) of the INA grants the Attorney General authority to, "in his discretion[,] parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States[.]" 8 U.S.C. § 1182(d)(5)(A). Defendants argue the language of these statutes bars judicial review of nearly all parole decisions, including the pacing of the adjudication process.

After careful review of the relevant caselaw, statutes, and regulations, the court agrees with Plaintiffs and the analysis recently set forth by another session of this court "that § 1252(a)(2)(B)(ii) does not bar all judicial review of agency action taken under § 1182(d)(5)(A)." *See Roe v. Mayorkas*, 22-

cv-10808, 2023 WL 3466327, at *7–10 (D. Mass. Apr. 28, 2023). Although DHS, and in turn USCIS, wield significant discretionary power over the outcome of parole adjudications, the weight of authority indicates that discretion does not authorize the unreasonable delay or wholesale suspension of such adjudications. *See Zhou v. FBI*, No. 07-cv-00238, 2008 WL 2413896, at *4 (D.N.H. June 12, 2008) (joining the "majority of district courts in the First Circuit that have considered the issue" to hold that delay is not a discretionary decision within the meaning of § 1252(a)(2)(B)(ii), as related to 8 U.S.C. § 1255(a)); *Abdi v. Chertoff*, 589 F. Supp. 2d 120, 121 (D. Mass. 2008) (applying reasoning from *Tang v. Chertoff*, 493 F. Supp. 2d 148 (D. Mass. 2007), to find that "the jurisdiction-stripping language in the INA only bars review of the 'substance of an adjustment of status decision,' leaving the 'pacing of such a decision' subject to judicial review"); *Doe v. Trump*, 288 F. Supp. 3d 1045, 1072 (W.D. Wash. 2017) (holding that § 1252(a)(2)(B)(ii) does not bar review of DHS's "failure to act," in the context of § 1157(c)(1), which contains similar language to § 1252(a)(2)(B)(ii)).[1] (*See also* Dkt. No. 23 at 5 (collecting cases)).

Defendants focus on the term "action" in § 1252(a)(2)(B)(ii). According to Defendants, use of the phrase "decision or action" in the statute "necessarily renders unreviewable *any* discretionary act or series of acts within the parole adjudication process," including the pace at which the process proceeds. (Dkt. No. 27 at 4 (emphasis in original)). Defendants insist that to conclude otherwise would impermissibly make the word "action" superfluous. But this construction itself ignores the other language of the statute. Section 1252(a)(2)(B)(ii) bars judicial review of "decision[s] or action[s] . . . the authority for which is *specified* . . . to be in [the Attorney General's or DHS's] discretion." Thus, the word "action" is modified—indeed, limited—to mean only those decisions and actions "specified" to

---

[1] The court recognizes district courts across the country are split on the issue of jurisdiction over the pacing of adjudications. *See Geneme v. Holder*, 935 F. Supp. 2d 184, 189–92 (D.D.C. 2013) (explaining district courts' differing rationales, in the context of asylum adjustment of status decisions); (*See also* Dkt. No. 27 at 5 (acknowledging "courts within this circuit are divided over whether the court has jurisdiction to review the timeframe for processing applications" in similar contexts)). After extensive review of the caselaw and the particular language of the statutes at issue, the court agrees with the decisions finding jurisdiction over claims of unreasonable delay.

be discretionary. *See Kucana v. Holder*, 558 U.S. 233, 243 n.10 (2010) (clarifying that "specified" does not include "assumed," "contemplated," "implied," or "anticipated"). The text of section 1182(d)(5)(A) plainly does not "specif[y]" that USCIS shall have discretion to decide whether and when to adjudicate humanitarian parole applications. *See Soltane v. U.S. Dep't of Justice*, 381 F.3d 143, 147 (3d Cir. 2004) (Alito, J.) ("[W]e do not think . . . that the use of marginally ambiguous statutory language, without more, is adequate to 'specif[y]' that a particular action is within the Attorney General's discretion for the purposes of § 1252(a)(2)(B)(ii)."). The court therefore concludes it retains jurisdiction over Plaintiffs' claim that USCIS has unreasonably delayed adjudication of their applications.[2]

Defendants next contend that five of the Plaintiffs' claims are moot because USCIS has taken some action on those Plaintiffs' applications by issuing Requests for Evidence (RFEs) after this case was initiated. However, Plaintiffs' claims relate to Defendants' unreasonable *delay* in *adjudicating* their humanitarian parole applications. Taking one step in the process by issuing RFEs does not mean the adjudication will not continue to be unreasonably delayed. Moreover, there is no dispute Defendants have not yet rendered a decision on any of Plaintiffs' applications and Plaintiffs have since responded to the RFEs, and are awaiting further action. Accordingly, the court concludes these five Plaintiffs' claims are not moot.

