# EXHIBIT F

| | |
|---|---|
| **From:** | Ruppel, Joanna |
| **Subject:** | FW: Afghan Parole Tear Sheet |
| **To:** | Johnson, Bobbie L; Wright, Charles E; Stone, Mary M; Bird, John W (Wally); Chiorazzi, Anne; On, Dung B; Schoener, Sarah L; Villasenor, Eissa M |
| **Sent:** | August 25, 2021 9:54 AM (UTC-05:00) |
| **Attached:** | AFGHAN PAROLE INFORMATION SHEET FINAL_2a.pdf |

FYI.  This will be given to individuals on flights.   Also, PRM is working on a video for them to watch on the flight.

Joanna Ruppel

**(b)(6)**  Chief, International and Refugee Affairs Division
USCIS Refugee, Asylum and International Operations Directorate

[redacted]

[redacted] (cell)

**From:** Valverde, Michael [redacted]
**Sent:** Wednesday, August 25, 2021 10:52 AM
**To:** Ruppel, Joanna [redacted]
**Subject:** FW: Afghan Parole Tear Sheet

I've seen Dari and Pashto (or so I am told) translations as well.

Michael Valverde
(Acting) Associate Director
USCIS Field Operations
[redacted]

**(b)(6)**  **From:** Strong, Stacy K [redacted]
**Sent:** Tuesday, August 24, 2021 10:00 PM
**To:** Valverde, Michael [redacted]
**Subject:** Fwd: Afghan Parole Tear Sheet

Michael:

Please see what CBP will be sending out.

Regards,

Stacy

Sent from my iPhone

Begin forwarded message:

**From:** "DEYO, KATRINA E" [redacted]
**Date:** August 24, 2021 at 8:07:54 PM EDT
**(b)(6)**  **To:** "Stevens, Robert M" [redacted] "JAIGOBIND, CARL" [redacted]
"Saunders, Allison (ACF)" [redacted] , "Strong, Stacy K"
[redacted]  "Van Brandt, Danna J" [redacted] "Ingraham, Hilary E"
[redacted]
**Cc:** "Op Allies Refuge (Task Force TL)" [redacted]  "Fujimura, Paul"
[redacted]
**Subject: RE: Afghan Parole Tear Sheet**

Good evening,

Please see attached final sheet that has been cleared.

Respectfully,

Katrina Deyo
U.S. Customs and Border Protection
Afghanistan Coordination Task Force

(b)(6)

---

**From:** Stevens, Robert M
**Sent:** Tuesday, August 24, 2021 4:05 PM
**To:** DEYO, KATRINA E                        JAIGOBIND, CARL
                                    Saunders, Allison (ACE)                        ; Strong, Stacy
K                                    ; Van Brandt, Danna J                    Ingraham, Hilary E

**Cc:** Op Allies Refuge (Task Force TL)                    ; Fujimura, Paul

**Subject:** RE: Afghan Parole Tear Sheet

CAUTION: This email originated from outside of DHS. DO NOT click links or open attachments unless you recognize and/or trust the sender. If you feel this is a suspicious-looking email, please report by using the Report Phish button option.

Hi Katrina,

Do you have an update as to whether the Tear Sheet has been cleared yet?

Thank you,
Robert M. Stevens
SIV Relocation Task Force
Department of State

(b)(6)

cell:

(b)(6)    **From:** DEYO, KATRINA E
**Sent:** Tuesday, August 24, 2021 12:49 PM
**To:** Jaigobind, Carl                        ; Stevens, Robert M                    ; Saunders,
Allison (ACF)                        (U) Strong, Stacy K. (Bangkok)

(b)(6)    **Cc:** Op Allies Refuge (Task Force TL)                    ; Fujimura, Paul

**Subject:** RE: Afghan Parole Tear Sheet

To be clear, this is not yet being provided. Please do not disseminate at this time.

Respectfully,



## AFGHAN PAROLE INFORMATION

Welcome to the United States. You have been processed by U.S. Customs and Border Protection (CBP) and paroled into the United States for two years for urgent humanitarian reasons, pursuant to 8 U.S.C. §1182(d)(5). Your parole into the United States is conditioned upon your compliance with the conditions outlined below.

## Transport to U.S. Government-Run Location and Assistance at No Charge to You

You will be provided transportation to a government-run location where you will be provided housing at meals at no cost, receive required medical vaccinations and screenings, and given an opportunity to complete work authorization paperwork. You also will be enrolled in temporary medical insurance and receive medical care, if needed. **This processing will satisfy the medical requirements detailed below.**

Once these steps are complete, the U.S. government will arrange travel to your final destination in the United States. You will be given an opportunity to connect with non-governmental organizations that operate independently from the U.S. government and that may assist in your resettlement in the United States.

## Medical Conditions of Parole

**Within seven days of being granted parole**, you are required to:

- get vaccinated for MMR, polio, and one dose of the COVID vaccine, absent proof of prior vaccination;
- undergo tuberculosis testing and take appropriate isolation and treatment measures if the tuberculosis test is positive; and
- report compliance with this requirement to U.S. Citizenship and Immigration Services (USCIS) at www.uscis.gov/vaccination-status.

If you do not go to the government-run locations where these services are provided, you will be responsible for arranging the vaccinations and testing on your own.

## Other Conditions of Parole

- Consistent with 8 U.S.C. § 1302 *et seq.* and as a condition of your parole, you must provide every change in your address to USCIS as provided at www.uscis.gov/addresschange.

- You must notify USCIS of every change of address as soon as possible and no later than 30 days from each change of address.

- You must comply with all public health directives, comply with requests for additional information from the Department of Homeland Security and federal law enforcement, and comply with local, State and Federal laws and ordinances.

- You may also be subject to additional conditions of parole on a case-by-case basis.

## Failure to Comply with Conditions of Parole

Failure to comply with these conditions can lead to termination of your parole, detention and removal from the United States, and could interfere with the ability to become a legal permanent resident and/or obtain other benefits and immigration relief to which you might otherwise be entitled.

*More information and resources, including information about immigration benefits, can be found at www.uscis.gov*

| | |
|---|---|
| From: | Ruppel, Joanna |
| Subject: | Info sheets for Afghan evacuees with translations |
| To: | Johnson, Bobbie L; Wright, Charles E; Stone, Mary M; Bird, John W (Wally); Chiorazzi, Anne; On, Dung B; Schoener, Sarah L; Villasenor, Eissa M |
| Cc: | Strong, Stacy K |
| Sent: | August 25, 2021 10:00 AM (UTC-05:00) |
| Attached: | AFGHAN PAROLE INFORMATION SHEET FINAL_2a.pdf, AFGHAN PAROLE INFORMATION SHEET DARI.pdf, AFGHAN PAROLE INFORMATION SHEET PASHTO.pdf |

Now with the translations. Note that this applies to those paroled by CBP at a POE. We will need to regroup on what we might require for Afghan parolees who do not come through the evacuation process. This raises some issues for us. Will regroup with you.

Joanna

Joanna Ruppel
Chief, International and Refugee Affairs Division
USCIS Refugee, Asylum and International Operations Directorate

(b)(6)

[redacted] (cell)

**From:** DAVIES, MATTHEW S [redacted]
**Sent:** Wednesday, August 25, 2021 10:52 AM
**To:** Colton, Amelia R. EOP/NSC [redacted]; Tobin, Katie A. EOP/NSC [redacted]

(b)(6)

| | |
|---|---|
| Higgins, Jennifer B [redacted] | TSACIMG.CoordLead |
| [redacted]>; Po, Rosa EOP/WHO [redacted] | ; Chisnell, Dana E. EOP/OMB |
| ; Grant, Rachel R. EOP/NSC [redacted] | |
| TSACIMG.SecurityOperations < [redacted] | ; Torlage, Jonathan |
| ; Wolan, Jeffrey [redacted] | >; Williams, Julian |
| [redacted] Ried, Curtis R. EOP/NSC [redacted] | />; Pilch, Jacquelyn J. EOP/NSC |
| ; Olavarria, Esther M. EOP/WHO < [redacted] | ; Anderson, |
| Kathryn E [redacted] | ; LUCZKOWSKI, JEREMY [redacted] |
| Hardin, Michael [redacted] | Stubblefield, Angela [redacted] | Bartlett, |
| Lawrence E. [redacted] | ; Petsonk, Annie (OST) [redacted] | ; Bouri, Nidhi EOP/NSC |
| [redacted] Horne, Emily J. EOP/NSC [redacted] | ; DASKAL, JENNIFER |
| [redacted]>; Etim, Linda EOP/NSC [redacted] | ; Varricchio, Allison M. EOP/NSC |
| Sokoler, Jennifer B. EOP/WHO [redacted] | >; Meier, |
| Edward F. EOP/OMB [redacted] | ; Pelegar, Brandon B. EOP/NSC [redacted] | ; Brocato, |
| Rebecca R. EOP/NSC [redacted] | ; Szabat, Joel (OST) [redacted] | |
| Berschinski, Robert G. EOP/NSC [redacted] | O'Berry, Donna |
| (OST) [redacted] | ; Richelsoph, David N. EOP/OVP [redacted] | ; King, Heather C |
| SES OSD OUSD POLICY (USA [redacted] | ; Debass, Thomas |
| VINOGRAD, SAMANTHA [redacted] | >; Tanner, |
| Rebecca S. EOP/NSC [redacted] | Hartje, Lauren L. EOP/NSC [redacted] | |
| Chittenden, Valerie J. EOP/NSC [redacted] | >; OConnell, Dawn [redacted] | |
| Geltzer, Joshua A. EOP/NSC [redacted] | >; Deeks, Ashley S. EOP/WHO |
| ; Cross, Sarah R [redacted] | ; Lorman, Amanda L. EOP/NSC |
| Johnston, Meredith A. EOP/NSC [redacted] | >; Brister, |
| Paul D. EOP/NSC [redacted] | ; De Los Santos, Karen EOP/OMB [redacted] | |
| Savett, Sean D. EOP/NSC [redacted] | ; Bernstein, Jesse M. EOP/NSC |
| Thompson, Jim F. EOP/NSC [redacted] | ; Valverde, Michael |
| ; Gauger, Kelly A [redacted] | ; Taylor, Benjamin (OST) [redacted] | |
| Ruppel, Joanna [redacted] | ; NUNEZ-NETO, BLAS |
| ; Allison, Alicia P [redacted] | Burkholder, David S (FAA) |

US 0249



; Metzger, Gillian E. (OLC) >; Heibeck, Wayne (FAA)
; Newhouse, Victoria ; Rood, Elizabeth H
King, Chas Strong, Stacy K
OHarrah, James E JR CAPT USN JS J5 (USA
; Sullivan, M Colin CDR USN JS J5 (USA ; Fisher, Brad
S Maj USAF JS J5 (USA Sylvia, Brett G BG USARMY JS J5 (USA
Davis Ba, Jessica L. EOP/OVP
Haserodt, Jason R
Zengotitabengoa, Colleen R Schroeder, Christopher H. (OLC)
; Adrian, John-Paul P (JP) Lt Col USAF JS J5 (USA)
Maruca, Nicholas A LCDR USN JS J5 (USA)
Turner, Michael Jaddou, Ur M ; Evans, Patrick L. EOP/NSC
; Miguez, Marc Jeffrey RDML USN JS J3 (USA) ; Dunn,
Courtenay L. EOP/NSC ; Nacin, Andrew M. EOP/OMB
; Fernandez-O'Toole, Cristina Am LT USN (USA)
; TSACIMG.SecurityOperations
**(b)(6)** Isacco Jr., Michael D ; Marston, Hilary D. EOP/NSC
Bartee, Maureen S. EOP/NSC Miller, Gary
; Taliaferro, Jeffrey B (Jeff) Maj Gen USAF JS J3 (USA)
Anderson, Dagvin R.M. Maj Gen USAF JS J3 (USA) ; Ingraham, Hilary E
Cetron, Marty (CDC/DDID/NCEZID/DGMQ) Posey, Drew
(CDC/DDID/NCEZID/DGMQ) ; Adler, Michael J. EOP/NSC ; Larsen,
Peter L. EOP/NSC >; Stern, Joshua E ; Brown, Clive
(CDC/DDID/NCEZID/DGMQ) ; Jentes, Emily S. [CDC/DDID/NCEZID/DGMQ) ; Bradfield,
Frank L (Les) III Brig Gen USAF JS J5 (USA) ; OBRIEN, Kristina M SES JS J4 (USA)
Davis, Matthew C CIV (USA) ; CLOUGH, CHELSEA
; GABRIEL K. POLING Charles Smith ;
Jason Herring
; Stpierre, Edward M RDML USCG US NORTHCOM (USA)
MacPherson, Bradley J CIV NORAD-USNC NCJ3 (USA)
Grant, Natalie (ACF
Mason, Byron (ACF ; Saunders, Allison (ACF
Nykamp, Nancy James
Hartje Richard Machado ; Papier, Leesa J (FAA)
Mark McCormick ; Gillian, Edward G MSgt USAF JS J5 (USA)
Herrera, Holly A ; Gregory Love ; Hall, Jeremy S (Woody) LCDR USN JS J5
(USA) ; Andrea Cruz ; Neelakantan, Vidya EOP/NSC
; Villanueva, Josie (OS/IOS) ; Tellawi, Heba K. EOP/WHO
**(b)(6)** ; Riggs, Karen S CIV JS J5 (USA)
Walter, Terrence L Col USAF JS J5 (USA) >; Hollie, Leslie
(IOS/ONS) ; Julie Kern ; Jennifer Sabatello
; Julianna Logan ; Baughman, Brian M. EOP/NSC
Cc: Young, Noel L. EOP/NSC ; Kevin Vorndran Lubaina Qaiyumi
; Froemling, Hao-y Tran ; Sanchez, Carlos (OST)
; O'Malley, Mike (OST) >; Renee Flaks
Bambas, Nicole (OST) >; Abraham, Julie (OST) ; Alkhateeb, Maha
(OST) ; Dawn McCarthy ; Qureshi, Mona (OST)
; Patrick Reddan

**Subject:** RE: Recurring IPC on Afghan Evacuation Domestic Reception

All,

As referenced – attached are the parole condition notification sheets being provided to all Afghan paroles upon completion of inspection by CBP.

Matthew S. Davies
Executive Director
Admissibility and Passenger Programs
Office of Field Operations
U.S. Customs and Border Protection

(b)(6)

(office)
(cell)



## AFGHAN PAROLE INFORMATION

Welcome to the United States. You have been processed by U.S. Customs and Border Protection (CBP) and paroled into the United States for two years for urgent humanitarian reasons, pursuant to 8 U.S.C. §1182(d)(5). Your parole into the United States is conditioned upon your compliance with the conditions outlined below.

### Transport to U.S. Government-Run Location and Assistance at No Charge to You

You will be provided transportation to a government-run location where you will be provided housing at meals at no cost, receive required medical vaccinations and screenings, and given an opportunity to complete work authorization paperwork. You also will be enrolled in temporary medical insurance and receive medical care, if needed. **This processing will satisfy the medical requirements detailed below.**

Once these steps are complete, the U.S. government will arrange travel to your final destination in the United States. You will be given an opportunity to connect with non-governmental organizations that operate independently from the U.S. government and that may assist in your resettlement in the United States.

### Medical Conditions of Parole

**Within seven days of being granted parole**, you are required to:

- get vaccinated for MMR, polio, and one dose of the COVID vaccine, absent proof of prior vaccination;
- undergo tuberculosis testing and take appropriate isolation and treatment measures if the tuberculosis test is positive; and
- report compliance with this requirement to U.S. Citizenship and Immigration Services (USCIS) at www.uscis.gov/vaccination-status.

If you do not go to the government-run locations where these services are provided, you will be responsible for arranging the vaccinations and testing on your own.

### Other Conditions of Parole

- Consistent with 8 U.S.C.§ 1302 *et seq.* and as a condition of your parole, you must provide every change in your address to USCIS as provided at www.uscis.gov/addresschange.

- You must notify USCIS of every change of address as soon as possible and no later than 30 days from each change of address.

- You must comply with all public health directives, comply with requests for additional information from the Department of Homeland Security and federal law enforcement, and comply with local, State and Federal laws and ordinances.

- You may also be subject to additional conditions of parole on a case-by-case basis.

### Failure to Comply with Conditions of Parole

Failure to comply with these conditions can lead to termination of your parole, detention and removal from the United States, and could interfere with the ability to become a legal permanent resident and/or obtain other benefits and immigration relief to which you might otherwise be entitled.

*More information and resources, including information about immigration benefits, can be found at www.uscis.gov*

| | |
|---|---|
| **From:** | Johnson, Bobbie L  (b)(7)(e) |
| **Subject:** | FW: Daily☐ Expedite Requests |
| **To:** | Wright, Charles E; Baxter, Mark P |
| **Sent:** | August 25, 2021 4:34 PM (UTC-05:00) |

Charles and Mark – If you haven't done so already, please communicate this to HAB and RIO-FDNS, respectively.
Thanks.

**From:** Johnson, Bobbie L
**Sent:** Wednesday, August 25, 2021 5:27 PM
**To:** Baxter, Mark P ☐; Alli, Akinkunmi O (Akin) ☐; Wright,
(b)(6)  Charles E ☐
**Cc:** Grigsby, Kevin M ☐
**Subject:** RE: Daily☐ Expedite Requests

Great! Thanks all! So here's the final version that will be communicated to HAB and RIO-FDNS:

(b)(7)(e)

- By 10:30 am ET every day, HAB will send to RIO-FDNS ☐ the list of Afghan parole individuals that need ☐ expedites (i.e. all new Afghan cases received over the preceding 24 hours for which HAB has not yet requested ☐ expedites.)
- HAB will copy Akin, Alexander, Bobbie, Charles, Kevin, Mark, Melat, Chad, and Justen on such daily requests.
- RIO-FDNS will immediately do their part to submit these expedite requests to ☐ by 12:00 pm ET or earlier daily.
- In each daily submission to ☐, RIO-FDNS will specify these are Afghan cases and will ask for a turn-around of 24 hours or less due to the urgency of the situation.
- As soon as RIO-FDNS receives results, they will update CAMINO and alert HAB and everyone on the original request email chain.
- We need to all collectively monitor that requests are being submitted, results are being entered, and any NCTC results that are pending over 24 hours are flagged.
- If any ☐ check is pending over 24 hours, Akin will contact ☐

(b)(6)  **From:** Baxter, Mark P ☐
**Sent:** Wednesday, August 25, 2021 5:00 PM
**To:** Alli, Akinkunmi O (Akin) ☐; Johnson, Bobbie L ☐
Wright, Charles E ☐
**Cc:** Grigsby, Kevin M ☐
**Subject:** RE: Daily☐ Expedite Requests

(b)(7)(e)

Adding a few additional proposed edits/thoughts below in red. Thanks.

**From:** Alli, Akinkunmi O (Akin) ☐
**Sent:** Wednesday, August 25, 2021 4:55 PM
(b)(6)  **To:** Johnson, Bobbie L ☐; Wright, Charles E ☐
**Cc:** Grigsby, Kevin M ☐ Baxter, Mark P ☐; Alli,
Akinkunmi O (Akin) ☐
**Subject:** RE: Daily☐ Expedite Requests

(b)(7)(e)

Hello Bobbie,

Some additional flags below based on the conversation that I just had with Mark and Justen.

Thanks,
Akin

Akin Alli | *Branch Chief* | IRAD FDNS | ⬚ (cell)
⬚ | Secure: ⬚

(b)(6)

**From:** Johnson, Bobbie L ⬚
**Sent:** Wednesday, August 25, 2021 4:46 PM
**To:** Alli, Akinkunmi O (Akin) ⬚ ; Wright, Charles E ⬚
**Cc:** Grigsby, Kevin M ⬚ Baxter, Mark P ⬚
**Subject:** Daily ⬚ Expedite Requests
**Importance:** High

(b)(7)(e)

Akin and Charles,

Following on to the various discussions:

(b)(6)

- By 10:30 am ET every day, HAB will send to RIO-FDNS the list of Afghan parole ~~cases~~ individuals that need ⬚ expedites to ⬚ ; (i.e. all new cases received over the preceding 24 hours for which HAB has not yet requested ⬚ expedites.) Can HAB send list of individuals instead of cases to ensure that FDNS doesn't miss anyone and that expedited batches aren't cross-contaminated with non-Afghan individuals. Just echoing

(b)(7)(e)

Akin's comment, if HAB could submit the list as individuals that require ⬚ expedites instead of as cases, this will make the submission process to ⬚ from RIO-FDNS' perspective more efficient.
- HAB will copy you, Alex, me, Charles, Kevin, and Mark on such daily requests. Add Melat and Chad to this list. Also Justen.
- RIO-FDNS will immediately do their part to submit these expedite requests to ⬚ by 12:00 pm ET or earlier daily.
- In each daily submission to ⬚ RIO-FDNS will specify these are Afghan cases and will ask for a turn-around of 24 hours or less due to the urgency of the situation.
- As soon as RIO-FDNS receives results, they will update CAMINO and alert HAB and everyone on the original request email chain.
- We need to all collectively monitor that requests are being submitted, results are being entered, and any ⬚ results that are pending over 24 hours are flagged.
- If any ⬚ check is pending over 24 hours, you will contact ⬚

Does this sound right and doable? Any other suggestions?

Thanks,

Bobbie

| From: | Villasenor, Eissa M |
|---|---|
| Subject: | New Humanitarian Parole Fact Sheet for Afghans |
| To: | RAIO-IRAD-Managers |
| Cc: | Rankin, Carrie A; Fatica, Erin K; Boland, Emily H; Raya Ipatzi, Kimberly Y; RAIO Communications and Events |
| Sent: | August 27, 2021 7:27 AM (UTC-05:00) |

Hello everyone,

A quick update to let you know that a Humanitarian Parole Fact Sheet for Afghans has been posted to our public website. We've also added a number of alerts on our humanitarian related sites. More updates to come.

Information for Afghan Nationals on Parole Into the United States | USCIS

Thanks,
Eissa

Eissa M. Villaseñor
Special Assistant
International and Refugee Affairs Division/RAIO/USCIS

(b)(6) [_____] cell
[_____]

| | |
|---|---|
| From: | Ruppel, Joanna |
| Subject: | FW: Overtime Guidance for Field Operations Directorate - Resettling Afghan |
| To: | RAIO-IRAD-Managers |
| Sent: | August 29, 2021 10:42 AM (UTC-05:00) |
| Attached: | FOD Overtime WebTA Supplement - Resettling Afghans.pdf, Biweekly Premium Pay Cap Tracking Template.xlsx, FOD Guidance to All personnel supporting Resettling Afghans.pdf |

Joanna Ruppel
Chief, International and Refugee Affairs Division
USCIS Refugee, Asylum and International Operations Directorate

(b)(6)

⬚⬚⬚⬚⬚⬚⬚⬚ (cell)

**From:** Higgins, Jennifer B ⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚
**Sent:** Sunday, August 29, 2021 11:26 AM
**To:** RAIO - Executive Leadership ⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚
**Subject:** Fwd: Overtime Guidance for Field Operations Directorate - Resettling Afghan

Making sure you all have this.

