# EXHIBIT G



**Policy Branch**
**International and Refugee Affairs Division**
Refugee, Asylum and International Operations
U.S. Citizenship and Immigration Services

Parole Requests for Afghan Nationals
Interim Policies and Procedures

Date: November 5, 2021[1]

---

### Background:

On August 29, 2021, the Department of Homeland Security (DHS) became the lead agency implementing the ongoing U.S. Government efforts to support vulnerable Afghan nationals, including many who were evacuated with U.S. Government and private partner assistance from Afghanistan following the withdrawal of the U.S. military from Afghanistan. These coordinated efforts are known as Operation Allies Welcome (OAW) and include comprehensive screening and vetting and additional medical screening and vaccination of Afghan nationals paroled into the United States.

USCIS has developed vetting and medical-related requirements to apply Operation Allies Welcome policies to the adjudication of parole requests for Afghan nationals received through Form I-131 or U.S. government referrals that are under International and Refugee Affairs Division's (IRAD) jurisdiction.[2] This guidance outlines these policies and procedures, as well as eligibility considerations that are specific to parole of Afghan nationals, taking into account the evolving situation in Afghanistan, U.S. policy interests, and other protection mechanisms in place for vulnerable Afghan nationals.

### Eligibility:

Adjudicators must follow the HAB Procedures Manual and the Parole Training Module when adjudicating parole requests for Afghan nationals. Although parole requests may be similar in nature, each application must be evaluated on its own merits taking into account all the factors unique to the specific parole request and considering the totality of the circumstances. Given the conditions specific to Afghanistan and the implementation of OAW, adjudicators must follow the additional guidance specific to parole requests for Afghan nationals outlined below.

---

[1] OCC/RALD and OP&S clearance received November 4, 2021
[2] Many Afghan nationals were transported to the United States by the USG and were paroled at the ports of entry by CBP. Afghan nationals who remain overseas are eligible to apply for humanitarian parole with USCIS by filing the Form I-131, Application for Travel Document. USCIS also receives requests for parole through executive agency referrals. Humanitarian parole requests are adjudicated by IRAD's Humanitarian Affairs Branch (HAB) and, if approved, the individual must visit a U.S. embassy or consulate to complete processing (including biometric security checks) and receive travel documents.

USCIS-0451

The interagency is prioritizing relocation to the United States of the following categories of Afghan nationals who have been able to leave Afghanistan:

- Immediate relatives of a U.S. Citizen (spouse, unmarried children under 21, and parents);
- Immediate relatives of a U.S. Lawful Permanent Resident (spouse and unmarried children under 21);
- Locally Employed Staff (LES)[3] of U.S. Embassy Kabul and their immediate family (spouse and unmarried children under 21);
- Special Immigrant Visa (SIV) applicants who have received Chief of Mission (COM) approval and immediate relatives (spouse and unmarried children under 21) included on their case;
- Immediate relatives of Afghan nationals previously relocated to the United States through OAW (spouse, unmarried children under 21, and, in the case of unaccompanied minors relocated as part of OAW, their primary caregiver, including but not limited to a parent or legal guardian, and the spouse and dependent children under 21 of the primary caregiver); and
- Individuals referred to the U.S. Refugee Admissions Program (USRAP) through a P1 embassy referral or P2 group designation referral **and in imminent risk of *refoulement* or serious, targeted harm** in the country outside Afghanistan where they are located.

Membership in one of these groups outlined above should be considered a strong positive factor when assessing urgent humanitarian reasons, significant public benefit, and the exercise of discretion.

Special Immigrant Visas (SIV): Special immigrant applicants who have received COM approval have provided the Department of State with evidence to show they have provided faithful and valuable service to the U.S. Government and have experienced an ongoing serious threat. COM approval is a strong positive factor when assessing significant public benefit and urgent humanitarian reasons. SIV applicants who have not received COM approval must provide third party, credible evidence of their work for the U.S. government (see below section on Evidence), as well as evidence of imminent, targeted severe harm or a particular vulnerability (such as a serious medical condition or a single female without support) to show why they are unable to wait to complete SIV or refugee processing. Adjudication officers can find evidence of COM approval by looking in CCD. Evidence of an approved I-360 petition in CLAIMS3 would also be a strong indicator that the individual has received COM approval.