Defendants further argue that Plaintiffs' Complaint fails to state a claim under Federal Rule of Civil Procedure 12(b)(6).[3] The court easily disposes of Defendants' first argument that USCIS has no

---

[2] The court also notes this conclusion is consistent with the Supreme Court's suggestion in *Kucana* that the jurisdiction-stripping provision of § 1252(a)(2)(B)(ii) shields substantive actions in the adjudicative process from court oversight, but procedural aspects of the process designed to "ensure that aliens are getting a fair chance to have their claims heard" are subject to judicial review. *See Kucana*, 558 U.S. at 247–48. "Here too, an order that USCIS adjudicate [Plaintiffs'] application[s] would not afford [them] substantive relief, but only ensure that [they] got a fair chance to have [their] claims heard in a timely manner." *Geneme*, 935 F. Supp. 2d at 192.

[3] Defendants argue Plaintiffs have waived any challenge to their Rule 12(b)(6) arguments by failing to specifically respond to those argument in their Opposition and suggests the court should therefore dismiss Plaintiffs' complaint on that ground. (Dkt. No. 27 at 2–3). However, "the mere fact that a motion to dismiss is unopposed does not relieve the district court of

nondiscretionary duty to adjudicate parole requests, let alone in a timely manner. For the reasons discussed above, the court has already concluded that, "[w]hile the ultimate decision to grant or deny an application . . . is unquestionably discretionary, there exists a non-discretionary duty to act on and process the application." *Geneme v. Holder*, 935 F. Supp. 2d 184, 192 (D.D.C. 2013) (quoting *Dong v. Chertoff*, 513 F. Supp. 2d 1158, 1165 (N.D. Cal. 2007)). Second, Defendants maintain the Complaint is "legally flawed" because Plaintiffs fail to articulate a link between the alleged new standard for processing in-Afghan parole applications and the delay in adjudicating their parole requests. The court disagrees. Applying the well-established *Iqbal-Twombly* standard, a reasonable inference is easily drawn from the facts alleged in the Complaint that the delay in adjudicating Plaintiffs' parole requests stems from the alleged new standard USCIS adopted to process in-Afghan parole petitions. Lastly, Defendants argue the Complaint fails to address how the "new standard" is unlawful because, according to Defendants, it complies with existing laws and regulations and simply reflects the "operational reality" after the U.S. embassy in Kabul closed. The court finds this argument to be notably vague and declines to dismiss this action on the basis of such an undeveloped argument. In any case, what Defendants characterize as a purely legal argument is inextricably intertwined with a fundamental factual dispute regarding why the policy and standards for processing in-Afghan parole applications changed. There is likewise a dispute as to the basis for now treating Afghan applications differently from those submitted by people seeking the same assistance from other areas of the world with humanitarian struggles. The court concludes that this is the type of APA dispute that should not be resolved without the administrative record. *See Atieh v. Riordan*, 727 F.3d 73, 76 & n.4 (1st Cir. 2013) (where the agency claims the complaint is "factually unsupported" in some respect, "the plausibility

---

the obligation to examine the complaint itself to see whether it is formally sufficient to state a claim." *Pomerleau v. W. Springfield Pub. Schs.*, 362 F.3d 143, 145 (1st Cir. 2004). Further, although the court has "discretion" to deem an argument waived based on a party's unexcused failure to respond to it when a response is required by local rule, the court may only do so "when the result does not clearly offend equity." *Id.* Given the sensitive nature of this case and because Plaintiffs' counsel nominally addressed the Rule 12(b)(6) arguments at the motion hearing, the court declines to dismiss on that basis.

standard does not apply" and the relevant inquiry is "whether the administrative record sufficiently supports the agency's decision").

Finally, Defendants ask the court to dismiss the Department of State as a defendant from this action because the Complaint does not contain any specific allegations against the Department of State. In their Opposition, Plaintiffs state:

> Plaintiffs defer to the Court regarding the continued participation of DOS in this litigation, noting that DOS has a role in the cases that USCIS approves for humanitarian parole and DOS's closure of the embassy in Kabul may be cited as a reason for USCIS's decision to make grants and conditional grants of humanitarian parole unavailable to Afghans in Afghanistan as well as for a delay in parole adjudications.

Because Plaintiffs do not allege any specific wrongdoing by the Department of State and do not oppose dismissal, the court allows Defendant's motion to dismiss the Department of State from this action.

For the reasons explained above, the court ALLOWS IN PART Defendants' Motion to Dismiss (Dkt. No. 19) insofar as it requests dismissal of the Department of State as a defendant in this action. Defendants' Motion to Dismiss (Dkt. No. 19) is otherwise DENIED.

It is So Ordered.

                                                  /s/ Mark G. Mastroianni
                                                  MARK G. MASTROIANNI
                                                  United States District Judge