Get Outlook for iOS

(b)(6) **From:** Peasley, Mark L ⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚
**Sent:** Friday, August 27, 2021 8:41 PM
**To:** Denayer, Larry C; Dawson, Inga I; Selby, Cara M (Carrie); Wooden, Janeen R (Janeen); Bell, Stephen P; Meckley, Tammy M; Higgins, Jennifer B; Rellis, Jennifer L; Nolan, Connie L; Bae, Connie J; Emrich, Matthew D; Gramiccioni, Jennifer L; McAllum, Jessica L; Puchek, Elizabeth A (Beth); Mayhew, Michael X; FOD-HQ-AADs; FOD-HQ-BranchChiefs; FOD-G8; FOD-ARDs; FOD-DDs; FOD-DDDs; Lambert, Percy L; Dedvukaj, Mirash (Mick); Riddle, Kevin J; Sheffler, Carissa L; Ortiz, Mario R; Mendez, Jesse X; Taylor, Sarah T; Bausman, Kathleen A; Thompson, John E; Gray, Tamika S; Fuentes, Janet G; La Mere, Alice V; Stewart, Elizabeth J (Beth); Jefferson, Kim L; Haag, Angelia J (Angel); Gonzalez, Sabrina I; Rice, Nighthawk D
**Cc:** Bahr, Cynthia M (Cindy); Jefferson, Kim L; Andrade, Peta Gae A; FODHRM; Valverde, Michael; Slattery, Shannon E; Kvortek, Lisette E; Quimby, Christopher M (Chris); Rosenberg, Ronald M (Ron); Winship, Courtney A; Williams, Kevin M; Conklin, Jeffery A; Chung, Jane; Bahr, Cynthia M (Cindy)
**Subject:** Overtime Guidance for Field Operations Directorate - Resettling Afghan

All,

Attached is the overtime guidance for all individuals deployed in support of the Field Operations Directorate - Resettling Afghans. This guidance include both FLSA – Exempt and FLSA Non-Exempt overtime recording guidance.

Individuals detailed (deployed) and assigned to Field Operations Directorate is authorized to use the overtime web ta code provided in this guidance.

Individuals are highly encouraged to follow the guidance that have been coordinated, reviewed and cleared by HCT and USCIS Payroll.

We appreciate your support!

Any questions please direct your personnel to contact ⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚

Mark

(b)(6)

Sincerely,

Mark L. Peasley
Chief, Resource Management
Field Operations Directorate
United States Citizenship & Immigration Services
Department of Homeland Security

(b)(6)  Office: ☐
Mobile: ☐

RMB MOTTO: PEOPLE FIRST, MISSION ALWAYS

All personnel supporting Resettling Afghans (RA) perform work that is the same or similar with their normal line of works and in supporting USCIS mission. There is no change in position during this detail.

The home office and Resettling Afghans Detailees will follow this procedure as below:

A Standard Form (SF) 52

FOD Headquarters, HRM (fodhrm@uscis.dhs.gov) will generate a SF-52 for all RA detailees. The purpose of the SF-52 is to record your time in supporting USCIS mission. This is NOT to change an employee Fair Labor Standard Act (FLSA) status. An employee who is on detail is considered for pay and strength count purposes to be *permanently occupying his or her regular position.*

Overtime

1. All overtime work must be requested, approved and documented within WebTA;
2. All overtime work must be entered into WebTA selecting the appropriate overtime designation; EX8OFS2001AID.

## Night Differential Pay:

1. Night differential is **regularly scheduled** work performed by an employee between the hours of 6 p.m. and 6 a.m.; an employee who performs night work is entitled to pay for that work at their rate of basic pay plus a night pay differential of 10% of their basic pay. **Regularly scheduled** means that the overtime was scheduled in advance of the administrative workweek.

2. In completing WebTA the employee must code the night differential hours as BASE PAY WITH NIGHT DIFF (TC 11). The hours worked which do not fall within the 6pm to 6am timeframe must be recorded in WebTA as Regular Hours.

3. Regularly scheduled overtime hours worked between 6PM- 6AM should be recorded in WebTA as OVER 40 OT W/NIGHT DIFF (TC 25).

## Sunday Work:

1. An employee is entitled to 25 percent of his or her rate of basic pay for work performed during *a regularly scheduled* basic 8-hour tour of duty that begins or ends on a Sunday.
   - Flexible work schedule employees are entitled to Sunday premium pay for up to 8 hours of his or her basic work requirement based on electing to work flexible hours during a basic tour of duty that begins or ends on Sunday. Hours of work in excess of 8 hours in a day or 40 hours in a which are ordered in advance are recorded as overtime.

   - Compressed Work Schedule employees are entitled to Sunday premium pay for all non-overtime hours the employee works during each regularly scheduled basic tour of duty that begins or ends on Sunday. Hours of work in excess of the employees compressed work schedule on that day are recorded as overtime.

2. OT hours worked on Sunday will be recorded in WebTA as OVER 40 OVERTIME (TC 21).

3. Non-OT hours worked on a Sunday between 6pm and 6am must be recorded in WebTA as BASE WITH SUNDAY AND NIGHT DIFFERENTIAL (TC 05).

**Note**: Sunday premium pay is not paid for overtime hours of work.

## Work on a Holiday

•       Holiday Premium Pay:  An employee who performs work during his or her regularly scheduled tour of duty on a federal holiday is entitled to premium pay at a rate equal to his or her basic rate of pay

•       Overtime on a holiday:  An employee who performs overtime work on a holiday (outside their regular tour of duty) is paid for those hours with overtime under the applicable overtime laws and regulations and not with the holiday premium.

•       Employees are not entitled to holiday premium pay for the time they spend in work-related travel during holiday hours of their tours of duty

## Bi-weekly Premium Pay Cap

The bi-weekly premium pay cap limits the total of basic pay and premium pay for a bi-weekly pay period to the greater of the bi-weekly rate payable for GS-15, step 10, or level V of the Executive Schedule.

The annual premium pay cap limits the total of basic pay and premium pay to the greater of the annual rate for GS-15, step 10, or the annual rate of level V of the Executive Schedule. The annual premium pay cap applies to basic pay and premium pay earned in biweekly pay periods that have a payroll pay date in the given calendar year.

While there is no provision for waiving the annual premium pay cap, the DHS has the authority to waive the biweekly pay cap and apply the annual premium pay cap to employees performing work in connection with an emergency or a mission-critical event.

Since DHS has not issued a DHS-wide waiver, FLSA exempt employees  who's hours worked exceeds the bi-weekly premium pay cap will be subject to the biweekly pay cap. The below process applies with an assumption that a DHS-wide waiver is granted.

- Hours in excess of the bi-weekly premium cap zeroed out the next pay period.  WebTA will record the number of hours zeroed out in the summary.  Individuals should capture their hours in excess of the bi-weekly pay cap using the "Biweekly Premium Pay Cap Tracking Template".

- Capture the forfeited hours and pay in excess of the bi-weekly premium pay cap in the template and update each pay period according to the number of hours zeroed out by WebTA. If applicable, employees should see the money and hour amounts in the remarks block of the ELS each PP.

Upon the end of the calendar year the template will be submitted to FOD Headquarters HRM fodhrm@uscis.dhs.gov.

- Within PP 2 or 3 of CY2022, FLSA exempt individuals will then receive a lump sum pay that is equivalent to the total unpaid bi-weekly pay that is in excess of the bi-weekly pay cap, but not to exceed the maximum annual pay cap.

Any questions on this guidance please contact FOD Headquarters HRM at

(b)(6)

# Supplemental Time & Attendance Information

During this deployment employees will need to perform some hours beyond their normal tour of duty, for which they will earn overtime (OT). Employees *must* submit OT requests in WebTA following the normal process.

Employees will continue to use their home office accounting code for all normal duty hours. For OT hours your employees need to select the Resettling Afghans OT accounting code: EX8OFS2001AID.

Please see the chart below as a quick guide to determine which code employees should use and the snapshot of how it should look in WebTA.

| Appropriate Accounting Code | What you worked | Work Time selected in WebTA |
|---|---|---|
| Home Office | M-F between 6am-6pm | Regular Base Pay |
| Home Office | M-F between 6pm-6am | Base with Night Diff |
| EX8OFS2001AID | OT M-Sunday between 6am-6pm | Over 40 Overtime |
| EX8OFS2001AID | OT M-Sunday between 6pm-6am | Over 40 OT w/Night Diff |
| EX8OFS2001AID | Travel time more than normal duty | Comp Time/Travel Earned |

| Transaction | Pv Stv Account | Aug 15 S | 16 M | 17 T | 18 W | 19 T | 20 F | 21 S | Wk 1 | 22 S | 23 M | 24 T | Aug 25 W | 26 T | 27 F | 28 S | Wk 2 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Work Time** | | | | | | | | | | | | | | | | | | |
| Over 8 Overtime | | | | | | | 1:30 | | 1:30 | | | 1:30 | 1:30 | 1:30 | | | 4:30 | 8:00 |
| Over 40 Overtime | EX8OFS20(14)ID (No Description) | | | | | | 10:00 | 10:00 | 16:00 | | | | | | 12:00 | 14:00 | 28:00 |
| Over 40 OT w/Night Diff. | | | | | 2:00 | 2:00 | 2:00 | | | | 2:00 | 2:00 | 2:00 | 2:00 | | | |
| Regular Base Pay | | | | | | | | | | 8:00 | | | | | | | 8:00 |
| Telework Alt. Site > 2 days | Home Office Account Code | | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | | 40:00 | | 8:00 | 8:00 | 8:00 | 8:00 | | 40:00 | 72:00 |
| Comp Time/Travel Earned .76 | | | | | | | | | | 2:00 | | | | | | 2:00 |
| | Work Time Total | 8:00 | 8:00 | 8:00 | 9:00 | 9:30 | 10:00 | 51:30 | 18:00 | 8:00 | 9:30 | 9:30 | 9:30 | 8:00 | | 60:30 | 112:00 |
| **Leave and Other Time** | | | | | | | | | | | | | | | | | | |
| | | | | | | (No Leave and Other Time transactions) | | | | | | | | | | | | |

US 0261

| | |
|---|---|
| From: | Bird, John W (Wally) |
| Subject: | AFGAN Cases |
| To: | Cooper, Judith A (Judy) (CTR); Lariviere, Larocha N; Lassiter, Fiona K; MacDawutey, Eric A; Matthews, Melissa D (CTR); Naquin, Marie-line; Poli, Henry P (Hank); Rivers, Brian A (Ickis) (CTR); Amian, Rose Marie L; Donnelly, Christine C; Falade, Abigail; Hattendorf, David L; Kingsley, Leslie; Lamorey, Sarah J; Libera, Anne V; Luft, Melissa A; Matusick, Nathan D (Nate); May, Samantha A (Sammy); Mayer, Rachel S; Mendoza, Riccis C (Red); Nash, Latecia C (LC); Naylor, Larissa M; Pepe, Yanick; Polishuk, Richard A; Richardson, Denisha S; Rossi, Nathaniel Q; Singla, Vinay M; Stamps, Allison L |
| Cc: | Parisi, Christina C; Gray, Kathryn D |
| Sent: | August 31, 2021 2:41 PM (UTC-05:00) |

Greetings all-

This morning we were informed that there may be some new instructions coming to HAB regarding the processing of Afghan parole cases following the closing of operations on the ground in Kabul.  Two significant operational changes are that we will no longer send daily reports requesting expedited [ ] review, or send our spreadsheet of new approved cases.
                        (b)(7)(e)

Please continue to complete the Afghan cases that you have, as expedite parole cases, until further notice.  Supervisors, if you have any procedural, or adjudication-related questions, please send them to me to review. I will  be happy to address questions tomorrow on our 10am adjudication meeting.

Overtime to adjudicate and process cases is still available for non-contract workforce, but please continue to request OT first from your supervisor, and if approved, register it on the HAB Overtime teams site.

Wally

| | |
|---|---|
| From: | Johnson, Bobbie L |
| Subject: | Afghan parole - expedites |
| To: | Bird, John W (Wally) |
| Cc: | Wright, Charles E |
| Sent: | September 1, 2021 11:29 AM (UTC-05:00) |

Wally,

Please see below.  D1 made the decision yesterday evening that we can no longer expedite all Afghan parole requests. The decision to expedite those cases initially was about getting people out on flights and now that the flights have ended, we need to go back to the 'normal' expedite process based on triage, not nationality.

If you have any questions, please let us know.

Thank you,

Bobbie

**(b)(6)**

**From:** Ruppel, Joanna
**Sent:** Tuesday, August 31, 2021 8:32 PM
**To:** Schoener, Sarah L; Chiorazzi, Anne; Villasenor, Eissa M; Johnson, Bobbie L; Wright, Charles E
**Cc:** Stone, Mary M
**Subject:** FW: Afghan parole - expedites

FYI.  We will no longer expedite parole requests based on being an Afghan nationals in Afghanistan but will return to our regular process of expediting based on individualized circumstances.

HQ folks – we will need to work with EXA on scripts and other messaging.

Bobbie and Charles,

Please let HAB staff know.

Thanks all,

Joanna

Joanna Ruppel
Chief, International and Refugee Affairs Division
**(b)(6)** USCIS Refugee, Asylum and International Operations Directorate

(cell)

| | |
|---|---|
| **From:** | Bird, John W (Wally) |
| **Subject:** | RE: Afghan parole - expedites |
| **To:** | Johnson, Bobbie L |
| **Cc:** | Wright, Charles E |
| **Sent:** | September 1, 2021 11:38 AM (UTC-05:00) |

Yes Bobbie- got it- thank you

Wally

(b)(6)

**From:** Johnson, Bobbie L
**Sent:** Wednesday, September 1, 2021 12:29 PM
**To:** Bird, John W (Wally)
**Cc:** Wright, Charles E
**Subject:** Afghan parole - expedites

Wally,

Please see below. D1 made the decision yesterday evening that we can no longer expedite all Afghan parole requests. The decision to expedite those cases initially was about getting people out on flights and now that the flights have ended, we need to go back to the 'normal' expedite process based on triage, not nationality.

If you have any questions, please let us know.

Thank you,

Bobbie

**From:** Ruppel, Joanna
**Sent:** Tuesday, August 31, 2021 8:32 PM
(b)(6)
**To:** Schoener, Sarah L                                    Chiorazzi, Anne
Villasenor, Eissa M                          ; Johnson, Bobbie L
Wright, Charles E
**Cc:** Stone, Mary M
**Subject:** FW: Afghan parole - expedites

FYI. We will no longer expedite parole requests based on being an Afghan nationals in Afghanistan but will return to our regular process of expediting based on individualized circumstances.

HQ folks – we will need to work with EXA on scripts and other messaging.

Bobbie and Charles,

Please let HAB staff know.

Thanks all,

Joanna

Joanna Ruppel
Chief, International and Refugee Affairs Division
USCIS Refugee, Asylum and International Operations Directorate

(b)(6)  (cell)

**From:** Ruppel, Joanna
**Subject:** parole applications for SIV applicants
**To:** Johnson, Bobbie L; Wright, Charles E; Bird, John W (Wally)
**Sent:** September 3, 2021 3:41 PM (UTC-05:00)

Team,

Would you please let HAB staff know that they should flag for us any Afghan parole applications filed by SIV applicants before making a decision? There are a number of discussions ongoing about SIV applicants and I want to be sure our parole determinations are informed by those.

Thanks,

Joanna

Joanna Ruppel
Chief, International and Refugee Affairs Division
USCIS Refugee, Asylum and International Operations Directorate

(b)(6) ⬚

⬚ (cell)

| From: | Ruppel, Joanna |
|---|---|
| Subject: | parole requests for Afghan nationals |
| To: | Wright, Charles E |
| Cc: | Bird, John W (Wally); Johnson, Bobbie L; Chiorazzi, Anne; On, Dung B; Schoener, Sarah L; Stone, Mary M |
| Sent: | September 7, 2021 7:29 AM (UTC-05:00) |

Charles,

Could you please ask staff to temporarily hold off on issuing any decisions for Afghan nationals seeking parole? But flag for me any case that is super urgent.

We are going to need to revise the approval letter and I need to provide D1 with some examples of the types of requests we are seeking to assess whether any additional guidance needs to be provided to adjudicators. In addition, we are reviewing how to get the appropriate vetting completed now that we cannot use the vetting employed for the evacuees.

Depending on how long this all will take, I may request that the CAMINO team put them all on hold and stop the clock. Will let you know once I have a better sense of timing.

We can discuss this further when we meet later today.

Joanna

Joanna Ruppel
Chief, International and Refugee Affairs Division
USCIS Refugee, Asylum and International Operations Directorate

(b)(6) [                    ]
[          ] (cell)

| | |
|---|---|
| From: | Wright, Charles E |
| Subject: | RE: parole requests for Afghan nationals |
| To: | Ruppel, Joanna |
| Cc: | Bird, John W (Wally); Johnson, Bobbie L; Chiorazzi, Anne; On, Dung B; Schoener, Sarah L; Stone, Mary M |
| Sent: | September 7, 2021 7:32 AM (UTC-05:00) |

Will do.

**(b)(6)**

From: Ruppel, Joanna
Sent: Tuesday, September 7, 2021 8:29 AM
To: Wright, Charles E
Cc: Bird, John W (Wally) [                    ]; Johnson, Bobbie L
Chiorazzi, Anne <[                ]          On, Dung B [                    ]>; Schoener, Sarah L
[                    ]>; Stone, Mary M <[                ]
Subject: parole requests for Afghan nationals

Charles,

Could you please ask staff to temporarily hold off on issuing any decisions for Afghan nationals seeking parole?  But flag for me any case that is super urgent.

We are going to need to revise the approval letter and I need to provide D1 with some examples of the types of requests we are seeking to assess whether any additional guidance needs to be provided to adjudicators.  In addition, we are reviewing how to get the appropriate vetting completed now that we cannot use the vetting employed for the evacuees.

Depending on how long this all will take, I may request that the CAMINO team put them all on hold and stop the clock.  Will let you know once I have a better sense of timing.

We can discuss this further when we meet later today.

Joanna

Joanna Ruppel
Chief, International and Refugee Affairs Division
USCIS Refugee, Asylum and International Operations Directorate

**(b)(6)** [                    ]
[            ] (cell)

| | |
|---|---|
| **From:** | Bird, John W (Wally) |
| **Subject:** | RE: parole requests for Afghan nationals |
| **To:** | Wright, Charles E; Ruppel, Joanna |
| **Cc:** | Johnson, Bobbie L; Chiorazzi, Anne; On, Dung B; Schoener, Sarah L; Stone, Mary M |
| **Sent:** | September 7, 2021 7:36 AM (UTC-05:00) |
| **Attached:** | Afghan Parole Case Analysis 090321 Bird.docx |

FYI, we have a number of State Afghan cases that are pending. We will also hold these unless advised to go forward. Attached is a paper I sent up on Friday that has some specific Afghan adjudication issues.

Wally

**From:** Wright, Charles E [               ]
**Sent:** Tuesday, September 7, 2021 8:32 AM
**To:** Ruppel, Joanna [               ]
(b)(6) **Cc:** Bird, John W (Wally) [               ] Johnson, Bobbie L [               ]
Chiorazzi, Anne [               ] On, Dung B [               ] Schoener, Sarah L
[               ] Stone, Mary M [               ]
**Subject:** RE: parole requests for Afghan nationals

Will do.

**From:** Ruppel, Joanna [               ]
**Sent:** Tuesday, September 7, 2021 8:29 AM
**To:** Wright, Charles E [               ]
(b)(6) **Cc:** Bird, John W (Wally) <john.w.bird@uscis.dhs.gov>; Johnson, Bobbie L [               ]
Chiorazzi, Anne [               ] On, Dung B [               ] Schoener, Sarah L
[               ] Stone, Mary M [               ]
**Subject:** parole requests for Afghan nationals

Charles,

Could you please ask staff to temporarily hold off on issuing any decisions for Afghan nationals seeking parole? But flag for me any case that is super urgent.

(b)(5) We are going to need to revise the approval letter and I need to provide D1 with some examples of the types of requests we are seeking[               ]
[                                                                              ]

(b)(7)(e)
Depending on how long this all will take, I may request that the CAMINO team put them all on hold and stop the clock. Will let you know once I have a better sense of timing.

We can discuss this further when we meet later today.

Joanna

Joanna Ruppel
Chief, International and Refugee Affairs Division
USCIS Refugee, Asylum and International Operations Directorate
[               ]

Page 1 of 1  9/3/21 Bird/HAB Request for Guidance on Afghan Parole Applications

Afghan Parole Case Analysis, Request for Guidance

(b)(5)

(b)(7)(e)

1.
2.

3.

4.

Starting on August 30, HAB was advised to return to an expedite on a case by case basis, rather than based on Afghan nationality, and to stand down on NCTC expedite requests and the production of approval spreadsheets each day.

Currently Afghan applications are arriving at an abnormally high rate, and in addition we are receiving numerous inquiries requesting expedited adjudication. We received 177 cases on Tuesday, and on Thursday, 10 boxes of cases averaging 10-30 cases in each box. It will take some time to enter these cases to ascertain through CAMINO the full caseload that we are handling, but we anecdotally know that most of these new cases involve Afghan beneficiaries.

Some of the factors that are significant issues that affect analysis for regular parole SOP adjudication:

(b)(5)
(b)(7)(e)

1.
2.

3.

4.

5.

| From: | Bird, John W (Wally) |
|---|---|
| Subject: | URGENT ALL HAB STAFF- HOLD DECISIONS on AFGHAN CASES |
| To: | Cooper, Judith A (Judy) (CTR); Lariviere, Larocha N; Lassiter, Fiona K; MacDawutey, Eric A; Matthews, Melissa D (CTR); Naquin, Marie-line; Poli, Henry P (Hank); Rivers, Brian A (Ickis) (CTR); Amian, Rose Marie L; Donnelly, Christine C; Falade, Abigail; Hattendorf, David L; Kingsley, Leslie; Lamorey, Sarah J; Libera, Anne V; Luft, Melissa A; Matusick, Nathan D (Nate); May, Samantha A (Sammy); Mayer, Rachel S; Mendoza, Riccis C (Red); Nash, Latecia C (LC); Naylor, Larissa M; Pepe, Yanick; Polishuk, Richard A; Richardson, Denisha S; Rossi, Nathaniel Q; Singla, Vinay M; Stamps, Allison L |
| Cc: | Wright, Charles E |
| Sent: | September 7, 2021 7:49 AM (UTC-05:00) |

Good morning everyone,

We are advised this morning to hold all decisions on Afghan parole cases. Please do NOT send Afghan parole cases (I131 or State SPBP) to the administrative staff for delivery, and administrative staff, if you have Afghan cases pending sending out any notices, please hold them and do not send by mail or email. Please continue to accept Afghan cases that are filed, and create CAMINO records.

This hold only applies to Afghan cases.

Please let me know if you have any questions.

Thank you

Wally

From:       Bird, John W (Wally)
Subject:    AfghanEx Case Tag
To:         Wright, Charles E
Sent:       September 7, 2021 10:25 AM (UTC-05:00)

Charles, we are still using the AfghanEx case tag.  We are doing this because we have been using it for all Afghan cases to date, although we are identifying cases for expedited adjudication on a case by case basis during triage, and not on the basis of Afghan nationality.