Protection Claims and P1/P2 Refugee Referrals: Parole is not intended to replace refugee processing and, wherever possible, it is USG policy to process protection needs through the U.S. Refugee Admissions Program (USRAP). However, in some circumstances, the protection needs are so urgent that processing via the USRAP, which can take six months or more for an expedited case, is not a realistic option to accord needed protection. While each case is unique and parole determinations are made based on the totality of the circumstances, USCIS generally approves requests based on protection needs only if there is credible, third-party evidence naming the beneficiary that shows the beneficiary is targeted and at imminent risk of severe harm. The interagency has prioritized relocation efforts for those Afghan nationals who have been referred as P1 or P2 refugee referrals if they are in imminent risk of serious, targeted harm in the country outside of Afghanistan where they are located and processing through the USRAP is not an option. The Department of State is developing procedures so that a State Department Refugee Coordinator, working closely with the United Nations High Commissioner for

---

[3] Locally Employed Staff are foreign nationals and other locally resident citizens who are legally eligible to work in the country and are employed by the U.S. embassy or consulate.

Refugees, can identify Afghan refugee applicants who are at such risk or have specific vulnerabilities such that expedited refugee processing will not meet the protection needs. In those situations, the Department of State will present a government referral to IRAD for consideration of parole.

While receiving these cases through the government referral process is the preferred approach, that does not preclude individuals from submitting requests for parole using Form I-131 based solely on protection needs. However, the evidentiary burden for those who are not P1/P2 referred applicants for whom PRM and/or UNHCR has confirmed is at imminent risk, will remain high.

### Beneficiaries still in Afghanistan

Since the U.S. Embassy in Afghanistan has suspended operations, including all normal consular services, a beneficiary will be required to leave Afghanistan in order to complete processing of their parole request. If an adjudicator finds that a beneficiary residing in Afghanistan is initially found eligible for parole, the adjudicator may issue a Parole Notice (Suspension of Processing) stating that USCIS cannot complete processing of the parole request unless and until the beneficiary informs USCIS that they are able to report to a U.S. embassy or consulate. It may be difficult to assess eligibility based purely on protection needs while an individual is still in Afghanistan, as the adjudicator will not know when or how the beneficiary will leave Afghanistan, where the beneficiary will be once outside of Afghanistan, or the protection that may be available to the beneficiary in that location. Therefore, for Afghan nationals in Afghanistan, parole requests based on protection needs, without other factors, such as the beneficiary's falling into one of the categories of Afghan nationals prioritized by the interagency, family reunification, or urgent medical needs, generally will be denied. Such parole beneficiaries should be given denial notices informing them that 1) their parole applications cannot be approved at this time and that, should they get to a third country, they should contact the United Nations High Commissioner for Refugees (UNHCR) for protection and consideration of refugee resettlement in the United States through the U.S. Refugee Admissions Program; and 2) should they be at imminent risk of severe harm in that third country or forced return to Afghanistan, they should contact USCIS with information on whether they have contacted UNHCR for protection assistance and include any third-party credible evidence of their risk in that third country. USCIS will consider reopening the denied parole application (for no fee) within a year from the denial and may reconsider their request if sufficient additional new evidence is provided.

### Beneficiaries outside of Afghanistan

Generally, beneficiaries in need of protection should be directed to contact UNHCR. UNHCR has more direct access to information about the beneficiary and conditions in the host country and can consult with the State Department Refugee Coordinator to assess urgency and the most appropriate protection path, including referral for parole, expedited refugee processing for resettlement in the United States, or resettlement in a third country. Parole is not intended to replace normal refugee processing channels and therefore discretion generally will be exercised to deny a request for parole based on a protection need in lieu of channeling vulnerable individuals through the normal protection channels. However, some vulnerable beneficiaries may be eligible for parole based on the specific circumstances of the beneficiary. When assessing parole eligibility, the adjudicator must review the Form I-131 application carefully for any other factors in addition to the protection request, such as family unity, specific vulnerability that may put the beneficiary at risk of imminent harm in the third country, the possibility of imminent refoulement to Afghanistan, and/or whether the beneficiary has access to UNHCR, depending on the location. The adjudicator should assess the totality of the circumstances to determine whether there are urgent humanitarian factors or significant public benefit reasons for parole and whether discretion should be exercised favorably. A combination of factors in addition to protection needs –

such as factors related to family unity or other close U.S. ties and specific vulnerability – should be considered favorably.