Wally

| From: | Cooper, Judith A (Judy) (CTR) |
|---|---|
| Subject: | Afghan case tag |
| To: | Rivers, Brian A (Ickis) (CTR); Matthews, Melissa D (CTR); Devlin, Alexis B |
| Cc: | Lassiter, Fiona K; Lariviere, Larocha N; Bird, John W (Wally) |
| Sent: | September 7, 2021 11:02 AM (UTC-05:00) |

Hi, everyone.

Forgot to mention this during the meeting. Just so we are on the same page, had a discussion with Wally this morning and even though we are not expediting the Afghan cases right now, let's keep checking the Ex. Afghan case tag box during Camino entry. This gives upper management a means to see how many cases are out there.

Thanks,
Judy

**Judith Cooper**
Document Technician
**The Oryza Group, LLC**
**DHS | USCIS | Refugee and International Operations**
**Humanitarian Affairs Branch**
999. N Capitol Street NE MS2295
Washington, DC 20529-2295

(b)(6)



*The Oryza Group, LLC*

U.S. Citizenship
and Immigration
Services

From:       Bird, John W (Wally)
Subject:    RE: parole applications for SIV applicants
To:         Ruppel, Joanna; Johnson, Bobbie L; Wright, Charles E
Sent:       September 7, 2021 12:08 PM (UTC-05:00)

Confirming that we will look for these in conjunction with the latest requirement to hold decisions.

From: Ruppel, Joanna [                    ]
Sent: Friday, September 3, 2021 4:41 PM
(b)(6)  To: Johnson, Bobbie L [                    ]; Wright, Charles E [                    ]; Bird, John W (Wally) [                    ]
Subject: parole applications for SIV applicants

Team,

Would you please let HAB staff know that they should flag for us any Afghan parole applications filed by SIV applicants before making a decision? There are a number of discussions ongoing about SIV applicants and I want to be sure our parole determinations are informed by those.

Thanks,

Joanna

Joanna Ruppel
Chief, International and Refugee Affairs Division
USCIS Refugee, Asylum and International Operations Directorate
(b)(6)  [                    ]
        [          ] (cell)

| | |
|---|---|
| **From:** | Bird, John W (Wally) |
| **Subject:** | RE: URGENT ALL HAB STAFF- HOLD DECISIONS on AFGHAN CASES |
| **To:** | Cooper, Judith A (Judy) (CTR); Lariviere, Larocha N; Lassiter, Fiona K; MacDawutey, Eric A; Matthews, Melissa D (CTR); Naquin, Marie-line; Poli, Henry P (Hank); Rivers, Brian A (Ickis) (CTR); Amian, Rose Marie L; Donnelly, Christine C; Falade, Abigail; Hattendorf, David L; Kingsley, Leslie; Lamorey, Sarah J; Libera, Anne V; Luft, Melissa A; Matusick, Nathan D (Nate); May, Samantha A (Sammy); Mayer, Rachel S; Mendoza, Riccis C (Red); Nash, Latecia C (LC); Naylor, Larissa M; Pepe, Yanick; Polishuk, Richard A; Richardson, Denisha S; Rossi, Nathaniel Q; Singla, Vinay M; Stamps, Allison L |
| **Cc:** | Wright, Charles E |
| **Sent:** | September 10, 2021 11:12 AM (UTC-05:00) |

Please note that this hold is still operative for now. I caught a case going out this afternoon and asked State to hold issuing the final travel document. Please do NOT send final approvals or denials of Afghan cases at this time until we advise you to do so.

Thank you

Wally



**From:** Bird, John W (Wally)
**Sent:** Tuesday, September 7, 2021 8:49 AM
**To:** Cooper, Judith A (Judy) (CTR) [ ] ; Lariviere, Larocha N [ ] ; Lassiter, Fiona K [ ] ; MacDawutey, Eric A [ ] ; Naquin, Marie-line [ ] ; Poli, Henry P (Hank) [ ] ; Rivers, Brian A (Ickis) (CTR) [ ] ; Amian, Rose Marie L [ ] ; Donnelly, Christine C [ ] ; Falade, Abigail [ ] ; Hattendorf, David L [ ] ; Kingsley, Leslie [ ] ; Lamorey, Sarah J [ ] ; Libera, Anne V [ ] ; Luft, Melissa A [ ] ; Matusick, Nathan D (Nate) [ ] ; May, Samantha A (Sammy) [ ] ; Mayer, Rachel S [ ] ; Mendoza, Riccis C (Red) [ ] ; Nash, Latecia C (LC) [ ] ; Naylor, Larissa M [ ] ; Pepe, Yanick [ ] ; Polishuk, Richard A [ ] ; Richardson, Denisha S [ ] ; Rossi, Nathaniel Q [ ] ; Singla, Vinay M [ ] ; Stamps, Allison L [ ]

(b)(6)

**Cc:** Wright, Charles E [ ]
**Subject:** URGENT ALL HAB STAFF- HOLD DECISIONS on AFGHAN CASES

Good morning everyone,

We are advised this morning to hold all decisions on Afghan parole cases. Please do NOT send Afghan parole cases (I131 or State SPBP) to the administrative staff for delivery, and administrative staff, if you have Afghan cases pending sending out any notices, please hold them and do not send by mail or email. Please continue to accept Afghan cases that are filed, and create CAMINO records.

This hold only applies to Afghan cases.

Please let me know if you have any questions.

Thank you

Wally

US 0276

**Department of Homeland Security**
U.S. Citizenship and Immigration Services

**U.S. Government Agency Parole Request**

Action Block

USCIS use only:

PCTS: _____

Alien #: _____

**Requesting Agency:  DOD ☐   DOS ☐  Other ☐**

| PART A:  INFORMATION ON PROSPECTIVE PAROLEE |
|---|

1. Last Name:

3. Middle Name: [          ]    4. Date of Birth: [ MM/DD/YYYY ]   5. Gender: [     ]

6. Aliases: [          ]    7. Alien #: [          ]

8. Country of Birth: [          ]    9. Country of Residence: [          ]

10. Country of Nationality: [          ]    11. Country of Citizenship: [          ]

12. Please list all previous and current passports:

Passport #: [     ]    Country of Issuance: [     ]    Expiration Date: [ MM/DD/YYYY ]

13.  Current location: [          ]    14. Current Immigration Status: [          ]

15.  Has prospective parolee ever been placed in removal proceedings? No ☐   Yes ☐   If yes, please explain:

16. Is the prospective parolee presently in removal proceedings? No ☐   Yes ☐  If yes, please explain:

17. Has the prospective parolee ever traveled to the U.S.? No ☐   Yes ☐  If yes, please include dates of entry, ports of entry, and information about the length and purpose of each trip.

| PART B:  PAROLE CATEGORY |
|---|

1. Protection: ☐   2. Medical Treatment: ☐   3. Other (explain): [          ]

Page 1 of 3    **UNCLASSIFIED**    Rev. 03-10-11
**FOR OFFICIAL USE ONLY**

## PART C: REQUESTING AGENCY'S INFORMATION

**1. POINT OF CONTACT at Requesting Agency:** (*Overall responsible submitting the parole request to HAB*)

**Last Name:** [                ] **First Name:** [                ] **Title:** [                ]

**Agency:** [                ] **Division:** [                ]

**Phone number:** [                ] **Email:** [                ]

**2. CASE AGENT:** (*Overall responsible for parolee selection and information validation*)

**Last Name:** [                ] **First Name:** [                ] **Title:** [                ]

**Agency:** [                ] **Division:** [                ]

**Phone number:** [                ] **Email:** [                ]

## PART D: TRAVEL INFORMATION

**1. Expected dates of parole:** [                ]

**2. Travel itinerary to the U.S.:** (*Outline start point, interim stops, and final destination*)

[                ]

**3. Approved mode of travel to the U.S.: Commercial:** ☐ **DOD MILAIR:** ☐ **Other:** ☐

**4. U.S. Port of Entry:** [                ]

## PART E: INFORMATION PERTAINING TO THE PAROLE REQUEST

**1.   What is the "significant public benefit" of the requested parole?**

[                ]

**2.  Is this request submitted for the protection of the prospective parolee? No** ☐ **Yes** ☐ **If yes, please explain and attach a threat assessment letter from the appropriate authority.**

[                ]

**3. What efforts were made to obtain a visa at a U.S. Embassy or Consulate? Include application documentation related to visa processing and disposition.**

[                ]

**4. Address any and all public safety and/or national security concerns regarding the prospective parolee. Include information on all security check results.  Provide documentation of all derogatory information known to the requesting entity.**

**UNCLASSIFIED**
**FOR OFFICIAL USE ONLY**

Rev. 03-10-11

22 CV 5312

US 0278

[gray box]

**5. How will the prospective parolee's living expenses be met, including, but not limited to travel, lodging, meals, and incidentals?**

[gray box]

**6. Location(s) where the prospective parolee will reside:** *(List posts, camps, stations, cities and states)*

[gray box]

**7. Does the prospective parolee have any relatives or acquaintances residing in the United States? Include complete name(s), relationship and current location (city and state).**

[gray box]

**8. Will the prospective parolee require employment authorization? No ☐   Yes ☐ If yes, please explain:**

[gray box]

---

### PART F: CERTIFICATION

*I understand it is my responsibility to report the prospective parolee's entry and any subsequent changes in his or her status or plans (i.e. departure, extension, or any change in status) to the USCIS/RAIO Humanitarian Affairs Branch.*

REQUESTING OFFICIAL:

Signature: [          ]    Date: [          ]

Title: [          ]    Division: [          ]    Agency: [          ]

POINT OF CONTACT:

Signature: [          ]    Date: [          ]

Title: [          ]    Division: [          ]    Agency: [          ]

**UNCLASSIFIED**
**FOR OFFICIAL USE ONLY**

Rev. 03-10-11

22 CV 5312

US 0279

U.S. Government Agency Request for Parole

A U.S. Government agency of the Executive Branch may also request parole on behalf of an individual outside the United States. This method for requesting parole is used much less frequently than requesting parole using Form I-131. Generally, the request is based on the reasonable expectation by the requesting agency that the alien's presence in the United States is for urgent humanitarian or for significant public benefit reasons. A request based on significant public benefit is generally premised on the belief that parole of the individual will facilitate one of the following:

· National security;

· Advancing foreign policy goals; or

· Other advantage or benefit to the United States.

The beneficiary of a U.S. Government agency parole request is not required to file Form I-131, and no fee is paid. A government agency requests parole on behalf of the beneficiary directly from IO on the U.S. Government Agency Request for Parole Template. The template is submitted with an attestation of the need for parole, sponsorship documents, identity documents for the parolee and sponsor, and any additional documents that support the parole request. Historically, this method for a U.S. Government agency to request parole has been referred to as "Significant Public Benefit Parole (SPBP)" or "Public Interest Parole (PIP)"; however, a U.S. Government agency may make a parole request for either urgent humanitarian reasons or significant public benefit. A U.S. Government agency parole request may also be made by a DHS component. This parole request method is a DHS self-referral, and is sometimes used to remedy an error made by the Department.

For a beneficiary of a government parole request who needs to remain in the United States beyond the period of authorized parole, the U.S. Government agency that made the initial request should submit a request for re-parole using the U.S. Government Agency Request for Parole Template, or the individual may file Form I-131, Application for Travel Document, to request to be reparoled.

| | |
|---|---|
| **From:** | Ruppel, Joanna |
| **Subject:** | Afghan P1 and P2 program |
| **To:** | Bird, John W (Wally); Wright, Charles E; Johnson, Bobbie L |
| **Cc:** | Schoener, Sarah L |
| **Sent:** | September 14, 2021 1:15 PM (UTC-05:00) |
| **Attached:** | USRAP Afghan P-1 P-2 Overview (State).docx, USRAP Afghan P-1 P-2 Workflow (State).docx |

Please see attached background material and share with the team for awareness.

Joanna

Joanna Ruppel
Chief, International and Refugee Affairs Division
USCIS Refugee, Asylum and International Operations Directorate

(b)(6) 

_____
(cell)

## U.S. REFUGEE ADMISSIONS PROGRAM
## AFGHAN P-1 AND P-2 REFERRAL PROCESS

**Background on State Department Programs**

The U.S. Refugee Admissions Program (USRAP) is a joint program run by the Department of State Bureau of Population, Refugees, and Migration (PRM), Department of Homeland Security U.S. Citizenship and Immigration Services (USCIS), and the Department of Health and Human Services (HHS). Afghans affiliated with the U.S. government may be referred to either the USRAP Priority 1 (P-1) or Priority 2 (P-2) program access types, defined as follows:

- **P-1 Referrals**: P-1 referrals are intended for Afghans known to Embassy Kabul, who have imminent and compelling protection concerns, and who do not qualify for a P-2 referral. Examples include: civil society leaders, female leaders, senior government officials, security officials, members of the Afghan National Defense and Security Forces (ANDSF), etc. If an individual is potentially eligible for both a P-1 and P-2 referral, refer them to the P-2 program.
- **P-2 Referrals**: The Afghan P-2 program complements the Special Immigrant Visa (SIV) program and denotes groups of special concern by virtue of their circumstances and apparent need for resettlement. Afghan nationals eligible for the SIV program should **not** be referred to the USRAP. The Afghan P-2 designation permits U.S. government agencies and U.S.-based NGOs and media organizations to refer Afghans (and family members: spouse and children of any age, whether married or unmarried) who fall into the below three categories to PRM for P-2 USRAP access:
    - Afghans who do not meet the minimum time-in-service for a SIV but who work/worked at any time as employees of contractors*, Locally Employed (LE) Staff, interpreters/translators for the U.S. Government, United States Forces Afghanistan (USFOR-A), International Security Assistance Force (ISAF), or Resolute Support;
    - Afghans who work/worked for a U.S. government-funded program or project in Afghanistan supported through a U.S. government grant or cooperative agreement*
    - Afghans who are/were employed in Afghanistan by a U.S.-based media organization or nongovernmental organization (NGO). *Note: For this category, Afghan employees must be referred by the senior-most U.S. citizen employee of these organizations. NGOs and media organizations will refer to instructions available publicly to submit referrals to PRM.*

    *\*Note: Afghans who work/worked for sub-contractors and sub-grantees do not qualify for P-2.*

The Department of State manages the SIV program. A SIV is available to Afghan nationals who meet certain requirements and who were employed in Afghanistan:

- by or on behalf of the U.S. government in Afghanistan, or

- by the International Security Assistance Force (ISAF), or a successor mission, in a capacity that required the applicant to serve as an interpreter or translator for U.S. military personnel while traveling off-base with U.S. military personnel stationed at ISAF or to perform sensitive and trusted activities for U.S. military personnel stationed at ISAF.

The SIV program requires applicants who submit applications after September 30, 2015, to have been employed for a minimum of two years, between October 7, 2001, and December 31, 2022. Applicants must also have experienced or be experiencing an ongoing serious threat as a consequence of their employment.



US 0284

| | |
|---|---|
| **From:** | Bird, John W (Wally) |
| **Subject:** | FW: Afghan P1 and P2 program |
| **To:** | Lariviere, Larocha N; May, Samantha A (Sammy); Kingsley, Leslie; Libera, Anne V |
| **Sent:** | September 14, 2021 1:35 PM (UTC-05:00) |
| **Attached:** | USRAP Afghan P-1 P-2 Overview (State).docx, USRAP Afghan P-1 P-2 Workflow (State).docx |

FYI- P1 and P2 information mentioned by Joanna today- by the way, everyone did so well in briefing cases and issues, much appreciated. I hope that we have more guidance soon!

Wally

**From:** Ruppel, Joanna
**Sent:** Tuesday, September 14, 2021 2:15 PM
(b)(6) **To:** Bird, John W (Wally)                    ; Wright, Charles E                    ; Johnson,
Bobbie L
**Cc:** Schoener, Sarah L
**Subject:** Afghan P1 and P2 program

Please see attached background material and share with the team for awareness.

Joanna

Joanna Ruppel
Chief, International and Refugee Affairs Division
USCIS Refugee, Asylum and International Operations Directorate
(b)(6)
            (cell)

| | |
|---|---|
| **From:** | Johnson, Bobbie L |
| **Subject:** | FW: Afghan P1 and P2 program |
| **To:** | Baxter, Mark P; Bialosky, Jonathan C; Bird, John W (Wally); Dempsey, Miya H; Foderaro, Laurelyn L; Griffin, Chad T; Grigsby, Kevin M; Latorre, Aida M; Morley, Andrea M; Wright, Charles E |
| **Sent:** | September 14, 2021 3:34 PM (UTC-05:00) |
| **Attached:** | USRAP Afghan P-1 P-2 Overview (State).docx, USRAP Afghan P-1 P-2 Workflow (State).docx |

FYI

---

**From:** Ruppel, Joanna
**Sent:** Tuesday, September 14, 2021 2:15 PM
(b)(6) **To:** Bird, John W (Wally)                    ; Wright, Charles E                         ; Johnson, Bobbie L
**Cc:** Schoener, Sarah L
**Subject:** Afghan P1 and P2 program

Please see attached background material and share with the team for awareness.

Joanna

Joanna Ruppel
Chief, International and Refugee Affairs Division
USCIS Refugee, Asylum and International Operations Directorate
(b)(6)
                    (cell)

| From: | Bird, John W (Wally) |
|---|---|
| Subject: | Data for Afghan Vetting in CAMINO |
| To: | Devlin, Alexis B; Donnelly, Christine C; Falade, Abigail; Hattendorf, David L; Kingsley, Leslie; Libera, Anne V; Luft, Melissa A; Matusick, Nathan D (Nate); May, Samantha A (Sammy); Mayer, Rachel S; Mendoza, Riccis C (Red); Motolenich Torres, Catherine; Nash, Latecia C (LC); Naylor, Larissa M; Polishuk, Richard A; Richardson, Denisha S; Rossi, Nathaniel Q; Singla, Vinay M; Stamps, Allison L; Bird, John W (Wally); Cooper, Judith A (Judy) (CTR); Lariviere, Larocha N; Lassiter, Fiona K; MacDawutey, Eric A; Matthews, Melissa D (CTR); Naquin, Marie-line; Poli, Henry P (Hank); Rivers, Brian A (Ickis) (CTR) |
| Sent: | September 16, 2021 12:33 PM (UTC-05:00) |

Good afternoon everyone,

Today we were instructed to assure that if certain data are available in the Afghan files, and in CCD, that we will include that data in CAMINO. For our admin staff, please continue to include as much of this data as you normally do, into the system.

For our adjudicators, when you are reviewing the file, please include in CAMINO any data that you find in the file materials and CCD that fits the descriptions below:

Name, alias, DOB, POB, Citizenship at birth, COC, Tel (current + 5 year history), Email, National ID #, OCONUS (overseas) Address (5 year history), US POC information (name, phone, email, tel), Passport number/issuing country, Identity Document number/issuing country

The CCD record, if it exists, includes a couple other identifiers that would be critical to vetting, most notably phone and email.

For National ID number/issuing country, please add these to the personal profile remarks in CAMINO. Please also confirm that the US petitioner and sponsor information is correct

Some of these are not necessarily available currently- such as a 5 year history of telephone numbers, and OCONUS (overseas) addresses. The US POC can be the US petitioner.

We have not been asked to change our RFE or other processes at this time to collect this information

Thank you!

Wally

US 0287

You should inform USCIS that you have completed these steps at uscis.gov/vaccination-status. You will need your Alien Registration Number and/ or I-94 number.

**Important note:** These requirements only apply to Afghan parolees processed by CBP and paroled into the United States for two years for urgent humanitarian reasons between August 25th and September 7th. If these conditions of parole do not apply to you, please do not submit your information to USCIS.

If you did not go to a government-run location where these medical services are provided, you will be responsible for arranging the vaccinations and testing on your own and reporting completion of these steps at uscis.gov/vaccination-status.

There are other conditions of parole including changing your address with USCIS at uscis.gov/addresschange. You must notify USCIS of every change of address as soon as possible and no later than 30 days from each change of address.

If you do not comply with the conditions placed on your parole, you may be subject to denial of work authorization and potentially termination of the parole and initiation of detention and removal.

For more information visit, uscis.gov.

| | |
|---|---|
| **From:** | Schoener, Sarah L |
| **Subject:** | RE: Draft for proposed closure notice - Afghan case |
| **To:** | Bird, John W (Wally); Ruppel, Joanna; Lariviere, Larocha N; Wright, Charles E; On, Dung B; Chiorazzi, Anne |
| **Sent:** | September 27, 2021 8:44 AM (UTC-05:00) |
| **Attached:** | Afghanistan In Country Parole Notice (09.10.21).docx |

Hi All,

Attached is the draft parole notice for beneficiaries still in Afghanistan. We'll need to add in language regarding medicals, which was being discussed right before I went on leave. I had also drafted some initial language on case closures for those with approved I-130s and visas available, which is similar to Larocha's. I'm hoping to finalize this in a case notice and send to OCC for review early this week.

Wally, I'll discuss with the Policy Team and see if we also want to develop a separate denial notice for protection requests where there's no credible third party evidence and urgent reason for parole vs refugee processing.

Sarah

**From:** Bird, John W (Wally) [                    ]
(b)(6)  **Sent:** Monday, September 27, 2021 9:29 AM
**To:** Ruppel, Joanna[                    ]; Lariviere, Larocha N[                    ]; Wright, Charles E [                    ]; On, Dung B[                    ] Chiorazzi, Anne
[                    Schoener, Sarah L [                    ]>
**Subject:** RE: Draft for proposed closure notice - Afghan case

Leslie also contributed her PAW approach on Friday, Sarah.

Here is link to a draft PAW I just updated for a denial; per Joanna's suggestion, I am forwarding to you as my 2 cents for trying to draft standard language for various cases.

(b)(5)

https://camino.uscis.dhs.gov/camino/?action=case&process_id=282BDDA9-6680-4A50-87A6-3BFD973DC972

Thank you.
Leslie

Wally

**From:** Ruppel, Joanna [                    ]
(b)(6)  **Sent:** Monday, September 27, 2021 9:23 AM
**To:** Lariviere, Larocha N [                    ]; Bird, John W (Wally)[                    ]
Wright, Charles E [                    ]; On, Dung B[                    ]; Chiorazzi, Anne
[                    ]; Schoener, Sarah L [                    ]
**Subject:** RE: Draft for proposed closure notice - Afghan case

Thanks Larocha!

Adding Sarah who just returned from leave (which I hope was nice, Sarah!). Sarah can share with those on this chain the draft notice for cases with beneficiaries on Afghanistan whose cases are not denied, which this would plug into.

(b)(5)

I would like to see what the final product looks like as it can be a useful template.

Let me know if there are questions.

Joanna

Joanna Ruppel
Chief, International and Refugee Affairs Division
USCIS Refugee, Asylum and International Operations Directorate

(b)(6)

(cell)

**From:** Lariviere, Larocha N
**Sent:** Friday, September 24, 2021 3:27 PM

(b)(6) **To:** Ruppel, Joanna                    ; Bird, John W (Wally)                    ; Wright, Charles E                    On, Dung B                    ; Chiorazzi, Anne

**Subject:** Draft for proposed closure notice - Afghan case

Hello,

(b)(5)

Thanks very much to everyone for their time and attention to these cases!