Beneficiaries of Form I-130 or Form I-730 Petitions:

While parole generally is not used to circumvent normal immigration processing channels, family reunification is a positive factor when assessing parole eligibility, particularly when combined with other factors related to vulnerability and when normal immigration processing channels are insufficient to address the need for parole. There often are significant public benefit reasons to promote family unity, particularly with respect to vulnerable family members (for example, when the separated vulnerable family member is outside the United States, or the beneficiary is needed to assist a vulnerable family member inside the United States). Family unity is also a positive factor in the exercise of discretion.

### *Approved Form I-130 and Form I-730 Petitions*

A vulnerable Afghan national who is the beneficiary of an approved Form I-130 petition may be eligible for parole if there are no negative discretionary factors that outweigh the positive factors of risk and family reunification. Vulnerability may be based on age, status (e.g., single female, LBGTQI+ status, religious minority status), medical condition, association with the United States, etc. Adjudicators should review PCQS (CLAIMS 3 and ELIS2) and the A-file to confirm the status of any prior petitions filed for the beneficiary. Generally, parole is not to be used to circumvent normal visa processing.

If the beneficiary has an approved Form I-130 petition and a visa is immediately available (e.g., immediate relatives of U.S. Citizens) or the beneficiary's preference category is current[4], the processing of the parole request should be suspended (marked closed in the case management system) and the beneficiary referred to immigrant visa processing through the Consular Section unless there are circumstances that indicate the visa process would be significantly delayed beyond the time the beneficiary could safely remain in the third country. IRAD HQ is in regular discussions with the Department of State Consular Affairs (DOS/CA) and will provide updated information about visa processing capacity at posts in the region. Adjudicators may also contact IRAD Policy for information when there are questions in this regard. If the beneficiary is in a particularly vulnerable situation, IRAD Policy can consult with DOS/CA to determine the most expeditious processing based on the specific post.

Similarly, if the Form I-131 beneficiary is also the beneficiary of an approved Form I-730 petition, the beneficiary should be directed to contact the U.S. Embassy or Consulate, or USCIS international office, where the beneficiary is located to transfer the Form I-730 petition for the travel eligibility determination and issuance of a travel document. If the travel document is issued, the beneficiary will be able to enter the United States as an asylee or refugee. Normally, the Department of State process for issuing a boarding foil for a Form I-730 beneficiary is very similar to the process for issuing a boarding foil for a parole beneficiary. IRAD HQ is in regular discussions with the Department of State Consular Affairs (DOS/CA) and will provide updated information about Form I-730 travel eligibility processing capacity at posts in the region. Adjudicators may also contact IRAD Policy for information when there are questions in this regard. If the beneficiary is in a particularly vulnerable situation, IRAD Policy can consult with DOS/CA to determine the most expeditious processing based on the specific post.

---

[4] See the Department of State Visa Bulletin for preference categories and visa availability.

4

*Pending Form I-130 and Form I-730 Petitions*

When a petition is pending, adjudicators should review the evidence provided to determine whether the beneficiary is at risk of harm if they were to wait for adjudication of the underlying petition and immigrant visa processing or travel document processing (Form I-730), whether sufficient evidence has been provided to support the claimed relationship and risk of harm, and to consider positive and negative discretionary factors. Any harm to the petitioner based on delayed family unification should also be considered. Adjudicators may also reach out to IRAD Policy where there are pending family-based petitions, and IRAD Policy can flag the petition for expedited adjudication with the office that has jurisdiction.

*No Form I-130 and Form I-730 Petition Filed*

When no family-based petition has been filed, but the Form I-131 beneficiary could also be eligible as a beneficiary of a Form I-130 or I-730 Petition based on relationship to a USC, LPR, asylee, or refugee, adjudicators should review the evidence provided to determine whether the beneficiary is at risk of harm if they were to wait for the petition and adjudication process (even if expedited), whether sufficient evidence has been provided to support the claimed relationship and risk of harm, and consider positive and negative discretionary factors have been considered. Any harm to the petitioner based on delayed reunification should also be considered.