Proposed rough draft language for admin closure notice:

(b)(5)

Thank you and have a nice weekend,
LaRocha

*LaRocha LaRiviere*
Humanitarian Affairs Branch (HAB)

US 0291

(b)(6)

| | |
|---|---|
| From: | Chiorazzi, Anne |
| Subject: | RE: FBI cleared the____case |
| To: | Wright, Charles E; Bird, John W (Wally); Lenkowsky, Matthew; Ruppel, Joanna; Ghattas, Thierry A; Johnson, Bobbie L; Ghattas, Thierry A |
| Cc: | Loizeaux, Andrew B (Drew); On, Dung B; Schoener, Sarah L; Stone, Mary M |
| Sent: | September 27, 2021 1:07 PM (UTC-05:00) |

Wally,

We just spoke with Joanna and confirmed that HAB's role is to confirm that the following conditions were met and confirmed by the documentation.

You are required to receive the first dose[1] of the following vaccinations and undergo medical screening, absent a case-by-case determination that the following are not medically appropriate:
- MMR (measles, mumps, rubella) vaccination, absent proof of prior vaccination.
- Polio vaccination, absent proof of prior vaccination
- COVID-19 vaccination, absent proof of prior vaccination
- Other age-appropriate vaccinations, as determined by the Centers for Disease Control and Prevention, absent proof of prior vaccinations
- A tuberculosis screening; you are required take appropriate isolation and treatment measures if the tuberculosis test is positive

Please let us know if you have any follow up questions.

Thanks.
Anne

---

From: Chiorazzi, Anne
Sent: Thursday, September 23, 2021 2:07 PM
To: Wright, Charles E _____ ; Bird, John W (Wally) _____
Lenkowsky, Matthew _____ ; Ruppel, Joanna _____
(b)(6) Ghattas, Thierry A _____ ; Johnson, Bobbie L _____ ; Ghattas, Thierry A _____
Cc: Loizeaux, Andrew B (Drew) _____ ; On, Dung B _____ ; Schoener, Sarah L _____ ; Stone, Mary M _____
Subject: RE: FBI cleared the____case

All,

Not to clog everyone's inboxes with PII, but noting on this string that CA/VO has forwarded the medical reports/vaccine records for this family to IRAD HQ and these have been forwarded to Wally and HAB.

Joanna,

In terms of HAB's role we had discussed that they would be confirming that the following conditions were met and confirmed by the documentation, however I know you were having a meeting with D1 this morning with medicals on the agenda, so wanted to confirm that this remains the vision. Is that accurate still?

You are required to receive the first dose[1] of the following vaccinations and undergo medical screening, absent a case-by-case determination that the following are not medically appropriate:
- MMR (measles, mumps, rubella) vaccination, absent proof of prior vaccination.
- Polio vaccination, absent proof of prior vaccination
- COVID-19 vaccination, absent proof of prior vaccination
- Other age-appropriate vaccinations, as determined by the Centers for Disease Control and Prevention, absent proof of prior vaccinations
- A tuberculosis screening; you are required take appropriate isolation and treatment measures if the tuberculosis test is positive

Thanks.

Anne

**From:** Wright, Charles E
**Sent:** Friday, September 17, 2021 4:01 PM
**To:** Bird, John W (Wally)                              ; Chiorazzi, Anne                    ; Lenkowsky, Matthew                              ; Ruppel, Joanna                          ; Ghattas, Thierry A                                      ; Johnson, Bobbie L                                      ; Ghattas, Thierry A
**Cc:** Loizeaux, Andrew B (Drew)                          ; On, Dung B                          ; Schoener, Sarah L                    ; Stone, Mary M
**Subject:** RE: FBI cleared the ___ case

(b)(6)

Has the conditional approval notice been cleared?

**From:** Bird, John W (Wally)
**Sent:** Friday, September 17, 2021 3:27 PM
**To:** Chiorazzi, Anne                    Lenkowsky, Matthew                    Ruppel, Joanna                    ; Ghattas, Thierry A                          ; Johnson, Bobbie L                          ; Wright, Charles E                          Ghattas, Thierry A
**Cc:** Loizeaux, Andrew B (Drew)                          ; On, Dung B                          ; Schoener, Sarah L                    ; Stone, Mary M
**Subject:** RE: FBI cleared the ___ case

(b)(6)

We will need to go in and complete these cases, drafting approval memos, And sending to post. Are you giving us the green light to do that?

Wally

**From:** Chiorazzi, Anne
**Sent:** Friday, September 17, 2021 3:24 PM
**To:** Lenkowsky, Matthew                              ; Ruppel, Joanna                    Ghattas, Thierry A                    ; Bird, John W (Wally)                    Johnson, Bobbie L                    ; Wright, Charles E                          ; Ghattas, Thierry A
**Cc:** Loizeaux, Andrew B (Drew)                          ; On, Dung B                    ; Schoener, Sarah L                    ; Stone, Mary M
**Subject:** RE: FBI cleared the ___ case

(b)(6)

Good afternoon, Everyone,

Matt, echoing thanks again for facilitating the checks and good news that everything is clear.

Dung and I had a call earlier today with CA/VO to understand more about the posture of this case. We understand that the family has their COVID vaccines already and will be getting other vaccines (e.g. MMR, etc.) and TB screening on Monday. CA has said that if there is an emergency this weekend and the family cannot wait until Monday, they are prepping a port parole request with CBP. CA asked whether we could forgo the medical screening and have them do the medical within 7 days of entry to the U.S. We think that since we know the medical screening is underway we

should get the results and if there are certain things they cannot get we could consider allowing them to complete those after arrival in the U.S.   We highlighted that if the beneficiaries need to travel urgently the CBP parole would be the best route.

With that I wanted to outline what we think would make sense for appropriate next steps.  Since inclusion of medical results is new for this process, please jump in if you see any pitfalls with this approach.

1. HAB sends conditional approval notice to Post for applicant now to initiate biometric checks/identity verification.
2. CA/VO brings beneficiaries in on Monday for biometric checks/identity verification.
3. Beneficiaries complete medical screening Monday.
4. CA/VO gets results of biometrics checks and proceeds per normal procedure.
5. All medical results are received and reviewed by ConOff.  Post lets HAB know if any of the beneficiaries do not have the following vaccinations/TB negative.  We talked about them sending information to the HAB box. Apparently Dushanbe is not an IV post so they cannot upload medical information into CCD.  There may be a better way, so open to suggestions.

   Medical requirements:
   ○ MMR (measles, mumps, rubella) vaccination, absent proof of prior vaccination.
   ○ Polio vaccination, absent proof of prior vaccination
   ○ COVID-19 vaccination, absent proof of prior vaccination
   ○ Other age-appropriate vaccinations, as determined by the Centers for Disease Control and Prevention, absent proof of prior vaccinations
   ○ A tuberculosis screening; you are required take appropriate isolation and treatment measures if the tuberculosis test is positive

6. If all medicals and biometrics checks are clear, Post can issue foil to beneficiaries and they proceed to travel.
7. If further review is necessary, follow current procedures.  If medical requirements cannot be completed, we can consider issuing a letter requiring completion of medical requirements within 7 days of entry to the use.

Please let us know your thoughts on this process flow.  CA would like us to let them know our decision on the medicals today.

Thank you.
Anne

---

**From:** Lenkowsky, Matthew [                              ]
**Sent:** Friday, September 17, 2021 11:37 AM
**To:** Ruppel, Joanna [                    ]; Chiorazzi, Anne [                    ]; Ghattas, Thierry A [                              ]; Bird, John W (Wally) <[                    ]>; Johnson, Bobbie L [                    ]>; Wright, Charles E [                    ]>; Ghattas, Thierry A

**(b)(6)**

**Cc:** Loizeaux, Andrew B (Drew) [                              ];
**Subject:** FBI cleared the [    ] case

All –

I just responded to the larger chain on this case as well, but wanted to loop in IRAD/RIO leadership as well:

First, I submitted the information on the seven individuals this morning via high side. [                              ]
[                              ]    (b)(6) (b)(7)(e)

Second, for future Afghan parole requests we process:

- FBI has a particular format for how they like to receive the data. It helps with ingesting information into their system. I filled it out manually today, but it would be great if we could get CAMINO to do that moving forward. Drew – I can send you a copy of what I sent this morning, so you could figure out what we need to do in CAMINO. Wally – I ended up having to pull a bunch of the data from CCD directly; I know we've been discussing this already, but FBI also confirmed having as many of the data fields filled out as possible is really helpful. We

don't always get every data element, but if it is somewhere in the application we should make an effort to get it.

- FBI has also indicated willingness to do this moving forward. We could send it directly to them if we want – they can do turnaround times in a day or less, provided the data is shared by noon – but I still think it makes more

(b)(7)(e)    sense for ⬜ to send it to them, with ⬜ as the collector of *all* of the IC responses, which they then share with us in a single red/green notification on low side.

- Other partners ⬜ and GA) both seem willing to participate as well, but are still running it up their chains.

Best,

**Matt Lenkowsky**
Special Assistant
Refugee, Asylum, and International Operations Directorate
US Citizenship and Immigration Services

(b)(6)    ⬜    (o)
                  (c)

[1] The CDC recommends that if you receive a Pfizer-BioNTech or Moderna COVID-19 vaccine, you will need two shots to receive the most protection. If you need to get your second shot (for example, if you left the military installation before receiving your second shot), there are several ways you can find a vaccine provider for your second dose. For more details, please see CDC's information at https://www.cdc.gov/coronavirus/2019-ncov/vaccines/second-shot.html.

[1] The CDC recommends that if you receive a Pfizer-BioNTech or Moderna COVID-19 vaccine, you will need two shots to receive the most protection. If you need to get your second shot (for example, if you left the military installation before receiving your second shot), there are several ways you can find a vaccine provider for your second dose. For more details, please see CDC's information at https://www.cdc.gov/coronavirus/2019-ncov/vaccines/second-shot.html.

**(b)(6)**

| | |
|---|---|
| From: | Ruppel, Joanna |
| Subject: | RE: FBI cleared the ☐ case |
| To: | Chiorazzi, Anne; Wright, Charles E; Bird, John W (Wally); Lenkowsky, Matthew; Ghattas, Thierry A; Johnson, Bobbie L; Ghattas, Thierry A |
| Cc: | Loizeaux, Andrew B (Drew); On, Dung B; Schoener, Sarah L; Stone, Mary M |
| Sent: | September 27, 2021 2:50 PM (UTC-05:00) |

Just jumping in on one item I had not queued up on highlighted below.  We cannot expect HAB adjudicators to know what those other age-appropriate vaccines are (or the applicant either), so we may need to remove that and focus on the ones we know folks are getting at the lily pads.  I am working to set up a call with CDC.

Joanna

Joanna Ruppel
Chief, International and Refugee Affairs Division
USCIS Refugee, Asylum and International Operations Directorate
☐
☐ (cell)

**(b)(6)**

**From:** Chiorazzi, Anne ☐
**Sent:** Monday, September 27, 2021 2:07 PM
**To:** Wright, Charles E ☐ ; Bird, John W (Wally) ☐
Lenkowsky, Matthew ☐ ; Ruppel, Joanna ☐
Ghattas, Thierry A ☐ ; Johnson, Bobbie L ☐ ; Ghattas,
Thierry A ☐
**Cc:** Loizeaux, Andrew B (Drew) ☐ ; On, Dung B ☐ ; Schoener,
Sarah L ☐ ; Stone, Mary M ☐
**Subject:** RE: FBI cleared the ☐ case

Wally,

We just spoke with Joanna and confirmed that HAB's role is to confirm that the following conditions were met and confirmed by the documentation.

You are required to receive the first dose[1] of the following vaccinations and undergo medical screening, absent a case-by-case determination that the following are not medically appropriate:
- ○ MMR (measles, mumps, rubella) vaccination, absent proof of prior vaccination.
- ○ Polio vaccination, absent proof of prior vaccination
- ○ COVID-19 vaccination, absent proof of prior vaccination
- ○ Other age-appropriate vaccinations, as determined by the Centers for Disease Control and Prevention, absent proof of prior vaccinations
- ○ A tuberculosis screening; you are required take appropriate isolation and treatment measures if the tuberculosis test is positive

Please let us know if you have any follow up questions.

Thanks.
Anne

**From:** Chiorazzi, Anne
**Sent:** Thursday, September 23, 2021 2:07 PM
**(b)(6)**  **To:** Wright, Charles E ☐ ; Bird, John W (Wally) ☐
Lenkowsky, Matthew ☐ ; Ruppel, Joanna ☐
Ghattas, Thierry A ☐ ; Johnson, Bobbie L ☐ ; Ghattas,
Thierry A ☐

(b)(6)
Cc: Loizeaux, Andrew B (Drew) [_____] On, Dung B [_____]; Schoener,
Sarah L [_____]; Stone, Mary M [_____]
Subject: RE: FBI cleared the [____] case

All,

Not to clog everyone's inboxes with PII, but noting on this string that CA/VO has forwarded the medical reports/vaccine records for this family to IRAD HQ and these have been forwarded to Wally and HAB.

Joanna,

In terms of HAB's role we had discussed that they would be confirming that the following conditions were met and confirmed by the documentation, however I know you were having a meeting with D1 this morning with medicals on the agenda, so wanted to confirm that this remains the vision. Is that accurate still?

> You are required to receive the first dose[1] of the following vaccinations and undergo medical screening, absent a
> case-by-case determination that the following are not medically appropriate:
> o MMR (measles, mumps, rubella) vaccination, absent proof of prior vaccination.
> o Polio vaccination, absent proof of prior vaccination
> o COVID-19 vaccination, absent proof of prior vaccination
> o Other age-appropriate vaccinations, as determined by the Centers for Disease Control and Prevention,
>   absent proof of prior vaccinations
> o A tuberculosis screening; you are required take appropriate isolation and treatment measures if the
>   tuberculosis test is positive

Thanks.

Anne

From: Wright, Charles E [_____]
Sent: Friday, September 17, 2021 4:01 PM
(b)(6)
To: Bird, John W (Wally) [_____] Chiorazzi, Anne [_____] Lenkowsky,
Matthew [_____]; Ruppel, Joanna [_____] Ghattas, Thierry A
[_____] Johnson, Bobbie L [_____]; Ghattas, Thierry A
Cc: Loizeaux, Andrew B (Drew) [_____] On, Dung B [_____] Schoener,
Sarah L [_____] Stone, Mary M [_____]
Subject: RE: FBI cleared the [____] case

Has the conditional approval notice been cleared?

From: Bird, John W (Wally) [_____]
Sent: Friday, September 17, 2021 3:27 PM
To: Chiorazzi, Anne [_____] Lenkowsky, Matthew [_____]
Ruppel, Joanna [_____]; Ghattas, Thierry A [_____]; Johnson,
(b)(6)
Bobbie L [_____]; Wright, Charles E [_____]; Ghattas, Thierry A
Cc: Loizeaux, Andrew B (Drew) [_____] On, Dung B [_____] Schoener,
Sarah L [_____]; Stone, Mary M [_____]
Subject: RE: FBI cleared the [____] case

We will need to go in and complete these cases, drafting approval memos, And sending to post. Are you giving us the green light to do that?

Wally

From: Chiorazzi, Anne <
Sent: Friday, September 17, 2021 3:24 PM
To: Lenkowsky, Matthew [                              ]; Ruppel, Joanna <
Ghattas, Thierry A [                          ]; Bird, John W (Wally)[                          ]; Johnson,
(b)(6)  Bobbie L [                          ]; Wright, Charles E <                          >; Ghattas, Thierry A
[                          ]
Cc: Loizeaux, Andrew B (Drew) [                          ]; On, Dung B [                          ]; Schoener,
Sarah L [                          ]; Stone, Mary M [                          ]
Subject: RE: FBI cleared the [      ] case

Good afternoon, Everyone,

Matt, echoing thanks again for facilitating the checks and good news that everything is clear.

Dung and I had a call earlier today with CA/VO to understand more about the posture of this case. We understand that the family has their COVID vaccines already and will be getting other vaccines (e.g. MMR, etc.) and TB screening on Monday. CA has said that if there is an emergency this weekend and the family cannot wait until Monday, they are prepping a port parole request with CBP. CA asked whether we could forgo the medical screening and have them do the medical within 7 days of entry to the U.S. We think that since we know the medical screening is underway we should get the results and if there are certain things they cannot get we could consider allowing them to complete those after arrival in the U.S. We highlighted that if the beneficiaries need to travel urgently the CBP parole would be the best route.

With that I wanted to outline what we think would make sense for appropriate next steps. Since inclusion of medical results is new for this process, please jump in if you see any pitfalls with this approach.

1. HAB sends conditional approval notice to Post for applicant now to initiate biometric checks/identity verification.
2. CA/VO brings beneficiaries in on Monday for biometric checks/identity verification.
3. Beneficiaries complete medical screening Monday.
4. CA/VO gets results of biometrics checks and proceeds per normal procedure.
5. All medical results are received and reviewed by ConOff. Post lets HAB know if any of the beneficiaries do not have the following vaccinations/TB negative. We talked about them sending information to the HAB box. Apparently Dushanbe is not an IV post so they cannot upload medical information into CCD. There may be a better way, so open to suggestions.
   Medical requirements:
   o MMR (measles, mumps, rubella) vaccination, absent proof of prior vaccination.
   o Polio vaccination, absent proof of prior vaccination
   o COVID-19 vaccination, absent proof of prior vaccination
   o Other age-appropriate vaccinations, as determined by the Centers for Disease Control and Prevention, absent proof of prior vaccinations
   o A tuberculosis screening; you are required take appropriate isolation and treatment measures if the tuberculosis test is positive
6. If all medicals and biometrics checks are clear, Post can issue foil to beneficiaries and they proceed to travel.
7. If further review is necessary, follow current procedures. If medical requirements cannot be completed, we can consider issuing a letter requiring completion of medical requirements within 7 days of entry to the use.

Please let us know your thoughts on this process flow. CA would like us to let them know our decision on the medicals today.

Thank you.
Anne

**From:** Lenkowsky, Matthew
**Sent:** Friday, September 17, 2021 11:37 AM
**To:** Ruppel, Joanna [              ]; Chiorazzi, Anne [              ]; Ghattas,
(b)(6) Thierry A [              ]; Bird, John W (Wally) [              ]; Johnson, Bobbie L
[              ]    Wright, Charles E [              ]    Ghattas, Thierry A
**Cc:** Loizeaux, Andrew B (Drew) [              ]
**Subject:** FBI cleared the [    ] case

All –

I just responded to the larger chain on this case as well, but wanted to loop in IRAD/RIO leadership as well:

First, I submitted the information on the seven individuals this morning via high side. FBI responded with greens on all seven. I understand the IACT is also green, per DOS.

Second, for future Afghan parole requests we process:

- FBI has a particular format for how they like to receive the data. It helps with ingesting information into their system. I filled it out manually today, but it would be great if we could get CAMINO to do that moving forward. Drew – I can send you a copy of what I sent this morning, so you could figure out what we need to do in CAMINO. Wally – I ended up having to pull a bunch of the data from CCD directly; I know we've been discussing this already, but FBI also confirmed having as many of the data fields filled out as possible is really helpful. We don't always get every data element, but if it is somewhere in the application we should make an effort to get it.
- FBI has also indicated willingness to do this moving forward. We could send it directly to them if we want – they can do turnaround times in a day or less, provided the data is shared by noon – but I still think it makes more sense for [    ] to send it to them, with [    ] as the collector of *all* of the IC responses, which they then share with us in a single red/green notification on low side.

(b)(7)(e)

- Other partners [    ] and GA) both seem willing to participate as well, but are still running it up their chains.

Best,

**Matt Lenkowsky**
Special Assistant
Refugee, Asylum, and International Operations Directorate
US Citizenship and Immigration Services

(b)(6) [              ] (o)
[              ] (c)

---

[1] The CDC recommends that if you receive a Pfizer-BioNTech or Moderna COVID-19 vaccine, you will need two shots to receive the most protection. If you need to get your second shot (for example, if you left the military installation before receiving your second shot), there are several ways you can find a vaccine provider for your second dose. For more details, please see CDC's information at
https://www.cdc.gov/coronavirus/2019-ncov/vaccines/second-shot.html.

[1] The CDC recommends that if you receive a Pfizer-BioNTech or Moderna COVID-19 vaccine, you will need two shots to receive the most protection. If you need to get your second shot (for example, if you left the

military installation before receiving your second shot), there are several ways you can find a vaccine provider for your second dose. For more details, please see CDC's information at https://www.cdc.gov/coronavirus/2019-ncov/vaccines/second-shot.html.

US 0300

| From: | Alli, Akinkunmi O (Akin) |
|---|---|
| Subject: | Afghanistan Document Guide |
| To: | RAIO-IRAD-All |
| Cc: | Alli, Akinkunmi O (Akin) |
| Sent: | September 27, 2021 5:19 PM (UTC-05:00) |
| Attached: | Afghan Documents Guide.pdf |

Hello all,

I am sharing the attached document guide that was recently published by the HSI Forensic Lab. The guide highlights security and integrity features that exist within Afghan documents which is beneficial to both our adjudicative and FDNS staff when examining these documents or conducting interviews.

As a reminder, this is a FOUO document containing information regarding security features contained in official documents, and should be treated with the appropriate sensitivity. Please let me know if you have any questions.

Yours,
Akin

**Akin Alli**
*Branch Chief,* Fraud Detection and National Security (FDNS)
International and Refugee Affairs Division (IRAD)
Refugee, Asylum and International Operations Division
U.S. Citizenship and Immigration Services

(b)(6)    |(c)

Secure|

"With honor and integrity, we will safeguard the American people, our homeland and our values."

This communication is intended for the sole use of the individual to whom it is addressed and may contain Limited Official Use Only Information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. 552). If the reader of this communication is not the intended recipient or the employee or agent for delivering the communication to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you received this communication in error, please notify the sender immediately by telephone and destroy this transmission according to applicable DHS Policy and Instruction.

OFFICIAL USE ONLY



# AFGHAN DOCUMENTS

**Prepared by the HSI Forensic Laboratory**
**2021R-03**
**September 22, 2021**



U.S. Immigration
and Customs
Enforcement

OFFICIAL USE ONLY

This page intentionally left blank.

US 0303

OFFICIAL USE ONLY

## INTRODUCTION

Afghanistan became an independent state in 1919, but much of its history since then has been turbulent. The Soviet Union invaded the country in 1979 and faced an insurgency until they withdrew in 1989. Instability in the country led to the rise of the Taliban, which took control of Kabul and much of the country in 1996, though they faced opposition from the Northern Alliance. During this time Al Qaeda became established in Afghanistan as they brought in recruits to take part in the fighting. Al Qaeda suicide bombers attacked the United States on September 11, 2001, leading United States forces to take action in the country afterwards. The Taliban government was deposed in December 2001 and a new government under Hamid Karzai was formed. A Taliban insurgency continued in the country. The United States announced a withdrawal of its forces from Afghanistan in 2021, and the Taliban once again took over much of the country.