The Department of State also has authority to accept Form I-130 petitions filed for immediate relatives at consular posts abroad for expeditious processing in urgent circumstances. Adjudicators may reach out to IRAD Policy to explore whether IRAD HQ could assist in working with partners within USCIS and DOS/CA to expedite the adjudication process if a Form I-130 or I-730 petition were to be filed.

Minors:

Adjudicators should refer to the HAB Procedures Manual and the Parole Training Module for additional guidance on adjudicating parole cases for minor children. The Adjudication Programs Coordination Office has also developed the RAIO Afghan Children and Adoption-Related Considerations Primer with information specific to the Afghan population.

Separated Family Members:

During the evacuation of Afghan nationals prior to August 31, 2021, some family members were separated from each other, with certain family members paroled into the United States pursuant to Operation Allies Welcome, some remaining in Afghanistan, and others getting to third countries via other means. There are significant public benefit reasons related to family unity to reunite immediate family members with family members paroled into the United States pursuant to Operation Allies Welcome, which can help improve resettlement outcomes. Reflecting the significant public benefit of this type of family reunification, Congress has authorized resettlement assistance after September 30, 2022, for the spouse and children of Afghan nationals paroled into the United States between July 31,

2021, and September 30, 2022, if their parole has not been terminated, as well as the parent or legal guardian of an unaccompanied Afghan minor paroled into the United States during that period.[5]

There also may be urgent humanitarian reasons to use parole to unite Afghan family members separated during the evacuation efforts, depending on the circumstances of each case. Generally, parole may be appropriate to unite separated immediate family members, including spouses and unmarried children, with an individual who was paroled into the United States as part of Operation Allies Welcome. It may also be appropriate for more extended family members, such as parents, adult children, or siblings, depending on the circumstance of each case and taking into account any vulnerabilities and dependencies among the family members.

**Evidence:**

In order to determine whether the beneficiary is eligible for parole, the adjudicating officer should review and evaluate all of the evidence in the record. The adjudicator should refer to the HAB Procedures Manual and the Parole Training Module for guidance on assessing relevance and credibility of the evidence provided. Adjudicators should also refer to 8 CFR § 103.2(b)(2) for regulations regarding the submission of secondary evidence when primary evidence is unavailable.

Afghan Documents: Identity and relationship documentation may be lacking in some Afghan parole requests given the circumstances of flight, for those outside of Afghanistan, and due to limitations on the availability of identity documents. For example, according to the September 22, 2021 Afghan Document Guide produced by the HSI Forensics Lab, citing a UNICEF report, birth certificates are not commonly used in Afghanistan and those that are issued often do not have the child's name. Adjudicators must become familiar with the Afghan Document Guide, which provides detailed information and exemplars of Afghan government documents prior to the recent take-over by the Taliban. Adjudicators are also encouraged to review the Department of State Reciprocity and Civil-Documents Guide section on Afghanistan. It notes that the main form of identity document used in Afghanistan is the *tazkera* and provides the following comments:

> *Afghans usually apply for a tazkera when a child reaches school age, but it can also be obtained and/or modified throughout adulthood. The document traces its holder's roots through the father; mother's names are not usually listed on tazkeras. Tazkeras are hand-written, and there have been multiple variants of the document since 1976. U.S. Embassy Kabul requires all Afghan citizens who are applying for immigrant, special immigrant, or other such visas to submit a tazkera, as proof of identity and birth. Some Afghan citizens may also possess birth certificates issued by clinics or hospitals in Afghanistan, but these documents are not accepted for U.S. visa processing. U.S. Embassy Kabul requires that all tazkeras be accompanied by a certified English translation. The tazkera must first be authenticated by the Ministry of Interior before an English translation may be certified by the Ministry of Foreign Affairs.*

More information will be provided regarding passports and identity documents issued by the Taliban government once it is available.

---

[5] See H.R. 5305, Section 2502
https://www.govtrack.us/congress/bills/117/hr5305/text/enr#link=C_V_2502_a&nearest=H68BB5F7B78D94E92A179EDBCC860C09F

6

Passports: In general, a parole beneficiary must have a passport to travel. However, when the beneficiary is unable to obtain a passport prior to travel to the United States, the adjudicator must notify the Consular Section that the beneficiary does not have a passport in the authorization memo sent to Post. The Consular Section may issue the boarding foil on the Form DS-232.