Afghanistan has a population of approximately 37.5 million people comprised of numerous ethnic groups, with Pashtuns, Tajiks and Hazara making up the largest. It is one of the poorest countries in the world in terms of GDP per capita.[1] The United Nations High Commissioner for Refugees showed almost 2.5 million registered refugees from Afghanistan prior to August 2021, making it the second largest refugee population in the world.[2]



Map from https://www.cia.gov/the-world-factbook/countries/afghanistan/



Map from https://www.nationalgeographic.org/maps/afghanistan-and-pakistan-ethnic-groups/

---

1    https://www.cia.gov/the-world-factbook/countries/afghanistan/

2    https://www.unhcr.org/afghanistan.html

**OFFICIAL USE ONLY**

This document is the property of the U.S. DHS ICE HSI Forensic Laboratory. This information shall not be modified from its original form or distributed beyond the original recipients without the prior authorization of the originator.

OFFICIAL USE ONLY

This guide was prepared to assist personnel who are tasked with reviewing documents from Afghanistan. It shows physical security features of some Afghan documents that field examiners may encounter. Be mindful that not all security features for each document have been included in this guide and that the size and color of the documents shown may deviate from genuine exemplars. Do not make a determination of fraud based solely on features found in a suspect document that are not included in this guide.

# PASSPORTS

Afghanistan has issued several versions of its national passport in the last ten years. It introduced machine-readable passports to ordinary citizens around late 2012, but non-machine-readable passports continued to be issued as well. These versions were reportedly no longer issued after November 1, 2017, and they are no longer considered valid as travel documents.[1]

According to the Department of State's Reciprocity Schedule, to obtain a passport:

> "Applicants residing in Kabul generally apply at the Ministry of Interior Passport Department. Applicants in other parts of the country apply at their Provincial Passport Office, which will forward the application to the Kabul Passport Department for issuance. Applicants applying for a regular passport must submit an application along with a copy of their original attested tazkera (national identity document) and passport-sized photos. A bio data form will be completed, and then the applicants are scheduled for biometric appointments. Each applicant is given an invoice (Tarofa) which must be paid at a bank, with the payment confirmation returned to the Passport Department. Once proof of payment is received, the applicant will be notified when to pick up the passport. Applicants applying outside of Kabul will retrieve their passports from the Provincial Passport Office. Applicants outside of Afghanistan should contact their nearest Afghan Embassy or Consulate."[2]

Afghan citizens abroad can apply for passports through an embassy or consulate. In the United States, Afghanistan has consulates in Washington, D.C., New York City and Los Angeles. The website for the Embassy of Afghanistan in Washington, D.C., states that applicants must submit:

- Original tazkera (national identity document)
- Previous passport or copy of passport with police report of loss
- Proof of U.S. residence if a resident of the United States
- Two photographs
- Fingerprints
- Passport application form and required fees
- Prepaid return envelope[3]

---

1    https://landinfo.no/wp-content/uploads/2019/08/Afghanistan-Tazkera-passports-and-other-ID-documents-22052019-final.pdf - Page 13

2    https://travel.state.gov/content/travel/en/us-visas/Visa-Reciprocity-and-Civil-Documents-by-Country/Afghanistan.html

3    https://www.afghanembassy.us/passport/

OFFICIAL USE ONLY

This document is the property of the U.S. DHS ICE HSI Forensic Laboratory. This information shall not be modified from its original format or distributed beyond the original recipients without the prior authorization of the originator.

22-CV-5312                                                                                                   US-0305

OFFICIAL USE ONLY

## NON-MACHINE-READABLE PASSPORTS



(b)(7)(e)



(b)(7)(e)

This document is the property of the U.S. DHS ICE HSI Forensic Laboratory. This information shall not be modified from its original form or distributed beyond the original recipients without the prior authorization of the originator.

22-CV-5312

US-0206

Page 3

## OTHER IDENTIFICATION DOCUMENTS

Afghanistan's system of registration for its citizens has been decentralized, and initiatives to standardize registration face an uncertain future. As a result, records are often incomplete or difficult to verify.

(b)(7)(e)

Birth certificates are not commonly used in Afghanistan. UNICEF estimated that only 42 percent of children under the age of five had birth certificates as of 2016.[1] Birth certificates are issued to children born at a clinic or hospital, though these certificates commonly do not state the child's name.[2] Birth certificates are considered supplemental evidence of birth rather than the primary methods of establishing identity.[3]

The main form of identification in Afghanistan is the national identity card or *tazkera*. According to the Department of State's Reciprocity Schedule:

> "Afghans usually apply for a tazkera when a child reaches school age, but it can also be obtained and/or modified throughout adulthood. The document traces its holder's roots through the father; mother's names are not usually listed on tazkeras. Tazkeras are hand-written, and there have been multiple variants of the document since 1976. U.S Embassy Kabul requires all Afghan citizens who are applying for immigrant, special immigrant, or other such visas to submit a tazkera, as proof of identity and birth. Some Afghan citizens may also possess birth certificates issued by clinics or hospitals in Afghanistan, but these documents are not accepted for U.S. visa processing."

> "The first step is to confirm the applicant's identity. In a city or larger town, this confirmation will be handled by an Area Representative (Wakil Gozar), while applicants from villages will use a Malik (respected elder). After the applicant's identity is recorded, the individual can apply for a tazkera with the Ministry of Interior. The tazkera lists the holder's name, date and place of birth, basic physical description, military service, religion, marital status, profession/employment and also includes a photo. The document also lists the holder's age as of the year the document was issued, but this is usually just an estimate as birth records are seldom available. Applicants over age 7 must apply in-person and submit a thumb print. Parents may apply for a tazkera on behalf of their children."[4]

Norway's Landinfo Country of Origin Information Centre has detailed information on the tazkera in its "Afghanistan: Tazkera, Passports and Other ID Documents" report. According to this Landinfo report, the tazkera has been issued on A4-size paper since 2001, with variations in format and printing methods observed in different localities. All formats include Afghanistan's national emblem and include the bearer's name as well as the names of the bearer's father and paternal grandfather, the bearer's address, gender, civil status, mother tongue and a physical description. They do NOT necessarily include a date of birth.

---

1    https://www.unicef.org/afghanistan/stories/birth-registration-passport-future
2    https://landinfo.no/wp-content/uploads/2019/08/Afghanistan-Tazkera-passports-and-other-ID-documents-22052019-final.pdf - Page 20
3    https://travel.state.gov/content/travel/en/us-visas/Visa-Reciprocity-and-Civil-Documents-by-Country/Afghanistan.html
4    https://travel.state.gov/content/travel/en/us-visas/Visa-Reciprocity-and-Civil-Documents-by-Country/Afghanistan.html

This document is property of the U.S. DHS ICE HSI Forensic Laboratory. This information shall not be modified from its original format or distributed beyond the original recipients without the prior authorization of the originator.

22-CV-5312                                                                                                                US-0326

OFFICIAL USE ONLY

## OTHER IDENTIFICATION DOCUMENTS (CONTINUED)

The government of Afghanistan enacted a law in September 2020 allowing the names of mothers to be included on birth certificates and identity cards.[1]

Afghanistan introduced a credit card-size e-tazkera in 2018. The application process for the e-tazkera includes biometric capture of fingerprints and iris, and the card contains a contact chip. Personal information is added by laser engraving. Information on the cardholder appears in English on the reverse side of the card. The e-tazkera also bears an ICAO-format machine-readable zone.



FRONT                                                        REVERSE

Imagery from https://twitter.com/hamdard42
eTazkera of Afghan Senate Chairman Fazal Hadi Muslimyar

(b)(7)(e)

_____, Security features for the card may be found at the European Council's Public Register of Authentic Identity and travel Documents Online (PRADO).[2]

The Department of State's Reciprocity Schedule contains information on other types of documents from Afghanistan, including civil certificates, police/court records and military records.[3]

---

1    https://www.voanews.com/south-central-asia/afghan-mothers-names-be-printed-childrens-id-cards

2    https://www.consilium.europa.eu/prado/en/AFG-BO-02001/index.html

3    https://travel.state.gov/content/travel/en/us-visas/Visa-Reciprocity-and-Civil-Documents-by-Country/Afghanistan.html

**OFFICIAL USE ONLY**

This document is property of the U.S. DHS ICE HSI Forensic Laboratory. This information shall not be modified from its original form or distributed beyond the original recipients without the prior authorization of the originator.

US-0327

**FRAUD**

(b)(7)(e)

## CONCLUSION

This guide has been prepared to provide front-line examining officers with background information on identity documents from Afghanistan. The task of reviewing Afghan documents is complicated by the lack of standardization in issuing processes and the lack of information on many of the country's documents. Personnel are encouraged to make use of all sources of information, including interviews when possible.

(b)(6) For additional assistance in examining Afghan travel and identity documents, please contact the Operations Unit of the HSI Forensic Laboratory by e-mail at [        ] or telephonically at [        ].

## OPEN-SOURCE REFERENCES

United States Department of State Reciprocity Schedule - Afghanistan:
https://travel.state.gov/content/travel/en/us-visas/Visa-Reciprocity-and-Civil-Documents-by-Country/Afghanistan.html

United States Department of Justice Executive Office for Immigration Review - Afghanistan:
https://www.justice.gov/eoir/afghanistan-contents

Norway Landinfo Country of Original Information Centre - Afghanistan:
https://landinfo.no/en/land/afghanistan-2/

Canada Immigration and Refugee Board - Afghanistan:
https://irb.gc.ca/en/country-information/ndp/Pages/index.aspx?pid=10706

This document is property of the U.S. DHS ICE HSI Forensic Laboratory. This information shall not be modified from its original form or distributed beyond the original recipients without the prior authorization of the originator.

OFFICIAL USE ONLY

# APPENDIX A: SOLAR HIJRI CALENDAR

Afghanistan uses the Solar Hijri or Persian calendar for dates on many of its documents, so it is useful for people reviewing Afghan documents to familiarize themselves with it.

The Solar Hijri calendar is used in both Afghanistan and Iran. The year in this calendar system begins on the vernal equinox - usually around March 21st. New Year's Day is called Nauruz. The standard year has 365 days, though there is a 366-day leap year. It is different from the Islamic Hijri calendar, which is lunar and has a year of approximately 354 days.

The Solar Hijri calendar year is approximately 621 years different from the Western Gregorian calendar. To determine the Gregorian year from the Solar Hijri year, add either 621 or 622 (for Solar Hijri dates between the 11th day of the 10th month and the 29th day of the 12th month). For example, the date 1/1/1374 in the Persian calendar (1st day of the 1st month of 1374) equates to 3/21/1995 (21st day of the 3rd month of 1995) in the Gregorian calendar. The date 11/1/1390 (1st day of the 11th month of 1390) equates to 1/21/2012 (21st day of the 1st month of 2012). Online converters make it easier to determine exact dates, but it is not difficult to make rough approximations with the basic understanding of the calendar system.

However, in order to read the dates, it is necessary to read the numerals, which are written in the Arabic system. Numbers are read left to right. Although conversion is relatively straightforward, there may be alternate forms for the numerals "4" and "6". Since many documents in Afghanistan are handwritten, decipering the characters can also be difficult.

| 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 0 |
|---|---|---|---|---|---|---|---|---|---|
| ١ | ٢ | ٣ | ۴ | ۵ | ۶ | ٧ | ٨ | ٩ | ٠ |
|   |   |   | ٤ |   | ٦ |   |   |   |   |

NOTE: Use caution when reviewing dates in documents from Afghanistan. There may be variations in dates because of imperfect conversions between different calendar systems (Solar Hijri, Islamic and Gregorian).

OFFICIAL USE ONLY
This document is the property of the U.S. DHS ICE HSI Forensic Laboratory. This information shall not be modified from its original form or distributed beyond the original recipients without the prior authorization of the originator.

| | |
|---|---|
| **From:** | Bird, John W (Wally) |
| **Subject:** | FW: Stakeholder Message: Afghan Parolees are Required to Report Vaccination Status |
| **To:** | Lassiter, Fiona K; Poli, Henry P (Hank); Naquin, Marie-line; Hattendorf, David L; Lariviere, Larocha N |
| **Sent:** | September 28, 2021 7:03 AM (UTC-05:00) |

Good morning everyone- please see below on Joanna's intention of incorporating to some degree our medical requirements for Afghan beneficiaries- no action yet, just keeping you up to date.

Wally

**From:** Ruppel, Joanna
**Sent:** Monday, September 27, 2021 9:01 AM
(b)(6) **To:** On, Dung B                    ; Chiorazzi, Anne                    ; Schoener, Sarah L
                    ; Wright, Charles E                    ; Johnson, Bobbie L
                    ; Bird, John W (Wally)                    ; Stone, Mary M

**Subject:** FW: Stakeholder Message: Afghan Parolees are Required to Report Vaccination Status

FYI.  This is the process we are hoping to piggy back on with our own notices.

Joanna

Joanna Ruppel
Chief, International and Refugee Affairs Division
USCIS Refugee, Asylum and International Operations Directorate

(b)(6)
                    (cell)

**From:** Coleman, Kalisha R (CTR)
**Sent:** Friday, September 24, 2021 1:31 PM
**To:** #USCIS OPE Internal Distribution List
**Cc:** Han, Norine W
**Subject:** Stakeholder Message: Afghan Parolees are Required to Report Vaccination Status

Good afternoon,

The Public Engagement Division will distribute the following stakeholder message on Afghan Parolees are Required to Report Vaccination Status, to our GovDelivery lists.  After it has gone out nationally, please feel free to share with local stakeholders.

**Cleared by:**

Director's Office
DHS Public Affairs
FOD: Jessica Walters, Assistant Associate Director, Division 1
OP&S: Mark Ludeking, Special Assistant (Detail)
OCC: Ron Whitney, Deputy Chief, Refugee and Asylum Law Division
OPA: Gillian Christensen, Senior Advisor and Carlos Munoz, Chief, PED

Thank you!
Kalisha Coleman

_____

If you are an Afghan parolee who received the Afghan Parole Information sheet from U.S. Customs and Border Protection (CBP) upon arrival to the United States, your parole is subject to certain medical conditions.

You are required to:

- Get vaccinated for measles, mumps, and rubella (MMR), polio, and one dose of the COVID vaccine, absent proof of prior vaccination; and
- Take a tuberculosis test and take appropriate isolation and treatment measures if the tuberculosis test is positive.

You should inform USCIS that you have completed these steps at uscis.gov/vaccination-status. You will need your Alien Registration Number and/ or I-94 number.

**Important note:** These requirements only apply to Afghan parolees processed by CBP and paroled into the United States for two years for urgent humanitarian reasons between August 25th and September 7th. If these conditions of parole do not apply to you, please do not submit your information to USCIS.

If you did not go to a government-run location where these medical services are provided, you will be responsible for arranging the vaccinations and testing on your own and reporting completion of these steps at uscis.gov/vaccination-status.

There are other conditions of parole including changing your address with USCIS at uscis.gov/addresschange. You must notify USCIS of every change of address as soon as possible and no later than 30 days from each change of address.

If you do not comply with the conditions placed on your parole, you may be subject to denial of work authorization and potentially termination of the parole and initiation of detention and removal.

For more information visit, uscis.gov.

| From: | Bird, John W (Wally) |
|---|---|
| Subject: | USCIS Website Instructions Posted Yesterday on Afgan Parole |
| To: | Bird, John W (Wally); Cooper, Judith A (Judy) (CTR); Lariviere, Larocha N; Lassiter, Fiona K; MacDawutey, Eric A; Matthews, Melissa D (CTR); Naquin, Marie-line; Poli, Henry P (Hank); Rivers, Brian A (Ickis) (CTR); Devlin, Alexis B; Donnelly, Christine C; Falade, Abigail; Hattendorf, David L; Kingsley, Leslie; Libera, Anne V; Luft, Melissa A; Matusick, Nathan D (Nate); May, Samantha A (Sammy); Mayer, Rachel S; Mendoza, Riccis C (Red); Motolenich Torres, Catherine; Nash, Latecia C (LC); Naylor, Larissa M; Polishuk, Richard A; Richardson, Denisha S; Rossi, Nathaniel Q; Singla, Vinay M; Stamps, Allison L |
| Sent: | September 29, 2021 8:07 AM (UTC-05:00) |

Hello all- just making sure that you saw this new information on our USCIS website.  Please refer people to this website if they are asking you for information.  Please also note that we are close on a finalized automated response to inquiries through our public email box.  We hope to provide more information on these Afghan cases soon-

Wally

Information for Afghan Nationals on Requests to USCIS for Humanitarian Parole | USCIS

US 0332

**From:** Ruppel, Joanna
**Subject:** Stamping I-131 parole applications
**To:** Bird, John W (Wally); Wright, Charles E; Johnson, Bobbie L
**Cc:** Chiorazzi, Anne; On, Dung B; Schoener, Sarah L; Stone, Mary M
**Sent:** October 12, 2021 12:34 PM (UTC-05:00)

Wally,

Please share the following guidance with staff processing parole cases. Effectively immediately, officers are no longer required to stamp approved a Form I-131 parole cases that is being adjudicated remotely. The decision update in CAMINO as well as a digitally signed approval notice and/or memo to the Department of State will suffice to establish that a parole request has been approved. The HAB SOP will be updated and issued this week, but you can begin implementing this change in advance.

Let me know if there are any questions.

Joanna

Joanna Ruppel
Chief, International and Refugee Affairs Division
USCIS Refugee, Asylum and International Operations Directorate

(b)(6) 
(cell)

| From: | Leary, Sara E |
|---|---|
| Subject: | draft FRTF templates and SOP |
| To: | Ruppel, Joanna; Johnson, Bobbie L; Wright, Charles E |
| Cc: | Stone, Mary M; Nixon, Karin C; Chiorazzi, Anne; Bird, John W (Wally); Navarrete, Yasser O; Cherubin, Giliane; Sinclair-Smith, Suzanne; Poli, Henry P (Hank); Lassiter, Fiona K; Katch, Hillary R; Loizeaux, Andrew B (Drew); Villasenor, Eissa M; On, Dung B |
| Sent: | October 13, 2021 7:38 AM (UTC-05:00) |
| Attached: | FRTF Conditional Approval Notice (10.1.2021).docx, FRTF I-512L template (10.1.2021).docx, FRTF Parole Authorization Memo (Non-NTCs) (10.1.2021).docx, FRTF Referral for Further Parole Processing Notice (10.1.2021).docx, FRTF Parole - SOP (Draft for Implementation) 10.1.21.pdf |

Hello all,

The new FRTF templates are live in CAMINO as of yesterday. I am attaching them for your reference. The current SOP is also attached.

Thanks for your efforts in getting these issued!

Sara

Sara Leary
Refugee Officer – Policy Branch
International and Refugee Affairs Division
Refugee, Asylum and International Operations Directorate
US Citizenship and Immigration Services
Department of Homeland Security
(b)(6)



U.S. Department of Homeland Security

Mailing/Express Mailing Address:

Fax:

[Date of issuance]

[Petitioner's full name]
[Petitioner's mailing address]

# Notice of Conditional
# Approval for Parole

U.S. Citizenship and Immigration Services' (USCIS) International and Refugee Affairs
Division (IRAD) has conditionally approved your application for parole (Form I-131) under the
Family Reunification Task Force process, filed on behalf of:

> Beneficiary's Name:
>
> Date of Birth:
>
> Place of Birth:
>
> A Number:

Parole has been conditionally approved for a period of [xxx] contingent upon successful completion of
identity verification and any additional security checks, as required. The U.S. Embassy or Consulate in
[yyy], has been notified of the conditional approval of parole and will contact the beneficiary with
additional instructions on next steps. In certain countries, the U.S. Embassy or Consulate may also
contact the International Organization for Migration (IOM) to assist with next steps. The Family
Reunification Task Force contracted with IOM to provide in-country assistance to individuals with
their parole requests in the following countries: El Salvador, Guatemala, Honduras, Mexico,
Nicaragua, Brazil, and Romania.

Provided that the U.S. Embassy or Consulate does not discover new information that would
impact eligibility for parole, a travel document (boarding foil) will be issued for the parole
beneficiary named above. The parole beneficiary must travel to the United States within thirty
(30) days of the date the travel document is issued. The travel document must be presented to a
Department of Homeland Security (DHS) Customs and Border Protection (CBP) Officer at the
port-of-entry. After inspecting the parole beneficiary's travel documents upon arrival at the U.S.
port-of-entry, CBP generally will approve the entry to the U.S. of the parole beneficiary and will
issue an electronic Form I-94, *Arrival/Departure Record*, for the period of parole approved by
this office. The Form I-94 is proof of the beneficiary's entry as a parolee and lists the date by
which the beneficiary must depart the United States. CBP has the authority to deny entry to the
U.S. or to modify the length of the authorized parole period based on information gathered
during inspection at the port-of-entry.

US 0335

Parole is temporary in nature and does not confer any legal status. If the beneficiary needs to remain in the U.S. beyond the parole authorization period listed on the electronic Form I-94 located at i94.cbp.dhs.gov/I94, he or she may request re-parole by filing a new Form I-131 and annotating on the top of the first page: "ATTN: FRTF RE-PAROLE". A fee is not required; however, the request should include updated supporting evidence to demonstrate the need for re-parole (for example, a statement from the healthcare provider of the need for continued services in the U.S.). To avoid any lapse in authorization to remain in the United States, the beneficiary should submit the re-parole request at least 90 days in advance of the parole expiration date. For more information on re-parole, visit the section on "Humanitarian Parole" on www.uscis.gov.

If after the beneficiary appears at the U.S. Embassy or Consulate for identity verification and security checks, as required, USCIS determines that the beneficiary is not eligible for parole due to new information, USCIS may deny the parole application. You will be notified of any such denial in writing.

Please inform the beneficiary of the requirement, under penalty of the law, that non-U.S. citizens must report a change of address within 10 days of moving within the United States or its territories, unless the individual is in the United States for less than 30 days and does not possess a visa. Parole beneficiaries, if residing in the U.S. longer than 30 days, must report their physical address in the United States. Compliance with the requirement to notify USCIS of any address changes is a condition of the beneficiary's parole into the United States. Failure to comply could jeopardize their ability to obtain a future visa or other immigration benefit. Parole beneficiaries can change their address online, and update their address on any pending applications and petitions at the same time, using the USCIS Online Change of Address system at uscis.gov/addresschange. They may also complete and mail to USCIS a paper AR-11, Change of Address form. If mailing a paper AR-11, we strongly recommend using certified, registered, or return receipt mail. This will provide documentation that the form was mailed to USCIS. For more information, please visit the Address Change webpage linked above.

We are pleased that we were able to be of assistance to you. If you have other questions, please visit our web site at uscis.gov/contactcenter.

Sincerely,

[signature block]
For John W. Bird
Chief, Humanitarian Affairs Branch
cc:

# AUTHORIZATION TO TRANSPORT FOR PAROLE OF AN ALIEN INTO THE UNITED STATES

Date Issued:

This Document Valid Until:

**CBP Code: PFR**

| | |
|---|---|
| **Name of Bearer:** | **First Name LAST NAME** |
| Date/Place of Birth: | Jan 1, 2021       City, COUNTRY |
| Bearer's A-Number: | AXXX-XXX-XXX |
| Gender: | |
| Passport Number: | |

**TO:**    **TRANSPORTATION COMPANY**

**TO:**    **U.S. CUSTOMS AND BORDER PROTECTION (CBP) OFFICER AT PORT-OF-ENTRY**

The Department of Homeland Security, U.S. Citizenship and Immigration Services (USCIS), has **AUTHORIZED PAROLE UNDER THE FAMILY REUNIFICATION TASK FORCE PROCESS FOR THIRTY-SIX (36) MONTHS** into the United States for the above named bearer under Section 212(d)(5)(A) of the Immigration and Nationality Act. USCIS has waived all ineligibilities for parole purposes only.