Verifying Work with the U.S. Government: Copies of letters and certificates from U.S. government agencies or officials can be easily replicated and generally should not be considered strong evidence without credible third-party verification. The Department of Defense (DOD) may be able to verify employment with DOD contractors in certain circumstances. DOD can also verify whether they have referred an individual for P1 or P2 refugee processing, including both individuals who worked for DOD and some who worked for the former Afghan government or military.

IRAD HQ is working to obtain access to the list of P1 and P2 referrals of Afghan nationals to the USRAP. In the near-term, adjudicators can refer cases to IRAD Policy for verification of DOD records if the beneficiary is otherwise eligible for parole (e.g., there is an imminent risk of severe targeted harm, particular vulnerability, or other factors that preclude refugee resettlement or visa processing) and third-party evidence of the beneficiary's claimed work with the U.S. Government is the only outstanding issue. Adjudicators should also send requests for verification of employment by other U.S. Government employers to IRAD Policy, and IRAD Policy will work to establish a mechanism for verifying these requests.

**Sponsorship and Resettlement Benefits:**

The continuing resolution for Fiscal Year 2022 passed by Congress on September 30, 2021, provides certain Afghan nationals who were paroled into the United States between July 31, 2021, and September 30, 2022, access to resettlement assistance, entitlement programs, and other benefits normally provided to refugees, and provides similar assistance to certain other Afghan nationals paroled after September 30, 2022.[6] While sponsorship documents are still required for parole requests to ensure beneficiaries have appropriate reception and support while paroled, adjudicators should take into account the benefits provided to certain Afghan parole beneficiaries through the continuing resolution when determining whether the beneficiary will have sufficient support during the authorized parole period in the United States. Sponsorship documents may also provide additional evidence to show U.S. ties, which may be a positive factor when assessing eligibility for parole.

The Department of State has developed a fact sheet on obtaining resettlement benefits, which the Consular Section will provide to the Afghan parole beneficiary at the time of travel foil issuance. After a beneficiary is paroled into the United States, the parolee will need to approach a designated resettlement agency to identify themselves as eligible for these benefits. Although Afghan parolees are entitled to resettlement benefits, it may take several weeks or a month to schedule an appointment with a resettlement agency and begin receiving these benefits after arrival. It is important that Afghan parolees have the support of a sponsor during this period.

---

[6] See H.R. 5305, Section 2502
https://www.govtrack.us/congress/bills/117/hr5305/text/enr#link=C_V_2502_a&nearest=H68BB5F7B78D94E92A179EDBCC860C09F

USCIS-0457

**Vetting:**



**Suspension of Processing Certain Cases:**

Parole beneficiaries must report to a U.S. embassy or consulate to complete processing of their parole request, including identity verification, biometrics collection, and receipt of vaccination records. Adjudicators should issue a Parole Notice (Suspension of Processing) if an Afghan beneficiary is initially found eligible for parole, but the beneficiary is residing in Afghanistan or another country without U.S. consular services. The Parole Notice (Suspension of Processing) states that USCIS cannot complete



8

USCIS-0458

processing of the parole request unless and until the beneficiary informs USCIS that they are able to report to a U.S. embassy or consulate.

Adjudicators may also issue the Parole Notice (Suspension of Processing) in cases where the beneficiary is initially found eligible for parole but has an approved Form I-730, I-360 (Petition for Amerasian, Widow(er), or Special Immigrant), or I-130 and an immigrant visa is available. The Parole Notice (Suspension of Processing) states that the beneficiary should pursue immigrant visa processing but may notify USCIS once outside of Afghanistan if immigrant visa processing is not a viable option.

The Parole Notice (Suspension of Processing) should only be issued for cases that are initially found eligible for parole **and all biographic vetting, including OAW NCTC vetting, is complete.** Once the Parole Notice (Suspension of Processing) has been issued, the adjudicator should administratively close the case in CAMINO or ELIS, purely for case tracking and workload management purposes. The parole application will remain open for at least a year.