Presentation of the original of this document will authorize a transportation line to accept the named bearer, whose photograph is embedded below, on board for travel to the United States on or before [DATE] without liability under Section 273(b) of the Immigration and Nationality Act for transporting an alien without a visa to the United States.

Presentation of the original of this document will inform the U.S. Customs and Border Protection officer at a port of entry that USCIS has authorized the above named bearer to enter the United States on or before [DATE] as an alien paroled pursuant to Section 212(d)(5)(A) of the Immigration and Nationality Act **for a period of thirty-six (36) months** commencing with the alien's arrival in the United States.

Issued by:    [Name]

           Field Office Director

           [Location]

Telephone: [Phone]

FOUO –DRAFT FOR IMPLEMENTATION

**Separated Family Parole Request – Family Reunification Task Force (FRTF)**

**Interim SOP**

## A. Background

On February 2, 2021, President Biden issued Executive Order 14011 (E.O. 14011), *Executive Order on the Establishment of Interagency Task Force on the Reunification of Families*, which established an Interagency Task Force on the Reunification of Families (Task Force). The Task Force is charged with identifying all children who were separated from their families at the U.S.-Mexico border between January 20, 2017 and January 20, 2021, in connection with the operation of the Zero-Tolerance Policy, and, "[t]o the greatest extent possible, facilitating and enabling the reunification of each of the identified children with their families."[1]

On May 7, 2021, DHS Secretary Alejandro Mayorkas issued a memorandum directing USCIS to process parole requests on a case-by-case basis for separated family members and additional qualifying family members consistent with EO 14011. Family members eligible to apply could be located in the United States or abroad. Per the Secretary's memorandum, authorizing parole for separated families "will provide a significant public benefit to the United States by rectifying a past wrong and promoting family unity. Additionally, there is an urgent humanitarian reason to reunite children with parents who were separated under the Zero-Tolerance Policy and related initiatives, and to provide the reunited families the opportunity to seek additional services and support, including trauma and mental health services."

The International and Refugee Affairs Division (IRAD) is responsible for processing under this policy parole requests for beneficiaries outside the United States and any subsequent requests for re-parole for those approved.

In September 2021, the Task Force launched an online registration site (together.gov) for individuals to provide basic information to the Task Force to facilitate access to the reunification process and the provision of support services for eligible families. The Task Force had also contracted with the International Organization for Migration (IOM) to provide in-country assistance with parole requests and organizing travel for individuals who were confirmed to be within the Task Force's scope and eligible for consideration for parole under the FRTF process.

## B. Authorities and Jurisdiction

- INA. Section 212(d)(5)(A)
- 8 C.F.R. § 212.5(c), (d)
- E.O. 14011, *Executive Order on the Establishment of Interagency Task Force on the Reunification of Families*
- 2021 DHS S1 Decision Memo titled, "Interim Guidance for Parole of Noncitizens for Purposes of Reunification Consistent with Executive Order 14011, *Executive Order on the Establishment of Interagency Task Force on the Reunification of Families*"

---

[1] As early as January 20, 2017, the Trump administration began separating parents from children at the U.S.-Mexico border as a mechanism to deter unauthorized migration. While this policy was not explicitly stated in DHS records, it is understood that it occurred when a child entering the United States was separated from his or her parent without a finding that a separation was clearly necessary for the safety and well-being of the child or was required by law. For more background information, see S1 Decision Memo (Appendix 1).

22 CV 5312

FOUO –DRAFT FOR IMPLEMENTATION

- ○ **Note**: USCIS has jurisdiction over all parole requests for separated family members identified by the Task Force and additional qualifying family members, regardless of whether the individual was subject to a prior removal order[2].

## C. Eligibility/Definitions

The Task Force will work with CBP, ICE, and U.S. Department of Health and Human Services' (HHS) Office of Refugee Resettlement (ORR) or Child Protective Services to identify individuals eligible for consideration for parole. Upon identification of the eligibility pool, the Task Force also verifies the qualifying separation and qualifying relationship based on available DHS and HHS records. Qualifying separations and qualifying familial relationships are defined below.

1. **Qualifying Separations**: Families separated between January 20, 2017 and January 20, 2021, at the U.S.-Mexico border pursuant to the Zero-Tolerance Policy or related policies, including parents/legal guardians who were separated from their children by the U.S. Government at the border and then chose to be removed from the United States without their children.

2. **Qualifying Familial Relationships**: An individual eligible to request parole or have parole requested on their behalf must fall under one of the following qualifying familial relationships described below.

| Applicant Type | Definition |
| --- | --- |
| **Separated Child** | An individual is a child if he or she was under the age of 18 at the time of the qualifying separation. Individuals who are no longer under 18 years old remain eligible to be considered for parole under the Task Force process. |
| **Separated Parent** | An individual is a parent if he or she had the familial relationship with the separated child at the time of the qualifying separation. The term "parent" should be interpreted consistent with the definition at INA § 101(b)(1)-(2), 8 U.S.C. § 1101(b)(1)-(2). |
| **Separated Legal Guardian** | An individual is a legal guardian if he or she had the legal guardian relationship with the separated child at the time of the qualifying separation. A "legal guardian" is a person to whom a competent court or appropriate legal entity has granted full legal and physical custody of the child and has legal authority to make all the decisions about the physical care of the child that a parent would make. |
| **Additional Family Member** | Additional members of a child's, parent's, or legal guardian's immediate household are eligible to request parole under this policy memorandum. An immediate household member is anyone who occupies the same housing unit as the separated family member at the time of requesting parole. This includes a separated child's biological minor siblings, non-separated parent, stepparent, or non-separated legal guardian. It also includes a stepparent's biological minor children. It may also include |

---

[2] Addendum 1 of the 2008 Tri-Bureau *Memorandum of Agreement for the Purpose of Coordinating the Concurrent Exercise by USCIS, ICE and CBP of the Secretary's Parole Authority Under INA § 212(d)(5)(A) with Respect to Certain Aliens Located Outside of the United States*, will not be applied to this class of individuals per the S1 Decision Memo.

FOUO —DRAFT FOR IMPLEMENTATION

| | |
|---|---|
| | additional immediate household members, such as a grandparent or adult siblings. |

## D.  Application Process

### 1.  Eligibility to File

The Task Force will determine which class members (i.e., separated child, parent or legal guardian) are eligible for consideration for parole under EO 14011 and will notify USCIS of all known eligible individuals to be considered for parole under the S1 Decision Memo.

After the Task Force has verified the qualifying separation and qualifying relationship, the Task Force will notify IOM and/or plaintiff's counsel that a parole application may be submitted under this policy with USCIS. The Task Force will work with IOM or plaintiff's counsel to collect the names and, if available, A-numbers of individuals who would like to be considered for parole as additional family members under the S1 Decision Memo.

A majority of the parole requests are expected to be self-petitions prepared and filed by IOM.

### 2.  Filing Requirements and Evidence

IRAD prepared a guide for applicants and preparers to use when filing a parole request (see Appendix 2).  Each individual must file a separate parole request; however, the requests can be mailed to the Dallas Lockbox in a single package (e.g., an attorney who represents multiple families who are eligible to file their applications may submit the applications in a single organized package instead of multiple separate packages). These requests for initial parole do not require the Form I-131 filing fee per USCIS Acting Director Renaud's fee exemption memo (see Appendix 3).

These parole requests do not require the standard initial evidence outlined in the Form I-131 Instructions. Below is a list of required documentation for each parole application filed under the Task Force process:

1. A copy of the Cover Letter from IRAD to USCIS Lockbox Staff. (See Appendix 4).

2. A completed Form I-131, *Application for Travel Document*. Instructions shared with applicants instruct applicants to handwrite "ATTN: FRTF" at the top of the first page.

   - For beneficiaries who are located outside of the Northern Triangle countries (El Salvador, Guatemala, Honduras), or NTCs, a local address must be provided. The beneficiary's local address is required information that must be included in the authorization memo sent to post. If the beneficiary does not have a formal address (e.g., they live in a remote or rural area), then a relative address will suffice (e.g., "2 blocks from the market in Village X, Department Y, Country Z).

22 CV 5312

US 0340

FOUO –DRAFT FOR IMPLEMENTATION

- Original wet-ink signatures are not required for self-petitioning "class members"; however, it is recommended. For qualifying additional family members who are self-petitioners, a wet-ink signature is not required for filing; however, if providing one is possible, it is recommended.

  **Note**: If an additional family member is the petitioner on the Form I-131 and they did not sign the application form, please notify IRAD HQ-Policy if the case is approvable. USCIS will request a wet-ink signature at a later processing stage (currently, we are considering whether the Department of State can capture the signature when issuing a boarding foil or if CBP can do so at the POE).

3. For the self-petitioner/beneficiary, submit a clear and legible copy of the individual's passport biographical page. The passport must be valid and unexpired. If the self-petitioner/beneficiary cannot provide a copy of their passport biographical page, please provide: 1) an explanation for why it is not available, and 2) a copy of another government-issued identity document that establishes the individual's citizenship.

   **Note:** As part of IOM's role as the Task Force's implementing partner, IOM is also assisting prospective FRTF parole beneficiaries with obtaining valid and unexpired passports.

   For petitioners (not self-petitioners), submit a government-issued photo identification document (valid and unexpired), such as:
   - A copy of an official photo identity document showing the individual's photo, name, and date of birth
   - A copy of the biographical page of the person's passport

   If the petitioner is in effect a preparer assisting the beneficiary with completing the document, a government-issued photo ID will <u>not</u> be required. For this class, a number of pro-bono entities are assisting the beneficiaries with filling out the forms and may either put themselves down as petitioners or preparers.

4. A statement of support explaining how the parole beneficiary will be supported financially during his or her period of parole in the U.S. <u>or</u> a Form I-134, *Affidavit of Support*. A statement of support indicating the beneficiary's intended location of residence in the U.S., without additional information, would be insufficient.

The following documents are additional evidence that may be present and/or required to adjudicate the case. IRAD encouraged petitioners to submit this information, if applicable, at the time of filing; however, the adjudicator may need to issue a Request for Evidence (RFE) if this information is needed but unavailable at the time of the adjudication.

1. (If applicable) Applicant's cover letter listing the complete name(s) and Alien Number(s) of other family members who are also requesting parole under the FRTF process, noting the

22 CV 5312

US 0341

FOUO —DRAFT FOR IMPLEMENTATION

relationship to the separate family member.

2. For **additional family members**, clear and legible copies of evidence establishing the familial relationship between the additional family member and separated family member (e.g., civil documentation, birth certificates, or marriage certificates).

   **Note**: Initial evidence establishing familial relationship is not required for **separated parents or separated children**; however, additional evidence may be requested if government records are insufficient as described in Part F. - Adjudication.

3. For **additional family members**, evidence demonstrating that the additional family member and separated family member share the same residential address or housing unit.

   **Note:** If the additional family member is a spouse/partner or minor child of the separated family member, evidence showing current residential address may assist with processing but does not need to be submitted.

4. For **additional family members**, a statement explaining the circumstances and why the additional family member must accompany the separated family member to the United States. The statement should either be from a separated family member or, if from another individual, should explain the basis of the knowledge for making the statement. Any additional statements or documentation supporting a compelling humanitarian reason for the additional family member accompanying or joining the separated family member may also be submitted.

   **Note**: If the additional family member is a spouse/partner or minor child of the separated family member, evidence may assist with processing but does not need to be submitted.

5. Except as noted below, a parole request for a child under 18 years old who is traveling with only one or neither parent requires a signed statement from the parent(s) remaining in-country authorizing the minor child to travel to the U.S. If a statement cannot be obtained, then an explanation for why should be provided.

   **Exception:** If the child is located in a country (such as El Salvador, Guatemala, or Honduras) where government-imposed exit requirements are enforced and include the non-traveling parent's authorization of the child's international travel, then a statement from the non-traveling parent(s) is not required to complete the adjudication. Additionally, if the non-traveling parent is not named on the child's birth certificate, then a statement from the unnamed parent is not required to complete the adjudication.

### 3. Lockbox Processing

22 CV 5312

US 0342

FOUO –DRAFT FOR IMPLEMENTATION

FRTF parole requests are mailed to HAB's P.O. Box and are processed by the Dallas Lockbox. Filings will not be auto-rejected unless the first page of the Form I-131 is missing. Applications are reviewed by Lockbox staff in the Case Resolution Unit (CRU).

The Lockbox will enter each case into CLAIMS3, issue receipt notices (via Form I-797 and if G-1145 present, via email), digitize the packets so that the filings are available on EDMS Receipts, and ship the package directly to HAB.  Accepted filings will also be included in the Lockbox's special tableau report that will be updated each day around noon EST.

If there are any issues with intake, CRU staff will reach out to IRAD HQ for resolution. IRAD HQ may reach out to the Task Force for assistance or to address any deficiency trends.

## E. Pre-Adjudication

On a daily basis, HAB administrative staff (admin staff) will check the Lockbox's special tableau report for any new FRTF filings that have been accepted by the Lockbox. Admin staff will follow standard procedures for cases received via the Lockbox. Although the Task Force tries to address issues related to A-numbers (including incorrect A-numbers and consolidation of multiple A-numbers) before the parole request is filed, admin staff should search CIS per normal procedures.

If the parole beneficiary has an existing A-file that has not been digitized, staff may request that the National Records Center (NRC) digitize the A-file. Before submitting the request, staff must check RAILS to confirm: 1) the A-file is located at the NRC, and 2) the A-file has not been digitized.  After confirmation, staff may submit the digitization request by emailing the A-number(s) to the NRC's SODA team at SODATEAM.NRC@uscis.dhs.gov, cc'ing matthew.e.bays@uscis.dhs.gov. Staff will follow normal procedures for T-file or A-file creation.

All FRTF cases should be assigned to the team of officers dedicated to processing FRTF parole requests; associated cases should be assigned to the same officer for review, if possible. Cases submitted by the same attorney at the same time are not necessarily associated.

## F. Adjudication

An outline of the adjudication process is below and is subject to change. All requests will be considered on a case-by-case basis, taking into account all factors, and considering the totality of the circumstances. Adjudicators must review the entire record including the application, all supporting documents, and the A-file. All cases are subject to supervisory review.

1. **Qualifying Separation/Family Member Verification**
   a. The FRTF will already have verified that an individual has a qualifying separation and qualifying relationship pursuant to E.O. 14011 and the Secretary's decision memo.  The adjudicator will check the Master List of separated family members identified by the Task Force.  Knowing if a person is a separated family member or an additional family member

FOUO –DRAFT FOR IMPLEMENTATION

will inform the file review and what initial evidence is required.

b.  If an applicant's name is not included in the Master List, notify IRAD HQ-Policy for guidance. If IRAD HQ confirms that an applicant lacks access (i.e., applicant is not eligible for consideration for parole under the FRTF process[3]), HAB will administratively close the case and issue a Notice of Case Closure that will include the following language:

- The application you sent us is not eligible for consideration for parole under the process established by the Family Reunification Task Force consistent with Executive Order 14011, *Establishment of Interagency Task Force on the Reunification of Families*, and the policy set forth by the Secretary of the Department of Homeland Security (DHS) for individuals and certain family members who were separated at the United States-Mexico border by DHS between the dates of January 20, 2017, and January 20, 2021 in connection with the operation of the Zero-Tolerance Policy and related policies.

  Additionally, we are unable to process your Form I-131, *Application for Travel Document*, because the filing fee has not been provided. Please review the Form Instructions for fee information. For more information on how to apply for parole through the standard parole process, visit the "Humanitarian Parole" topic on our webpage (uscis.gov/humanitarian).

2.  **Confirmation of Identity/Familial Relationship**
    a.  **Separated Family Members**
        i.   Except as noted below, evidence demonstrating the separated parent (including legal guardian)/child relationship is not required because the relationship has already been found established by the DHS-led task force.
        ii.  Exception: If the adjudicator identifies conflicting information or discrepancies regarding the asserted relationship that need to be resolved, the adjudicator may request additional evidence. See Section F.7 – RFEs/NOIDs for more information.

    b.  **Additional Family Members** must provide clear and legible copies of evidence establishing the familial relationship between the additional family member and separated family member (e.g., civil documentation, birth certificates, or marriage certificates).

3.  **Background checks**

---

[3] This scenario is distinct from a case with fraud concerns in which an individual takes on the identify of someone who is on the FRTF master list.

22 CV 5312

US 0344

FOUO –DRAFT FOR IMPLEMENTATION

Adjudicators will complete standard security and background checks.[4] If the petitioner is in effect a preparer assisting the beneficiary with completing the document, the officer should run the listed primary name and date of birth (i.e., a search for aliases is not required).

## 4. Analysis

### a. Urgent humanitarian reasons and significant public benefit

Per the Secretary's memo, there are both urgent humanitarian reasons (i.e., reuniting separated children with parents/legal guardians, providing access to services and support in the U.S.) and significant public benefit (i.e., "rectifying a past wrong" and promoting family unity) for paroling separated family members and qualifying additional family members. A case-by-case discretionary analysis is still required, as described in subsection b. below. The criteria for qualifying separated family members and additional family members are different and described below.

    i. **Separated family members**: If the individual has met the criteria for qualified separation and qualified applicant type, then the urgent humanitarian reasons or significant public benefit have been established.

    ii. **Additional family members**: Per the Secretary's memo, "USCIS will also consider parole requests of additional family members, with the aim of ensuring family unity and protecting against otherwise eligible individuals from having to separate from other children and partners in order to reunify with a separated family member."

The additional family member must: 1) be an immediate household member who occupies the same housing unit as the separated family member at the time of the parole request, and 2) demonstrate a compelling humanitarian reason for accompanying or joining a previously separated family member. If both criteria have been met, then significant public benefit has been established.

The additional family member must provide evidence demonstrating that the additional family member and separated family member share the same residential address or housing unit. This may include, for example, an official document that shows the beneficiaries' names and addresses. For children and spouses of a separated family member, an established relationship is prima facie evidence that the individuals occupied the same housing unit at the time parole was requested.

There also must be evidence regarding the compelling humanitarian reason for the additional family member accompanying or joining a previously separated

---

[4] See the HAB Procedures Manual, Section VII. Background and Security Checks (July 9, 2019) and the Background and Security Check Vetting Guidance for Form I-131 (HAB) Parole Adjudication (October 20, 2020).

US 0345

FOUO – DRAFT FOR IMPLEMENTATION

family member, which could be a statement explaining the circumstances and why the additional family member must accompany the separated family member. The statement should either be from a separated family member or, if from another individual, should explain the basis of the knowledge for making the statement.

b. **Discretion**

i. The adjudicator will weigh the positive discretionary factors against any derogatory information.

ii. The significant public benefit and urgent humanitarian reasons for facilitating family reunification are positive discretionary factors.

iii. **USCIS shall presume a presumption in favor of parole for separated parents.** This presumption may be overcome if there is derogatory information indicating that the applicant poses a potential national security or serious public safety threat. Adjudicators should discuss with their supervisors any concerns related to other derogatory information in the case. Consultation with the Task Force will be made prior to denial of any case.

iv. A requester's lack of a current path to regularize status in the United States will not be considered a negative discretionary factor for otherwise eligible applicants.

v. If the individual has one or multiple removal orders, the adjudicator should consider the underlying basis of each removal order and assign the appropriate weight to each factor accordingly. For example, a removal order for entering without inspection and a removal order based on serious criminal grounds involving public safety should be given different weight. Generally, the strong positive factor of the significant public benefit and urgent humanitarian reasons related to this group of individuals will outweigh the negative factor of having prior removal orders.

5. **Documenting the Adjudication**

a. Adjudicators will complete the Parole Adjudication Worksheet (PAW) and update CAMINO according to standard procedures. Adjudicators must clearly document the individual's applicant type in Section B – Analysis of Parole Reason. For example:

22 CV 5312

FOUO –DRAFT FOR IMPLEMENTATION

i. Class Member

> The beneficiary [or self-petitioner] was identified by the FRTF as having been improperly separated at the U.S.-Mexico border between January 20, 2017 and January 20, 2021 in connection with the "Zero-Tolerance Policy" and related policies, and has established a significant public benefit and urgent humanitarian reasons pursuant to the policy set forth in the Secretary's memo titled, "Interim Guidance for Parole of Noncitizens for Purposes of Reunification Consistent with Executive Order 14011, *Executive Order on the Establishment of Interagency Task Force on the Reunification of Families*".

ii. Additional Family Member

> The beneficiary [or self-petitioner] is the [familial relationship] of [complete name of separated family member], who was identified by the FRTF as a separated family member. The beneficiary [or self petitioner] occupied the same housing unit as the separated family member at the time parole was requested. Considering the nature of the relationship and level of dependence between the family members, there is a compelling humanitarian reason for the additional family member accompanying or joining the previously separated family member. Given these reasons, a significant public benefit has been established pursuant to the policy set forth in the Secretary's memo titled, "Interim Guidance for Parole of Noncitizens for Purposes of Reunification Consistent with Executive Order 14011, *Executive Order on the Establishment of Interagency Task Force on the Reunification of Families*".

b. Adjudicators must confirm the correct "FRTF" case tag was selected according to the beneficiary's applicant type.
c. In general, parole should be authorized for a period of 36 months.

## 6. RFE/NOIDs

Before an adjudicator requests additional evidence, the adjudicator should consult with his/her supervisor and IRAD HQ-Policy Branch given that it is possible the Task Force has information that may address the concern. For any unusual cases that require additional evidence (e.g., USCIS has evidence of alleged criminal activity), the drafted notice must be shared with IRAD HQ-Policy and the IRAD Chief for review prior to issuance.

22 CV 5312

FOUO – DRAFT FOR IMPLEMENTATION

For beneficiaries located outside of the NTCs, if the Form I-131 is only missing the beneficiary's local contact information and it is unclear who the U.S. Embassy should contact if the parole request is approved, HAB may follow standard procedures and directly email the petitioner (or preparer) to explain the issue and seek clarification on whether the beneficiary's local contact information is available or if the petitioner (or preparer) would like to be contacted to coordinate the beneficiary's in-country travel.

   a. **Request for Evidence (RFE)**

       i. If initial required evidence is missing, or the existing evidence is insufficient to meet the applicable standard of proof, and there is a reasonable possibility that additional evidence available to the petitioner will overcome a denial, the officer should issue an RFE.

       ii. See the HAB Procedures Manual, pp. 40-41 for more information on what to include in a RFE and further processing steps.

       iii. Follow standard procedures for processing RFE responses, including updating CAMINO. If no response is received, the adjudicator should prepare a Notice of Intent to Deny.

          1. If there is no response to the RFE, the case will be denied due to abandonment, denied based on the record, or denied based on both reasons.

          2. If the response to the RFE is insufficient, then the officer will issue a NOID (see below).

   b. **Notice of Intent to Deny (NOID)**

       i. Before denying a request other than for abandonment, officers should issue a NOID in order to give the applicant an opportunity to address any concerns, including providing evidence requested in a prior RFE.

       ii. The officer must consult with a supervisor regarding any denial based on classified derogatory evidence to determine what information may be included in the NOID. The supervisory officer should notify IRAD HQ-Policy Branch of such cases.

       iii. See the HAB Procedures Manual, pp. 42-43 for more information on what to include in a NOID.

       iv. Follow standard procedures for processing NOID responses.