If the petitioner or beneficiary notifies IRAD that the beneficiary is able to report to a U.S. embassy or consulate to continue processing of their case, the adjudicator should verify that the beneficiary is still eligible for parole and that all required USCIS-initiated[10] security checks are valid. For cases where the beneficiary has an approved immigrant petition and the visa is available, the adjudicator must assess whether a reasonable explanation has been provided for why the beneficiary cannot pursue immigrant visa processing, confirm all required USCIS-initiated security checks are valid, and verify that the beneficiary is still eligible for parole. If the adjudicator determines that the beneficiary is still eligible for parole, the adjudicator must re-open the parole request in CAMINO or ELIS and issue a Conditional Approval Notice. An Authorization Memo must also be sent to Post.

**Medical Requirements:**

For beneficiaries who are in a location where they can complete Consular processing, adjudicators will generate a Conditional Approval Notice: Referral to Consular Processing if the beneficiary is initially found eligible for parole and all USCIS-initiated vetting has been completed. The Conditional Approval Notice: Referral to Consular Processing notifies the petitioner and beneficiary of the additional steps required to complete processing of their case, including completion of the Form DS-160 and required medical screening and vaccinations through the panel physician. For urgent cases, USCIS or a government referring agency may request documentation of vaccinations through the panel physician before the adjudicator has made an initial decision on eligibility and may consider requiring medical screening for tuberculosis be completed within 30 days of arrival in the United States as a condition of parole. Adjudicators will also generate an authorization memo to Post notifying them of the conditional approval and medical requirements.

In line with current OAW requirements, Afghan parole beneficiaries will be required to complete the following medical screening and vaccinations[11] through a panel physician, unless an exception applies:

---

[10] DOS/CA conducts additional biometric and biographic checks prior to issuance of a boarding foil.
[11] https://www.cdc.gov/immigrantrefugeehealth/panel-physicians/vaccinations.htm CDC has additional vaccination age requirements for Afghan nationals: MMR is required for all Afghan nationals 6 months old until those born in or after 1957. Polio vaccination is required for all Afghan nationals 6 weeks or older.

- MMR (measles, mumps, rubella) vaccine
- Polio vaccine
- COVID-19 vaccine (1 dose)[12]
- Other age-appropriate vaccinations, as determined by the panel physician based on guidance issued by the Centers for Disease Control and Prevention (CDC)
- Tuberculosis (TB) screening (the beneficiary is required to take appropriate isolation and treatment measures if the tuberculosis test is positive)

The panel physician will generally complete a Form DS-2054, Report of Medical Examination by Panel Physician, for each beneficiary, which includes the Vaccination Documentation Worksheet to record all vaccinations completed and whether any vaccinations are not medically appropriate and the Tuberculosis Worksheet. Waivers to vaccinations that are not medically appropriate are recorded by the panel physician in the right column of the Vaccination Documentation Worksheet. The beneficiary must submit the medical record completed by the panel physician to the Consular Officer during their interview.

*Exceptions:*

In general, Afghan parole beneficiaries who have not completed the required vaccinations (or provided documentation from the panel physician that the vaccinations are not medically appropriate) will not be issued a boarding foil to travel to the United States. However, there may be exceptional circumstances when a beneficiary is unable to complete the required medical screening and vaccinations, either due to the urgent need to travel or because panel physician services and vaccines are severely limited in the beneficiary's country of processing. Whenever possible, vaccinations should be completed prior to travel. If there is sufficient evidence in the record to support the parole beneficiary's need for urgent travel to the United States (i.e., within 90 days of approval of the parole request), USCIS may consider approving parole with the condition that the parolee must complete TB screening within 30 days of arrival in the United States.

Adjudicators, with the approval of their supervisor, may use their discretion to approve parole into the United States conditioned on the parolee obtaining the required vaccinations and/or TB screening within thirty days of arrival. Adjudicators will issue the beneficiary the Notice Regarding Conditions of Parole via email, if available, copying the petitioner and representative of record, and will also provide the Consular Section with a copy of the Notice Regarding Conditions of Parole to deliver to the beneficiary at the time of foil issuance. This notice outlines the medical requirements that must be completed upon arrival in the United States. The adjudicator must mark that parole was authorized with conditions and note the conditions to parole in the case management system.