          1. If the response overcomes the reasons for the proposed denial, and the individual merits a favorable exercise of discretion, the adjudicator will approve the request.

          2. If there is no response to the NOID, the case will be denied due to abandonment, denied based on the record, or denied based on both reasons.

          3. If the response to the NOID fails to overcome the reason for the proposed denial, the adjudicator will deny the request. See Section 7.b. – Denials for more information.

**7. Post-Decision Processing**

22 CV 5312

US 0348

FOUO –DRAFT FOR IMPLEMENTATION

Post-decision processing steps for approved cases will depend on where the beneficiary is located. For beneficiaries located in El Salvador, Guatemala, or Honduras, USCIS will complete overseas processing steps (see section 7.1.). For beneficiaries located in any other country abroad, State Department will complete the overseas processing steps (see section 7.2).

## 7.1. Beneficiaries located in El Salvador, Guatemala, and Honduras – USCIS processing

### a. Continued Parole Processing:

    i. HAB sends Decision Letter to the applicant (petitioner) and attorney of record, if any, via mail and email.

    ii. HAB ensures that IOM's FRTF inbox (FRTF@iom.int) is included.

    iii. Do not create an authorization memo.

    iv. USCIS international field office/TDY ("USCIS IO") reviews daily Tableau report of approved FRTF cases ready for overseas processing.

    v. USCIS IO locates beneficiary's person profile in CAMINO and creates an I-512L case. Select the FRTF case tag. A physical work or temporary file does not need to be created.

    vi. USCIS IO will contact IOM to provide available times for FRTF appointments and request that IOM email an updated digital photograph of the beneficiary for the I-512L travel letter.

    vii. IOM sends USCIS IO confirmed appointment schedule.

    viii. IOM will ensure that the beneficiary will bring their valid and unexpired passport.

### b. In-person appointment:

USCIS IO will complete the following tasks during the beneficiary's in-person appointment:

    1. ID verification and passport check. If USCIS IO has any concerns during the course of verifying the beneficiary's ID, see section below on "New identity or derogatory information".

    2. Complete biometrics collection (ages 13.5 - 79).

        1. If prompted, select Code 3 located below Form Number.

    3. If applicable, receive beneficiary's submission of recent passport-sized/style photo.

Once all steps are completed, USCIS-IO informs the beneficiary that IOM will notify the beneficiary regarding next steps.

USCIS-IO will monitor CPMS for fingerprint results for biometrics that were collected. Fingerprint results must be received before USCIS IO can proceed to the next step.

### c. New identity or derogatory information:

    i. If USCIS IO discovers any new identities during overseas processing, USCIS-IO scans and uploads a copy of ID docs into CAMINO in the I-131 case type and notifies HAB.

FOUO –DRAFT FOR IMPLEMENTATION

    ii.  If USCIS-IO discovers new derogatory information (including derogatory information from fingerprint checks) or wishes to flag concerning information regarding the parole beneficiary, USCIS-IO notifies HAB via email. HAB reviews and determines whether the case should be referred to RIO FDNS for review. After RIO FDNS review, if required, HAB determines whether approval should be rescinded. All internal correspondence will be interfiled and uploaded into CAMINO.

    iii.  In CAMINO, HAB ensures that the "New USCIS-IO Info" case tag is selected.

**d.** If there is no new identity or derogatory information or HAB confirms that any new information does not affect the approval, and security checks are clear and valid, USCIS IO confirms with the IOM that travel may be booked for the parole beneficiary.

    i.  Once IOM books travel and shares the itinerary (flight number/date) with USCIS IO, USCIS IO adds flight number and date to the I-512L case remarks in CAMINO.

    ii.  USCIS IO confirms validity of security checks and completes a "just in time" TECS check on the beneficiary. Any unresolved hits must be resolved and any expired security checks must be updated.

    iii.  USCIS IO will select the correct template and generate the I-512L, print on secure paper, and carefully affix the laminate atop the digital photo or physical photograph.

    iv.  Make 1 photocopy of the I-512L with the secure laminate and upload into STACKS (if A-file is digitized); or upload the scanned copy into CAMINO. If scanned copy is uploaded into CAMINO, notify HAB so that the copy can be printed and interfiled before the A-file is returned to the NRC. Properly destroy the physical photocopy.

    v.  Add the laminate serial number into CAMINO.

    vi.  If a laminate is lost or damaged (including those that are unused), include the laminate serial number in CAMINO and update the status of the laminate accordingly.

    vii.  USCIS IO sends the I-512L travel letter to IOM. IOM will handle delivery to the beneficiary and share the travel itinerary with CBP.

    viii.  Similar to the boarding foils that the consular section would issue, the travel letter will be valid for 30 days upon issuance date. If the beneficiary is unable to travel within that window, USCIS IO can reissue a new I-512L, upon receipt of the original I-512L from IOM. USCIS IO should destroy the I-512L accordingly and update the status of the destroyed laminate.

**e.**  **Reschedules and no-shows**

    i.  TBD

## 7.2. Beneficiaries located outside the Northern Triangle countries – consular processing

**Note:** IOM may be assisting certain beneficiaries with delivery of official notice and scheduling

FOUO —DRAFT FOR IMPLEMENTATION

appointments in Mexico, Brazil, Nicaragua, and Romania. Therefore, post may need to contact IOM, rather than the beneficiary or attorney of record, to set up an appointment.

a. **Approvals:**

   i. HAB sends Decision Letter to the applicant (petitioner) and attorney of record, if any, via mail and email. For cases in Mexico, Brazil, Nicaragua, and Romania, ensure that IOM is copied.

   ii. HAB notifies Post via the FRTF Parole Authorization Memo and flags that the case is an FRTF case in the body of the email.

   Certain fields in the Parole Authorization Memo template will require manual entry:

   1. Confirmed aliases. If none, then indicate "None".
   2. Nationality (as indicated on the individual's passport).
   3. Purpose of parole request. Add the appropriate language based on the beneficiary's applicant type:
      - **For separated family member**: "Reunification and/or to seek additional services and support, including trauma and mental health services, in the United States under the Family Reunification Task Force EO."
      - **For additional family member**: "To accompany or join a previously separated family member to the U.S. due to a compelling humanitarian reason."
   4. Derogatory information, including prior removal(s). If the beneficiary has any prior removal(s), include clarification that post does not need to notify USCIS of possible inadmissibilities related to the removal(s).
      a. E.g., *The beneficiary was previously removed from the United States; any related possible inadmissibilities (e.g., INA 212(a) 9A, 9B, 9C, and 6E) do not impact the individual's eligibility for parole.*
   5. Passport Type
   6. Place of Passport Issuance (only if different from country of issuance, then add the place of issuance immediately after country of issuance).
   7. Contact email and phone numbers for beneficiary/petitioner/attorney.
      a. **Note**: IOM may be assisting certain beneficiaries with scheduling appointments in Mexico, Brazil, Romania, and Nicaragua. Therefore, Post would need to contact IOM, rather than the beneficiary or attorney of record, to set up an appointment.

   iii. HAB includes any special instructions (e.g., wet-signature collection for additional family members who self-petitioned and did not sign the Form I-131).

## 7.3 Denials:

22 CV 5312                                                                 US 0351

FOUO –DRAFT FOR IMPLEMENTATION

     i. The reviewing officer will notify IRAD HQ-Policy Branch. IRAD HQ-Policy Branch will provide advance notice to the Task Force with its basis for that denial. The Task Force will then review the denial and provide its input for IRAD's consideration before IRAD makes its final discretionary determination.

     ii. If final determination remains a denial, issue Decision Letter to the applicant via mail and email).

     iii. If one family member is denied parole and the denial does not impact the other family members' parole approvals, IRAD HQ will discuss with the Task Force regarding counseling the family.

**G.  Notice of Motion to Reopen or Reconsider (Form I-290B)**

    a. Please refer to HAB's I-290B SOP.

**H.  Re-parole**

    a. Parolees may request re-parole by filing a new Form I-131 with supporting documents.

    b. Re-parole may be approved, if appropriate, in order to ensure the parolee receives the benefits of reunification, as well as continued access to trauma and mental health services, as needed.

    c. A statement from the healthcare provider of the need for continued services will generally be considered a favorable factor in support of a re-parole request.

    d. The duration of the authorized re-parole will be based on the statement of need and any other relevant factors.

    e. Before denying a re-parole request, the officer should follow guidance above regarding RFEs, NOIDs, and final denials.

**Appendices**

1. S1 Decision Memo – Interim Guidance (5/7/2021)
2. Filing Instructions for Plaintiff's Counsel
3. USCIS Acting Director Renaud's Authorization for Fee Exemption
4. Cover Letter for Filing

**Schedule of Revisions**

| Date | Pages | Description of Changes | Made By | Version Number |
|------|-------|------------------------|---------|----------------|
| 5/13/21 | | Initial release of draft for implementation. | IRAD Policy | 1.0 |
| 5/20/21 | | • Added clarification to statement of support's content.<br>• Added exception for children under 18 years old who is traveling with one or neither parent. | IRAD Policy | 1.1 |
| 6/30/21 | | • Updated passport requirement for beneficiaries.<br>• Added exception for evidence of residential address and compelling humanitarian reason for additional | IRAD Policy | 1.2 |

FOUO –DRAFT FOR IMPLEMENTATION

| | | | | |
|---|---|---|---|---|
| | | family members who are the spouse/partner or minor children of separated parent/legal guardian. <br> • Added guidance on applicants who are out of scope. | | |
| 8/3/21 | | • Added schedule of revisions. <br> • Added clarification regarding derogatory information in parole authorization memos <br> • Added requirement for beneficiary's local address. | IRAD Policy | 1.3 |
| 10/1/21 | | • Added section on overseas processing by USCIS (Part 7) | IRAD Policy | 2.0 |



22 CV 5312

US 0353



**U.S. Department of Homeland Security**

**U.S. Citizenship and Immigration Services**

*Refugee, Asylum, and International Operations Directorate*
Humanitarian Affairs Branch (HAB)
999 North Capitol Street, NE
Mailstop #2295
Washington, DC 20529-2295

Date:

# Memorandum

TO:                                                          EMAIL:

    Consular Section Chief,                   FAX:

    NIV Unit Chief                            EMAIL:

FROM:    [Secure signature block]

    John W. Bird
    Chief, Humanitarian Affairs Branch

SUBJECT: Parole Authorization under the Family Reunification Task Force process - Boarding Foil Requested

Please be advised that parole under the Family Reunification Task Force process has been authorized for 36 months for the following individual:

    Beneficiary's Name: [pre-populated from CAMINO]

    Aliases: [pre-populated from CAMINO]

    A-Number: [pre-populated from CAMINO]

    Date of Birth: [pre-populated from CAMINO]

    Place of Birth: [pre-populated from CAMINO]

    Nationality: [pre-populated from CAMINO]

    Gender: [pre-populated from CAMINO]

USCIS has informed the petitioner and/or representative of record that parole has been conditionally approved by USCIS for the above-named beneficiary.

The purpose of the beneficiary's parole request is as follows:

☐ Reunification and/or to seek additional services and support, including trauma and mental health services, in the United States under Executive Order 14011, Establishment of Interagency Task Force on the Reunification of Families  (Family Reunification Task Force EO).

☐ To accompany or join a previously separated family member to the United States under the Family Reunification Task Force EO.

In its discretionary determination, the following derogatory information was taken under consideration by USCIS in authorizing the grant of parole:

Describe any known prior removals and other derogatory information here, if applicable. [free text field.]

This grant of parole is contingent upon successful completion of identity verification and biometric checks, as required. Please contact the beneficiary to schedule an appointment with the Consular Section to verify identity and biometric collection, if applicable. After confirmation of identity and resolution of any additional derogatory information, a boarding foil may be issued pursuant to the guidance in 9 FAM 202.3-4(D), unless otherwise noted. If at any point during Consular processing, Post discovers derogatory information or new identity information not listed above, or information that casts significant doubt on or contradicts the purpose of the parole request listed above, DO NOT issue the above-named beneficiary a boarding foil. Instead, immediately contact via email the USCIS staff member who transmitted this memo, copying  the CAVO-Parole Notifications email box, and all the other addresses on the email, and provide the new information for resolution. Post does not need to provide USCIS with information on previously denied visas, as USCIS parole adjudicators have access to this information in the Consular Consolidated Database (CCD) and are required to check CCD prior to authorizing parole.

Upon receipt, the USCIS adjudicating office and supervisor will review the new identity or derogatory information to determine whether it impacts eligibility for parole and will contact Post to advise whether a boarding foil may still be issued or whether parole will now be denied. If USCIS determines that the case should be denied because of new information, USCIS will provide Post with a copy of the USCIS Denial Notice to provide to the beneficiary.

If no derogatory or new identity information is discovered during Consular processing, Post is authorized to issue a boarding foil for the above-named individual. Inadmissibility grounds do not preclude USCIS from authorizing the issuance of a travel document for the purpose of parole or preclude DOS from issuing the boarding foil.

The boarding foil must be issued within 30 days of the date of this memorandum. The boarding foil must be valid for travel by the beneficiary within 30 days from the boarding

foil issuance date. The boarding foil must be annotated with the parole beneficiary's alien number and the length of time that USCIS has approved parole, as follows:

> "NOT A VISA – USCIS AUTHORIZED FAMILY
> REUNIFICATION TF. VALID 36 MONTHS
> FROM INITIAL PAROLE. (CBP CODE: PFR)
> Axxx-xxx-xxx"

Passport information for parole beneficiary (if available):

Name: [pre-populated from CAMINO]

Passport Number: [pre-populated from CAMINO]

Passport Type:

Country/Place of Issuance: [pre-populated from CAMINO]

Issuance Date: [pre-populated from CAMINO]

Expiration Date: [pre-populated from CAMINO]

| Contact Information (if available): | Contact Information in the US: | Attorney Contact Information, if applicable: |
|---|---|---|
| [pre-populated from CAMINO] | [pre-populated from CAMINO] | [pre-populated from CAMINO] |

**Note: If IOM's contact information is listed in any of the fields above, please contact IOM to schedule the parole beneficiary's appointment.**

**Thank you for your assistance!**



U.S. Department of Homeland Security

U.S. Citizenship
and Immigration
Services

Mailing/Express Mailing Address:

E-mail:

Fax:

[Date of issuance]

[Petitioner's full name]
[Petitioner's mailing address]

# Notice of Referral for Further
# Parole Processing

U.S. Citizenship and Immigration Services' (USCIS) International and Refugee Affairs
Division (IRAD) is pleased to inform you that your application for parole (Form I-131) filed on
behalf of the individual named below, has been referred for further processing.

Beneficiary's Name:

Date of Birth:

Place of Birth:

A Number:

Approval is conditioned upon successful completion of any remaining clearances that are required in
the screening process. These clearances include identity verification and any additional security
checks, as required. The USCIS field office in [yyy], has been notified of the referral and will
coordinate with the International Organization for Migration (IOM) to schedule the beneficiary's
appointment. The Family Reunification Task Force contracted with IOM to provide in-country
assistance to individuals with their parole requests in El Salvador, Guatemala, and Honduras.

Provided that USCIS does not discover new information that would impact eligibility for parole,
a travel document (I-512L travel letter) may be issued for the parole beneficiary named above.
The parole beneficiary must travel to the United States within thirty (30) days of the date the
travel document is issued. The travel document must be presented to a Department of Homeland
Security (DHS) Customs and Border Protection (CBP) Officer at the port-of-entry. After
inspecting the parole beneficiary's travel documents upon arrival at the U.S. port-of-entry, CBP
generally will approve the entry to the U.S. of the parole beneficiary and will issue an electronic
Form I-94, *Arrival/Departure Record*, for the period of parole approved by this office. The Form
I-94 is proof of the beneficiary's entry as a parolee and lists the date by which the beneficiary
must depart the United States. CBP has the authority to deny entry to the U.S. or to modify the
length of the authorized parole period based on information gathered during inspection at the
port-of-entry.

Parole is temporary in nature and does not confer any legal status. If the beneficiary needs to
remain in the U.S. beyond the parole authorization period listed on the electronic Form I-94

US 0357

located at i94.cbp.dhs.gov/I94, he or she may request re-parole by filing a new Form I-131 and annotating on the top of the first page: "ATTN: FRTF RE-PAROLE". A fee is not required; however, the request should include updated supporting evidence to demonstrate the need for re-parole (for example, a statement from a healthcare provider of the need for continued services in the U.S.). To avoid any lapse in authorization to remain in the United States, the beneficiary should submit the re-parole request at least 90 days in advance of the parole expiration date. For more information on re-parole, visit the section on "Humanitarian Parole" on www.uscis.gov.

After the beneficiary appears before USCIS for identity verification and security checks, as required, USCIS will either authorize the parole or, if USCIS determines that the beneficiary is not eligible for parole, USCIS may deny the parole application. You will be notified of any such denial in writing.

If parole is authorized, please inform the beneficiary of the requirement, under penalty of the law, that non-U.S. citizensmust report a change of address within 10 days of moving within the United States or its territories, unless the individual is in the United States for less than 30 days and does not possess a visa. Parole beneficiaries, if residing in the U.S. longer than 30 days, must report their physicaladdress in the United States. Compliance with the requirement to notify USCIS of any address changes is a condition of the beneficiary's parole into the United States. Failure to comply could jeopardize their ability to obtain a future visa or other immigration benefit. Parole beneficiaries can change their address online, and update their address on any pending applications and petitions at the same time, using the USCIS Online Change of Address system at uscis.gov/addresschange. They may also complete and mail to USCIS a paper AR-11, Change of Address form. If mailing a paper AR-11, we strongly recommend using certified, registered, or return receipt mail. This will provide documentation that the form was mailed to USCIS. For more information, please visit the Address Change webpage linked above.

We are pleased that we were able to be of assistance to you. If you have other questions, please visit our web site at uscis.gov/contactcenter.

Sincerely,

[signature block]

For John W. Bird
Chief, Humanitarian Affairs Branch
cc:

(b)(7)(e)

| | |
|---|---|
| **From:** | RAIO-IRAD |
| **Subject:** | FW: Afghanistan ☐ Country Guide |
| **To:** | RAIO-IRAD-All |
| **Sent:** | October 15, 2021 7:10 AM (UTC-05:00) |

IRAD Colleagues,

The RAIO ☐ Program Office has published a new Afghanistan Country Guide. It is located on the ☐ ECN in the Adjudicator Tools folder.

Happy Friday!

Best,
IRAD TRIG POCs

**(b)(6)**

**From:** Tarr, David S <☐
**Sent:** Thursday, October 14, 2021 4:39 PM
**To:** TRIG Working Group☐
**Subject:** Afghanistan TRIG Country Guide

Hello Working Group Colleagues,

The RAIO ☐ Program Branch has posted a new Afghanistan Country Guide on our ECN. The purpose of the Country Guides is to provide adjudicators with background information about key events, regions, organizations and other matters that will assist them in developing proper lines of non-adversarial questioning. The information provided in these guides should not by itself form the basis of a determination about ☐ or any other eligibility factor.

These guides should not be printed or cited in an assessment or otherwise directly referenced. When a citation is needed, adjudicators should refer to the appropriate footnote, endnote, or hyperlinked document in the guide.

Please inform the field about this resource. Please let RAIO ☐ know if you have any questions.

Best,

(b)(7)(e)

David

| From: | On, Dung B |
|---|---|
| Subject: | Updated "Notice of Conditional Approval for Parole" template (non-Afghan) |
| To: | Ruppel, Joanna; Johnson, Bobbie L; Wright, Charles E; Bird, John W (Wally); Schoener, Sarah L; Chiorazzi, Anne; Katch, Hillary R; Loizeaux, Andrew B (Drew); Villasenor, Eissa M; Nixon, Karin C; Motolenich Torres, Catherine; Olson, Kelsey L; Jadrich, Sarah M; Stone, Mary M |
| Sent: | October 21, 2021 8:43 AM (UTC-05:00) |
| Attached: | E-signing - Approval Notice (10.21.21).pdf |

Dear IRAD colleagues,

Please note that updates to HAB's standard Approval Notice have been made, including renaming the notice to reflect the conditional nature of the approval. OCC recently advised updating the title of the notice; however, most of these updates were reviewed and cleared by IRAD and OCC when FRTF templates were created. I will work with IDEA to get this template in CAMINO and to share with ELIS developers. I will send a follow-up email to HAB once the template is ready for use.

The ELIS developers are in the process of uploading HAB's notice templates into ELIS and things have been moving extremely fast. If you or any team member notices outdated or incorrect information on any of the templates during course of normal work, please flag them for Policy to correct.

Please let me know if you have any questions or concerns.

With much appreciation,

**Dung On**
**HQ Refugee Officer, Policy**
(b)(6) International and Refugee Affairs Division (IRAD)
DHS/USCIS/RAIO
Phone:
Email:

Mailing/Express Mailing Address:

Fax:

U.S. Department of Homeland Security



U.S. Citizenship
and Immigration
Services

E-mail:

SAVETOCASE

# Notice of Conditional
# Approval for Parole

U.S. Citizenship and Immigration Services' (USCIS) International and Refugee Affairs
Division (IRAD) has conditionally approved your application for parole (Form I-131) filed on
behalf of:

Beneficiary's Name:

Date of Birth:

Place of Birth:

A Number:

Parole has been conditionally approved for a period of xxx contingent upon successful completion of
identity verification and biometric checks. The parole beneficiary must complete the Department of
State (DOS) DS-160, *Application for Non-Immigrant Visa* online as soon as possible (see
ceac.state.gov/GenNIV/Default.aspx ). The U.S. Embassy or Consulate in xxx , has been notified of
the conditional approval of parole and will contact the beneficiary to schedule an appointment for
identity verification and biometrics collection for parole beneficiaries aged 14 and over. The parole
beneficiary will need to bring the following to his or her appointment at the U.S. Embassy or
Consulate:

- Completed Department of State (DOS) DS-160 confirmation page;
- A passport valid for travel to the United States with a validity date of at least six months
  beyond the beneficiary's intended period of stay in the United States; and
- Two front-view passport style color photographs. See DOS website
  (travel.state.gov/content/travel/en/us-visas/visa-information-resources/photos.html)
  for photograph specifications.

Provided that the U.S. Embassy or Consulate does not discover new information that would
impact eligibility for parole, a travel document (boarding foil) will be issued for the parole
beneficiary named above. The parole beneficiary must travel to the United States within thirty
(30) days of

US 0361

the date the travel document is issued. The travel document must be presented to a Department of Homeland Security (DHS) Customs and Border Protection (CBP) Officer at the port-of-entry. After inspecting the parole beneficiary's travel documents upon arrival at the U.S. port-of-entry, CBP generally will approve the entry to the U.S. of the parole beneficiary and will issue an electronic I-94, *Arrival/Departure Record*, for the period of parole approved by this office. The I-94 is proof of the beneficiary's entry as a parolee and lists the date by which the beneficiary must depart the United States. CBP has the authority to deny entry to the U.S. or to modify the length of the authorized parole period based on information gathered during inspection at the port-of-entry.