---

[12] The COVID vaccination requirement can be fulfilled with: 1) any of the COVID-19 vaccines with FDA approval or emergency use authorization: Janssen (J&J), Pfizer, or Moderna or 2) any of the COVID-19 vaccines listed for emergency use by the World Health Organization (WHO). See also: Guidance for persons vaccinated outside US, Technical Instructions for Panel Physician Exam: COVID 19, What to do when COVID vaccine is not routinely available

USCIS-0460

*Compliance with Conditions of Parole:*

If conditions are placed on parole, the parolee must verify that they have met the conditions of their parole by certifying their vaccination and TB screening status on the USCIS website within thirty days of arrival in the United States.[13] IRAD is working with the ELIS team to develop a case flag in ELIS that will notify adjudicators when a parole beneficiary has not reported compliance with the medical requirement conditions within 120 days of an approval of parole with conditions. When ELIS flags a case for non-compliance, an adjudicator must review CIS to determine whether the parole beneficiary entered the United States and the date of entry. If there were conditions placed on parole, it has been 45 days since the parolee entered the United States, and the beneficiary has not attested to completing the TB screening and required vaccinations, USCIS will send a warning letter to the beneficiary's last recorded address in AR-11. If the beneficiary fails to complete the vaccination and TB attestation within 120 days of arrival in the United States, USCIS will notify ICE to determine appropriate enforcement actions to promote compliance with the medical requirements. ICE will review each individual referral on a case-by-case basis. ICE or USCIS may amend the parole requirement to impose regular check-ins and technical monitoring or issue a Notice to Appear (NTA) as a means of revoking parole. USCIS may consider a new grant of parole, on a case-by-case basis, upon completion of medical requirements.

**Afghanistan Resources:**

For additional country conditions information for Afghanistan, please visit the RAIO Research Unit's Afghanistan Resource Guide. For information concerning terrorism-related inadmissibility grounds (TRIG) and TRIG-related concerns in Afghanistan, which may be helpful when determining whether discretion should be exercised to authorize parole, please see the RAIO TRIG Afghanistan Country Guide.

**Afghanistan Parole Notices:**

- **Conditional Approval Notice, Referral to Consular Processing:** HAB issues this notice to the Form I-131 petitioner, beneficiary, and representative of record when HAB determines that the beneficiary is eligible for parole and all USCIS-initiated security checks have been completed. The notice requires the beneficiary to complete the DS-160 to initiate Consular processing and to begin completing required vaccinations. For government requests for parole, HAB issues this notice to the referring agency.
- **Parole Notice (Suspension of Processing):** HAB issues this notice to the Form I-131 petitioner, beneficiary, and representative of record after an initial assessment that the beneficiary may be eligible for parole, but the beneficiary is in a location where there is no U.S. embassy or consulate (e.g., Afghanistan or Iran) or where the beneficiary is also the beneficiary of an approved I-130 or I-730 and HAB determined that parole processing should be halted in favor of immigrant visa processing. For government requests for parole, HAB issues this notice to the referring agency. This notice serves several purposes: 1) notification that the beneficiary must report to a U.S. embassy or consulate to continue processing the parole request; 2) where

---

[13] Afghan Parolee Vaccination Status | USCIS

11

applicable, notification that the beneficiary should pursue immigrant visa processing and to notify HAB if this is not feasible.
- **Parole Authorization Memo:** HAB issues this memo to the Consular Section, copying the Consular Affairs parole points of contact, when a parole request has been conditionally approved. This memo serves to notify the Consular Section that USCIS has conditionally approved the parole request and any additional requirements for processing the parole request. If the parole beneficiary may be eligible for resettlement benefits, HAB should include a copy of the resettlement benefits fact sheet when the authorization memo is sent to post.
- **Notice Regarding Conditions for Parole:** HAB issues this notice to the Consular Section with the Authorization Memo so that the Consular Section can provide the notice to the beneficiary at the time of foil issuance. HAB may also issue the notice to the parole beneficiary via email, if email address is available, copying the petitioner and representative of record.
- **Parole Denial Notice:** HAB issues this notice to the Form I-131 petitioner, beneficiary, and representative of record when the request for parole is denied. For government requests for parole, HAB issues the denial notice to the referring agency.