Parole is temporary in nature and does not confer any legal status. If the beneficiary needs to remain in the U.S. beyond the parole authorization period listed on the electronic I-94 located at i94.cbp.dhs.gov/I94, he or she may request an additional parole period (i.e. re-parole) by filing a new Form I-131, with requisite fees or *Request for Fee Waiver*, Form I-912, a new Form I-134, and updated supporting evidence to demonstrate the need for re-parole. To avoid any lapse in authorization to remain in the United States, the beneficiary should submit the re-parole request at least 90 days in advance of the parole expiration date. For more information on re-parole, visit the section on "Humanitarian Parole" on www.uscis.gov.

If after the beneficiary appears at the U.S. Embassy or Consulate for identity verification and biometric collection USCIS determines that the beneficiary is not eligible for parole due to new information, USCIS may deny the parole application. You will be notified of any such denial in writing.

Please inform the beneficiary of the requirement, under penalty of the law, that non-U.S. citizens must report a change of address within 10 days of moving within the United States or its territories, unless the individual is in the United States for less than 30 days and does not possess a visa. Parole beneficiaries, if residing in the U.S. longer than 30 days, must report their physical address in the United States. Compliance with the requirement to notify USCIS of any address changes is a condition of the beneficiary's parole into the United States. Failure to comply could jeopardize their ability to obtain a future visa or other immigration benefit. Parole beneficiaries can change their address online, and update their address on any pending applications and petitions at the same time, using the USCIS Online Change of Address system at uscis.gov/addresschange. They may also complete and mail to USCIS a paper AR-11, Change of Address form. If they do this, we strongly recommend using certified, registered, or return receipt mail. This will provide documentation that the form was mailed to USCIS. For more information, please visit the Address Change page linked above.

We are pleased that we were able to be of assistance to you. If you have other questions, please visit our web site at uscis.gov/contactcenter.

Sincerely,

For John W. Bird
Chief, Humanitarian Affairs Branch

cc:

SAVETOCASE

(b)(7)(e)

| | |
|---|---|
| **From:** | RAIO-IRAD[____] |
| **Subject:** | HQ Review of Certain Afghan Cases |
| **To:** | RAIO-IRAD-All |
| **Sent:** | October 25, 2021 11:23 AM (UTC-05:00) |

IRAD colleagues,

RAIO[____] has asked each adjudicative directorate to release the following message. **Adjudicators and supervisors should continue to follow existing IRAD[____] handling procedures in order to comply with this request.**

> *Effective immediately, requests for immigration benefits filed by Afghan applicants or on behalf of Afghan beneficiaries who are otherwise eligible for the benefit sought but are inadmissible solely due to activities under the [_____] at INA 212(a)(3)(B) for which an exemption does not currently exist, should be raised to your component Headquarters[____] POC prior to issuance of any denial, referral or NOID. Please include a short summary of the facts of the case.*

Thank you,

IRAD[____] POCs

(b)(7)(e)

| | |
|---|---|
| From: | Ruppel, Joanna |
| Subject: | Afghan parole cases - decisions |
| To: | Schoener, Sarah L; Chiorazzi, Anne; Villasenor, Eissa M; Strong, Stacy K; Wright, Charles E; Johnson, Bobbie L |
| Cc: | Stone, Mary M |
| Sent: | October 26, 2021 1:10 PM (UTC-05:00) |

All,

Had a good meeting with D1.  Here is the upshot and next steps:

1. We can move forward to begin to deny cases for those who are ineligible, including the protection cases that do not meet our parole requirements who should seek protection though existing third country protection and refugee processing channels.  We should be sure to include very specific language in our denial letters and about the possibility of contacting the UNHCR and contact info (if we have it for the country where the beneficiary is) or website link.

2. We should prioritize processing of beneficiaries outside of Afghanistan, but still process some inside Afghanistan.  For example, we could assign 2/3 of the officers adjudicating Afghan cases to those outside of Afghanistan and 1/3 to those in Afghanistan, to the degree we know this information.

3. We should move forward with the formal clearance process for the analytic framework and guidance in the SOP and ensure we also are transparent with that on the website (e.g., the proposed language we have for the website).  **Sarah – could you please work with RAIO-IRAD Clearance to clean up the latest version of SOP and updated web content and get in clearance for expedited review?  We would need all comments by noon Thursday, I think.  I recommend you send Chelsea Clough at DHS a bootleg so she can start reviewing.**

I asked for front office support in clearing our draft SOP and web content by Friday.  After front office review, this likely will need to go to the Department.  So it may not be final/final by the beginning of training.


Joanna

Joanna Ruppel
Chief, International and Refugee Affairs Division
USCIS Refugee, Asylum and International Operations Directorate

(b)(6) [                    ] (cell)

US 0364

| | |
|---|---|
| **From:** | Schoener, Sarah L |
| **Subject:** | RE: Afghan parole cases - decisions |
| **To:** | Ruppel, Joanna; Chiorazzi, Anne; Villasenor, Eissa M; Strong, Stacy K; Wright, Charles E; Johnson, Bobbie L |
| **Cc:** | Stone, Mary M |
| **Sent:** | October 26, 2021 3:47 PM (UTC-05:00) |
| **Attached:** | Afghan Parole Procedures 10.26.21.docx, Afghan Humanitarian Parole Webpage Update - Clean with Limited Comments 10.26.2021.docx |

Joanna,

Thanks for the touch base this afternoon.

For the web content: I've sent to EXA for clearance. It's currently with Plain Language, and it will be sent out for official clearance tomorrow morning. EXA will request comments by COB Thursday (the minimum time they could give for agency review).
For the SOP: A copy has been sent to IRAD Clearance to initiate the formal clearance process. I've also sent a copy to Chelsea and our CA colleagues. I'll share the newest version with OCC, since they were reviewing an outdated version from last week.

Attaching copies of the latest clean versions for everyone's awareness.

Sarah

**From:** Ruppel, Joanna [_____]
**Sent:** Tuesday, October 26, 2021 2:10 PM
**To:** Schoener, Sarah L [_____] ; Chiorazzi, Anne [_____] ;
**(b)(6)** Villasenor, Eissa M [_____] ; Strong, Stacy K [_____] ; Wright,
Charles E [_____] ; Johnson, Bobbie L [_____]
**Cc:** Stone, Mary M [_____]
**Subject:** Afghan parole cases - decisions
**Importance:** High

All,

Had a good meeting with D1. Here is the upshot and next steps:

1. We can move forward to begin to deny cases for those who are ineligible, including the protection cases that do not meet our parole requirements who should seek protection though existing third country protection and refugee processing channels. We should be sure to include very specific language in our denial letters and about the possibility of contacting the UNHCR and contact info (if we have it for the country where the beneficiary is) or website link.
2. We should prioritize processing of beneficiaries outside of Afghanistan, but still process some inside Afghanistan. For example, we could assign 2/3 of the officers adjudicating Afghan cases to those outside of Afghanistan and 1/3 to those in Afghanistan, to the degree we know this information.
3. We should move forward with the formal clearance process for the analytic framework and guidance in the SOP and ensure we also are transparent with that on the website (e.g., the proposed language we have for the website). **Sarah – could you please work with RAIO-IRAD Clearance to clean up the latest version of SOP and updated web content and get in clearance for expedited review? We would need all comments by noon Thursday, I think. I recommend you send Chelsea Clough at DHS a bootleg so she can start reviewing.**

I asked for front office support in clearing our draft SOP and web content by Friday. After front office review, this likely will need to go to the Department. So it may not be final/final by the beginning of training.

Joanna

Joanna Ruppel
Chief, International and Refugee Affairs Division
USCIS Refugee, Asylum and International Operations Directorate

(b)(6)

(cell)

| From: | Ruppel, Joanna |
|---|---|
| Subject: | FRTF cases prepared by IOM |
| To: | Johnson, Bobbie L; Wright, Charles E; Bird, John W (Wally) |
| Cc: | On, Dung B; Chiorazzi, Anne; Stone, Mary M |
| Sent: | October 27, 2021 5:12 PM (UTC-05:00) |

Wally,

Could you please instruct parole adjudicators as follows?

For cases prepared by IOM, please place those cases on hold per IRAD HQ *after* the officer has captured all aliases and alternate DOBs and security checks have been checked or initiated. An adjudicator should not issue an RFE if the only deficiency is a statement of support or Form I-134. If the case requires an RFE for any other reason, please continue processing the case; do not request the statement of support or Form I-134.

I understand that the office has received several FRTF filings prepared by our IOM colleagues, all of which include a cover letter prepared by IOM that states that the application does not include a statement of support or Form I-134 "per the DHS Secretary's updated decision memo". The updated decision memo referenced in the cover letter was initially planned for publication <u>before</u> USCIS received these applications. Unfortunately, the Task Force ran into some delays with the updated decision memo; however, we anticipate that it should be finalized in the next week or so given how quickly the Task Force would like to move things.

Please let Dung know if you have any questions/concerns.

Thanks for continuing to manage this and other challenging workloads!

Joanna

Joanna Ruppel
Chief, International and Refugee Affairs Division
USCIS Refugee, Asylum and International Operations Directorate

(b)(6) [ ]
[ ] (cell)

(b)(7)(e)

| | |
|---|---|
| **From:** | Wright, Charles E |
| **Subject:** | RE: Data follow up from [ ] check meeting |
| **To:** | Bird, John W (Wally) |
| **Sent:** | October 29, 2021 9:47 AM (UTC-05:00) |

You can share with your team and the RIO-T team. Will you copy me? Thanks

(b)(6)

**From:** Bird, John W (Wally)[ ]
**Sent:** Friday, October 29, 2021 9:16 AM
**To:** Wright, Charles E [ ]
**Subject:** FW: Data follow up from [ ] check meeting

Charles, this is a very big deal for us, and for the TDY adjudicators. May I go out to the HAB team to let them no that UPAX checks are no longer required? Will you be working with RIO T. or would you like me to also share with them?

Wally

(b)(6)

**From:** Katch, Hillary R [ ]
**Sent:** Friday, October 29, 2021 7:47 AM
**To:** Bird, John W (Wally)[ ]
**Cc:** Wright, Charles E [ ]; Schoener, Sarah L [ ]
Chiorazzi, Anne [ ]; On, Dung B[ ]; Johnson, Bobbie L
[ ]
**Subject:** Re: Data follow up from [ ] check meeting

(b)(7)(e)

Wally-

Per Joanna's email, we are eliminating the UPAX requirement for all cases in parole processing.

Thanks!

Get Outlook for iOS

(b)(6)

**From:** Bird, John W (Wally) [ ]
**Sent:** Friday, October 29, 2021 7:37:16 AM
**To:** Katch, Hillary R [ ]
**Cc:** Wright, Charles E[ ]; Schoener, Sarah L [ ]
Chiorazzi, Anne [ ]; On, Dung B [ ]; Johnson, Bobbie L
[ ]
**Subject:** RE: Data follow up from [ ] check meeting

(b)(7)(e)

Hillary- just to be clear, are we eliminating UPAX for all parole cases, or just the Afghan OAW cases?

Wally

(b)(6)

**From:** Ruppel, Joanna [ ]
**Sent:** Friday, October 29, 2021 6:00 AM
**To:** Katch, Hillary R[ ]
**Cc:** Loizeaux, Andrew B (Drew)[ ]; Lenkowsky, Matthew

(b)(6)

; Alli, Akinkunmi O (Akin)                    ; Wright, Charles E
Bird, John W (Wally)                    ; Schoener, Sarah L
; Chiorazzi, Anne                    ; On, Dung B
; Ghattas, Thierry A                    ; Johnson, Bobbie L

**Subject:** Re: Data follow up from [ ] check meeting

(b)(7)(e)

Really appreciate all the work on this.   Ted is OK with us [ ]

Joanna

Joanna Ruppel
Chief, International and Refugee Affairs Division

(b)(6)

On Oct 28, 2021, at 6:26 PM, Katch, Hillary R [ ] wrote:

All –

Please see the attached chart related to the previously identified 11 non resolved AST-P hits where there
was a denial in CAMINO for an I-131 parole case. [ ]

(b)(7)(e)

Please let me know if you want any additional information for analysis.

Thanks -

Hillary Katch
Refugee Officer
IDEA Branch, International
and Refugee Affairs Division
[ ] (cell)

(b)(6)

**From:** Katch, Hillary R
**Sent:** Thursday, October 28, 2021 12:19 PM
**To:** Ruppel, Joanna [ ]
**Cc:** Loizeaux, Andrew B (Drew) [ ]    ; Lenkowsky, Matthew
[ ]    ; Alli, Akinkunmi O (Akin) [ ]    ; Wright,
Charles E [ ]    ; Bird, John W (Wally) [ ]    .
Schoener, Sarah L [ ]    ; Chiorazzi, Anne [ ]
On, Dung B [ ]    Ghattas, Thierry A [ ]    ; Johnson,
Bobbie L [ ]
**Subject:** RE: Data follow up from [ ] check meeting

Joanna –                              (b)(7)(e)

I will look into it and try to get you the chart today.

Thanks.

*Hillary Katch*
*Refugee Officer*
*IDEA Branch, International*
*and Refugee Affairs Division*
[                    ] *(cell)*

(b)(6)

**From:** Ruppel, Joanna [                              ]
**Sent:** Thursday, October 28, 2021 12:02 PM
**To:** Katch, Hillary R [                            ]
**Cc:** Loizeaux, Andrew B (Drew) [                    ] Lenkowsky, Matthew
[                        ]; Alli, Akinkunmi O (Akin) [              ]; Wright,
Charles E [                    ]; Bird, John W (Wally) [                ]
Schoener, Sarah L [                    ]; Chiorazzi, Anne [              ]
On, Dung B [                    ] Ghattas, Thierry A [                ]; Johnson,
Bobbie L [            ]
**Subject:** RE: Data follow up from [      ] check meeting

(b)(7)(e)

Thanks for the quick response. How much time would it take to review those 11 cases? Training on
security checks begins tomorrow, so it would be super great if we could lock this down today.  But if it is
going to take too long, let me know.

Joanna

Joanna Ruppel
Chief, International and Refugee Affairs Division
USCIS Refugee, Asylum and International Operations Directorate
[                    ] *(cell)*

(b)(6)

**From:** Katch, Hillary R [                          ]
**Sent:** Thursday, October 28, 2021 11:58 AM
**To:** Ruppel, Joanna [                        ]
**Cc:** Loizeaux, Andrew B (Drew) [                ]; Lenkowsky, Matthew
[                      ]; Alli, Akinkunmi O (Akin) [            ]; Wright,
Charles E [                ]>; Bird, John W (Wally) [                ]
Schoener, Sarah L [              ]>; Chiorazzi, Anne [            ]
On, Dung B [                ] Ghattas, Thierry A [            ]; Johnson,
Bobbie L [          ]
**Subject:** RE: Data follow up from [      ] check meeting

(b)(7)(e)

Hey Joanna!

Please see responses below in red.

Thank you.

*Hillary Katch*
*Refugee Officer*
*IDEA Branch, International*
*and Refugee Affairs Division*

(cell)

(b)(6)

**From:** Ruppel, Joanna
**Sent:** Thursday, October 28, 2021 11:35 AM
**To:** Katch, Hillary R
**Cc:** Loizeaux, Andrew B (Drew) ; Lenkowsky, Matthew ; Alli, Akinkunmi O (Akin) ; Wright, Charles E >; Bird, John W (Wally) ; Schoener, Sarah L ; Chiorazzi, Anne On, Dung B ; Ghattas, Thierry A >; Johnson, Bobbie L
**Subject:** RE: Data follow up from [ ] check meeting

(b)(7)(e)

Oops, adding Bobbie. Did not realize she was not on the chain.

Joanna Ruppel
Chief, International and Refugee Affairs Division
USCIS Refugee, Asylum and International Operations Directorate

(cell)

(b)(6)

**From:** Ruppel, Joanna
**Sent:** Thursday, October 28, 2021 11:35 AM
**To:** Katch, Hillary R
**Cc:** Loizeaux, Andrew B (Drew) ; Lenkowsky, Matthew ; Alli, Akinkunmi O (Akin) ; Wright, Charles E <; Bird, John W (Wally) ; Schoener, Sarah L ; Chiorazzi, Anne On, Dung B ; Ghattas, Thierry A
**Subject:** RE: Data follow up from [ ] check meeting
**Importance:** High

(b)(7)(e)

All,

I chatted with Ted this morning. We can drop the [ ] checks for the Afghan cases given they are getting OAW vetting. However, Ted would like a bit more info on the following:

1.

(b)(5)
(b)(7)(e)

2.

(b)(5)

(b)(7)(e)

I am happy to build out a chart on this and can have it to you by COB tomorrow. If the chart needs to be built sooner please let me know and I will reprioritize to ensure it is completed by when you need it.

Thanks all,

Joanna

Joanna Ruppel
Chief, International and Refugee Affairs Division
USCIS Refugee, Asylum and International Operations Directorate

_____ (cell)

(b)(6)

**From:** Katch, Hillary R _____
**Sent:** Tuesday, October 19, 2021 6:01 PM
**To:** Ruppel, Joanna _____
**Cc:** Loizeaux, Andrew B (Drew) _____; Lenkowsky, Matthew _____; Wright, Charles E _____>; Bird, John W (Wally) _____
Schoener, Sarah L _____; Chiorazzi, Anne _____
On, Dung B _____
**Subject:** Data follow up from _____ check meeting

(b)(7)(e)

Good Afternoon Joanna –

After our meeting today, Dung and I were able to preliminarily review I-131 data relating to _____ in CAMINO.

(b)(7)(e)

I hope this data helps with your consideration related to the _____ check.

Thanks!

*Hillary Katch*
*Refugee Officer*
*IDEA Branch, International*
*and Refugee Affairs Division*

(b)(6)  _____ *(cell)*

| From: | Bird, John W (Wally) |
|---|---|
| Subject: | ☐ No longer Needed for Parole Vetting |
| To: | Lariviere, Larocha N; Lassiter, Fiona K; Naquin, Marie-line; Poli, Henry P (Hank); Devlin, Alexis B; Donnelly, Christine C; Falade, Abigail; Hattendorf, David L; Kingsley, Leslie; Luft, Melissa A; Matusick, Nathan D (Nate); May, Samantha A (Sammy); Mayer, Rachel S; Mendoza, Riccis C (Red); Motolenich Torres, Catherine; Naylor, Larissa M; Polishuk, Richard A; Rossi, Nathaniel Q; Stamps, Allison L |
| Cc: | Kingsley, Jason; Jadrich, Sarah M; Rodrigues, Maria L; Nixon, Karin C; Wright, Charles E; Katch, Hillary R |
| Sent: | October 29, 2021 10:34 AM (UTC-05:00) |

(b)(7)(e)

Good morning everyone,

Yesterday IRAD Chief Joanna Ruppel confirmed with RAIO Acting Associate Director Ted Kim that due to the complete nature of all other vetting systems, it will no longer be necessary for adjudicators to complete a ☐ search. Our IDEA team (Hillary Katch) led the research documenting that actual system data confirms that all ☐ hits were clearly documented in other systems used for parole vetting, and that we are no longer required to complete the ☐ review.

(b)(7)(e)

Starting today, adjudicators do not need to check ☐ and TDY and new officers do not need to request access for ☐ from CBP.

Please let me know whether you have any questions.

Wally

John W.Bird
Chief, Humanitarian Affairs Branch
Refugee, Asylum and International Operations Directorate, IRAD, RIO
US Citizenship and Immigration Services, Dept of Homeland Security

| | |
|---|---|
| From: | Lassiter, Fiona K |
| Subject: | FW: New Memo Attachment for Afghan Approval Memos to Post regarding Resettlement Funds for USCIS approved parolees |
| To: | Devlin, Alexis B; MacDawutey, Eric A |
| Cc: | Cooper, Judith A (Judy) (CTR); Bird, John W (Wally); Lariviere, Larocha N |
| Sent: | October 29, 2021 12:36 PM (UTC-05:00) |
| Attached: | APA Fact Sheet for Overseas Humanitarian Parolees.pdf |

Alexis,

This is also another new request by the Policy team.

My goal is to designate a group of TDYers who can focus on decision notifications and Elis. In the meantime, can we incorporate this to the emails we send out?

**Fiona Lassiter, Supervisory Adjudications Officer**
Humanitarian Affairs Branch
(b)(6)  Office Phone
Cell Phone

---

**From:** Bird, John W (Wally)
**Sent:** Friday, October 29, 2021 7:52 AM
**To:** Lassiter, Fiona K
(b)(6)  **Cc:** Poli, Henry P (Hank); Lariviere, Larocha N;
Naquin, Marie-line
**Subject:** New Memo Attachment for Afghan Approval Memos to Post regarding Resettlement Funds for USCIS approved parolees

Hello Fiona,

We have been asked to send a copy of the attached benefits description along with each approval memo sent to post for Afghan beneficiaries only, so that post distributes it to Afghan beneficiaries when they issue the foil. Would you please work with staff to include this memo in our emails to post? Policy will be adding it to the SOP.

Thank you,

Wally



**United States Department of State**

*Washington, D.C. 20520*

You have been granted conditional humanitarian parole, which means that you are eligible for the U.S. Department of State's Afghan Placement and Assistance (APA) Program as well as other benefits and services, which may depend on the state you resettle in.

## What is the Afghan Placement and Assistance (APA) Program?

The APA Program provides certain Afghans granted parole with initial resettlement services for 30 to 90 days after arrival as you begin to rebuild your lives in the United States. These services are provided through local resettlement agencies and other partners that will assist you with housing and basic necessities, including food, clothing, and furnishings during the first 30-90 days in your new communities. Services include cultural orientation, assistance with enrollment in English language services as eligible, assistance with school enrollment, access to immigration assistance, and referral to other social, medical, and employment services, as eligible.

## How can I request APA support?

In order to access the benefits described above, you must follow the below steps:

1. If you want to request benefits, walk into or call a local resettlement agency and ask for an appointment. You must be accepted by the agency into the program no later than 90 days after arrival. You can find the nearest resettlement agency by using the APA Affiliate Directory at https://www.wrapsnet.org/afghans-granted-humanitarian-parole/.

2. Once the agency has accepted your case you will receive services. **Please note that resettlement agencies are also helping other Afghans resettle into their new communities and as a result it could take several weeks or months to get an appointment or assistance. For that reason, we cannot guarantee that resettlement agencies in these areas will be able to help you. Service times are especially delayed in high impact locations such as Sacramento and Northern Virginia.** In these locations, it is important to ensure that the family or friends that you are resettling with can house you for several weeks or months or that you have your own resources to pay for housing and other necessities. The US Government cannot guarantee any housing whatsoever in certain geographic locations, such as Sacramento and Northern Virginia.



For more information and to stay connected, please visit the Afghan SettleInUS Facebook page at https://www.facebook.com/SettleInUS.

*October 28, 2021*
US 0375

| From: | Schoener, Sarah L |
|---|---|
| Subject: | State cables on Afghan vis processing |
| To: | Bird, John W (Wally) |
| Cc: | Wright, Charles E |
| Sent: | November 1, 2021 7:47 AM (UTC-05:00) |
| Attached: | 20-STATE-110220.eml.pdf, 21-STATE-107284.eml.pdf |

Hi Wally,

Attached are two cables that may be helpful for HAB staff to review. These address State's prioritization of visa issuance for Afghans.

Sarah