# EXHIBIT H



[American Immigration Council (https://www.americanimmigrationcouncil.org)]

Home (/)

# Agency Failures Make Obtaining Humanitarian Parole Almost Impossible for Afghans

USCIS records show how the agency's response to the high volume of humanitarian parole applications contributed to the massive delays faced by Afghans

Thursday, March 16, 2023

∧

8/19/24, 3:29 PM    Agency Failures Make Obtaining Humanitarian Parole Almost Impossible for Afghans | American Immigration Council

Case 3:23-cv-30029-MGM    Document 80-9    Filed 08/21/24    Page 3 of 19



**The facts on immigration—right in your inbox.** Sign up with the American Immigration Council (https://www.americanimmigrationcouncil.org/subscribe) to receive the latest in immigration law and policy as well as opportunities and resources to educate the public about the value of immigration to American society.

In July 2021, the Biden administration announced that the United States' military mission in Afghanistan would conclude in August of that year. During those final days of U.S. military presence, the Taliban rapidly gained control of Afghanistan, killing civilians in their path and prompting many Afghans to flee their homes for safety. As the U.S. military departed the country, many Afghans who were left behind in danger—as well as their families and friends in the United States—turned to the Department of Homeland Security's (DHS) humanitarian parole process for safe passage. For Afghan nationals who managed to reach U.S. ports of entry during this period, U.S. Customs and Border Protection (CBP) allowed them to enter by granting them parole at ports of entry, known as port parole. Thousands

of others who could not reach the United States at that time were forced to apply for humanitarian parole through the traditional way of submitting an application with U.S. Citizenship and Immigration Services (USCIS).

However, Afghan nationals began to see massive delays in the adjudication of their humanitarian parole applications. Government statistics show that from January 1, 2020 to April 6, 2022, USCIS—the agency in charge of adjudicating humanitarian parole applications—received 44,785 applications where the applicant's country of citizenship was Afghanistan, and only approved 114 of those applications, or less than 0.3%. This bottleneck of applications essentially foreclosed this benefit as a potential option for those Afghans who could not reach the United States, many of whom remained in Afghanistan.

## Humanitarian parole applications filed between January 1, 2020 and April 6, 2022, broken down by country of citizenship and case state (received, conditionally approved, issued requests for evidence, denied).

USCIS is unable to accurately report which cases are initial requests for parole for someone outside the U.S. vs. requests for re-parole for someone inside the U.S. The approval rate for re-parole generally higher than the approval rate for initial parole. For Afghan nationals, "closed" cases includes cases for Afghan beneficiaries in Afghanstan who are determined to have an approvable basis for parole but for who need to get to a third country for continued processing.

Page 1 of 15 >

| Applicant Citizenship | Pending | Conditionally Approved | Denied | Closed | Grand Total |
|---|---|---|---|---|---|
| Afghanistan | 42,169 | 114 | 2,246 | 256 | 44,785 |
| United States** | 1,438 | 17 | 177 | 9 | 1,641 |
| Guatemala | 277 | 888 | 22 | 22 | 1,209 |
| Mexico | 264 | 95 | 188 | 20 | 567 |
| Honduras | 167 | 302 | 57 | 10 | 536 |
| Not entered* | 483 | 4 | 20 | 2 | 509 |
| El Salvador | 222 | 118 | 58 | 8 | 406 |
| Cuba | 111 | 96 | 117 | 6 | 330 |
| Ukraine | 294 | 1 | 10 | 2 | 307 |
| Haiti | 199 | 9 | 73 | 7 | 288 |

*Data field not completed
**Data entered, may be address of applicant and not beneficiary
Table: USCIS FOIA response • Source: USCIS • Get the data • Created with Datawrapper

∧

8/19/24, 3:29 PM                     Agency Failures Make Obtaining Humanitarian Parole Almost Impossible for Afghans | American Immigration Council

Case 3:23-cv-30029-MGM    Document 80-9    Filed 08/21/24    Page 5 of 19

The American Immigration Council, along with the International Refugee Assistance Project, filed requests for records under the Freedom of Information Act (FOIA) to explain the cause of these extensive delays.

Documents gathered thus far as a result of litigating this request show that USCIS was woefully unprepared to process these applications and that the agency implemented a prolonged pause in the adjudication process. Further, documents suggest the agency changed the adjudication process for humanitarian parole in significant ways during this time. Additionally, documents show that the agency scrapped plans to waive the application fees that make this process cost-prohibitive for so many recently arrived Afghan families.

These documents paint a clear picture of why humanitarian parole has become ineffective for thousands of Afghans who and are still looking to reach safety.

## What is the Humanitarian Parole Process?

Requests for humanitarian parole for people living abroad generally are submitted on Form I-131 and adjudicated by USCIS. In this process (https://www.uscis.gov/humanitarian/humanitarianpublicbenefitparoleindividualsoutsideUS), the person who lives abroad seeking entry into the United States is the "Beneficiary." The individual who submits the application is known as the "Petitioner." Because individuals can request humanitarian parole for themselves or on behalf of another, in some cases the beneficiary is also a "Self-Petitioner."

Government agencies also can request parole for a foreign national living abroad without the need to submit Form I-131. According to the 2017 International Operations Officer Training Course (https://refugeerights.org/wp-content/uploads/2020/04/HP-FOIA-min.pdf), this option requires the agency requesting parole to present documents attesting that the beneficiary's presence in the United States is for urgent humanitarian or significant public benefit reasons. The latter includes national security, advancing foreign policy goals, or other benefits to the United States. A government agency requests parole on behalf of the beneficiary directly from USCIS' International Operations Division.

∧

USCIS received both agency requests for humanitarian parole on behalf of Afghan nationals, as well as applications submitted on behalf of Afghan beneficiaries.



## The events that led to the break down

### August 2021 - "Drop everything"

As chaos consumed Kabul in August 2021 during the final days of the U.S. military presence in Afghanistan, USCIS officials scrambled to manage the unfolding crisis. On August 13, agency officials received instructions to exclusively process Afghan parole cases, and the Chief of the Humanitarian Affairs Branch, John W. Bird, instructed staff the next day to:

> ```
> drop everything, and focus on completing all Afghan parole cases.
> ```
> Source Document (https://www.documentcloud.org/documents/23316411-2022-9-30_afghan-hp_prod1-22-cv-05312-foia-us-0001-us-0140#document/p130)

Yet, this was too late. Only hours after sending instructions on how to prioritize Afghan parole cases, the agency had to change its course of action because "folks are leaving sooner than planned" and "regular parole processing will not be available through Kabul."

∧



During this time, the agency developed informational materials for Afghan nationals evacuated from Afghanistan who would be granted parole at U.S. ports of entry. Agency emails suggest that as of August 25, however, USCIS had not developed a plan for Afghan parolees who were not part of the evacuation process.



Emails from August 25 also show how USCIS scrambled to address the number of Afghan humanitarian parole applications, implementing several changes to how it processed these applications.

As the government sought to get people out of Afghanistan on evacuation flights, USCIS originally treated all Afghan humanitarian parole requests as expedited, which meant they should have been processed faster. USCIS discussed plans to quickly submit the name of evacuated individuals on an expedited basis for agency checks so that these checks could be done within 24 hours "due to the urgency of the situation."

∧

**Changes to processing -** (p. 9)

> From: Johnson, Bobbie L
> Sent: Wednesday, August 25, 2021 4:46 PM
> To: Alli, Akinkunmi O (Akin) <        >; Wright, Charles E <        >
> Cc: Grigsby, Kevin M <        > Baxter, Mark P <        >
> Subject: Daily ____ Expedite Requests
> Importance: High
>
> (b)(7)(e)
>
> Akin and Charles,
>
> Following on to the various discussions:
>
> (b)(6)
> - By 10:30 am ET every day, HAB will send to RIO-FDNS the list of Afghan parole ~~cases~~ individuals that need ___ expedites to _____ (i.e. all new cases received over the preceding 24 hours for which HAB has not yet requested ___ expedites.) Can HAB send list of individuals instead of cases to ensure that FDNS doesn't miss anyone and that expedited batches aren't cross-contaminated with non-Afghan individuals. Just echoing Akin's comment, if HAB could submit the list as individuals that require ___ expedites instead of as cases, this will make the submission process to ___ from RIO-FDNS' perspective more efficient.
> (b)(7)(e)
> - HAB will copy you, Alex, me, Charles, Kevin, and Mark on such daily requests. Add Melat and Chad to this list. Also Justen.
> - RIO-FDNS will immediately do their part to submit these expedite requests to ___ by 12:00 pm ET or earlier daily.
> - In each daily submission to ___, RIO-FDNS will specify these are Afghan cases and will ask for a turn-around of 24 hours or less due to the urgency of the situation.
> - As soon as RIO-FDNS receives results, they will update CAMINO and alert HAB and everyone on the original request email chain.
> - We need to all collectively monitor that requests are being submitted, results are being entered, and any ___ results that are pending over 24 hours are flagged.
> - If any ___ check is pending over 24 hours, you will contact ___
>
> Does this sound right and doable? Any other suggestions?
>
> Thanks,
>
> Bobbie

View the entire document with **DocumentCloud**

On August 31, the day the U.S. embassy in Kabul closed, the agency changed course and instructed staff to stop sending daily reports requesting expedited checks.

**Changes to processing of Afghan parole cases.** (p. 17)

> This morning we were informed that there may be some new instructions coming to HAB regarding the processing of Afghan parole cases following the closing of operations on the ground in Kabul. Two significant operational changes are that we will no longer send daily reports requesting expedited ___ review, or send our spreadsheet of new approved cases.
>                         (b)(7)(e)
> Please continue to complete the Afghan cases that you have, as expedite parole cases, until further notice. Supervisors, if you have any procedural, or adjudication-related questions, please send them to me to review. I will be happy to address questions tomorrow on our 10am adjudication meeting.

∧

View the entire document with **DocumentCloud**

## September 2021 – Applications arrive at an "abnormally high rate" but placed on hold.

The next day, officials made the decision that the agency would no longer expedite all Afghan parole requests, stating that the decision to expedite cases initially was about getting people out on flights. Since the flights ended, the agency decided it needed to go back to the "normal" expedited process based on triage rather than nationality.

> ```
> D1 made the decision yesterday evening that we can no longer
> expedite all Afghan parole requests. The decision to expedite
> those cases initially was about getting people out on flights and
> now that the flights have ended, we need to go back to the
> 'normal' expedite process based on triage, not nationality.
> Source Document (https://www.documentcloud.org/documents/23352884-us-0246-us-
> 0376#document/p18/a2179603)
> ```

On September 3, USCIS officials in the Humanitarian Affairs Branch (HAB) requested guidance about analysis for Afghan parole cases, explaining that, "Afghan applications are arriving at an abnormally high rate," with "numerous inquiries requesting expedited adjudication." HAB stated that it "was advised to return to an expedite on a case by case basis, rather than based on Afghan nationality" and to "stand down on [] expedite requests."

Page 25 of 2022-11-30_Afghan HP_Prod.3 (22-cv-05312) US 0246 - US 0376 (https://embed.documentcloud.org/documents/23352884-us-0246-us-0376/#document/p25)

∧

8/19/24, 3:29 PM		Agency Failures Make Obtaining Humanitarian Parole Almost Impossible for Afghans | American Immigration Council

Case 3:23-cv-30023-MGM    Document 80-9    Filed 09/21/24    Page 10 of 19



Page 1 of 1  9/3/21 Bird/HAB Request for Guidance on Afghan Parole Applications

Afghan Parole Case Analysis, Request for Guidance

(b)(5)

(b)(7)(e)
1.
2.
3.
4.

Starting on August 30, HAB was advised to return to an expedite on a case by case basis, rather than based on Afghan nationality, and to stand down on NCTC expedite requests and the production of approval spreadsheets each day.

Currently Afghan applications are arriving at an abnormally high rate, and in addition we are receiving numerous inquiries requesting expedited adjudication. We received 177 cases on Tuesday, and on Thursday, 10 boxes of cases averaging 10-30 cases in each box. It will take some time to enter these cases to ascertain through CAMINO the full caseload that we are handling, but we anecdotally know that most of these new cases involve Afghan beneficiaries.

Some of the factors that are significant issues that affect analysis for regular parole SOP adjudication:

(b)(5)
(b)(7)(e)
1.
2.
3.
4.
5.

22 CV 5312

US 0270

Contributed to **DocumentCloud (https://www.documentcloud.org)** by Raul Pinto (American Immigration Council) • View document (https://embed.documentcloud.org/documents/23352884-us-0246-us-0376/#document/p25) or read text (s3.documentcloud.org/documents/23352884/pages/us-0246-us-0376-p25.txt?ts=1678724784)

Then, on September 7, despite the large volume of applications received, USCIS informed staff to "hold all decisions on Afghan parole cases." In an e-mail to the HAB staff, Chief of HAB, John Bird, was adamant that staff should "NOT" send final approval or denials to the U.S. Department of State. USCIS reiterated that "[t]his hold only applies to Afghan cases."



Additionally, USCIS acknowledged it would have to use a different process for vetting applicants. In a September 7 email, Joanna Ruppel, Chief of the International and Refugee Affairs Division, acknowledged that the agency was reviewing how to vet the applicants since they could no longer use the vetting process that applied to evacuees, and indicated that there was no deadline in place by which this determination had to be made.



∧

These emails demonstrate that the agency showed little urgency in processing humanitarian parole applications for those individuals who remained in Afghanistan, even as agency officials acknowledged that USCIS was receiving humanitarian parole applications at an "abnormally high rate."

During September 2021, records show that USCIS officials considered exempting fees associated with filing Form I-131 for Afghan nationals.



However, a September 13 email suggests that USCIS ultimately decided not to include the form in its fee waiver policy.



And a review of USCIS' final memo regarding fee exemptions for Afghan parolees (https://www.documentcloud.org/documents/23316412-2022-10-31_afghan-hp_prod1-22-cv-05312-foia-us-0141-us-0245#document/p5) does not include a mention of fee waivers for Form I-131.

Further, an email exchange between agency officials on September 17 indicates that the U.S. government added a "new" medical screening step for the process of parole.

∧

8/19/24, 3:29 PM  Agency Failures Make Obtaining Humanitarian Parole Almost Impossible for Afghans | American Immigration Council

Case 3:23-cv-30029-MGM    Document 80-9    Filed 09/21/24    Page 13 of 19



By September 27, the agency appeared to be preparing to deny humanitarian parole applications filed on behalf of Afghan nationals as a matter of course. Agency staff drafted a template denial notice for cases where:

> there's no credible third-party evidence and urgent reason for parole.
> Source Document (https://www.documentcloud.org/documents/23352884-us-0246-us-0376#document/p44/a2179666)

On September 29, USCIS planned to update the agency's website to reflect some of these changes.

∧

**Indication of changes** (p. 87)

> Hello all- just making sure that you saw this new information on our USCIS website. Please refer people to this website if they are asking you for information. Please also note that we are close on a finalized automated response to inquiries through our public email box. We hope to provide more information on these Afghan cases soon-

Unclear what new information was included in the link.

View the entire document with **DocumentCloud**

## October 2021 – Applicants struggle through the process.

Agency officials acknowledged in an email from October 5 that applicants were struggling with Form I-131. Some of the issues observed were mistakes related to where the applicants signed the form, the forms were signed electronically, or missing addresses. These issues lead to rejections. The email also highlighted issues Afghans encountered in completing fee waiver requests for these applications, which led to the rejection of the fee waiver requests.



**Issues with the applications** (p. 2)

> From: Zemlan, Elizabeth C
> Sent: Tuesday, October 05, 2021 2:59 PM
> To: Lin, Melissa
> Subject: Afghan HP fee waivers
>
> Hi Melissa,
>
> The most prominent issues OIDP is seeing with the Afghan HP cases are:
>
> - Form I-131 is not signed, or is signed in the wrong place (i.e. Preparer section)
> - Form I-131 contains an electronic signature, making it a Defective application
> - Missing Address in Part 1
>
> The Afghan parole page already has this info: "It is essential that the beneficiary's best contact information (email address, phone number, and physical address) is included in the parole application, either on the Form I-131's applicable section or on a supplemental document, and that USCIS is notified of any changes to that contact information. Once the beneficiary is able to make private arrangements to travel to a third country where there is a U.S. embassy or consulate, the beneficiary must notify USCIS immediately at HumanitarianParole@uscis.dhs.gov."
>
> In addition, we are rejecting a number of Fee Waiver Requests due to:
>
> - Form I-912 is signed by the wrong party (Beneficiary vs. Petitioner)
> - Form I-912 is not signed
> - Lack of supporting documentation to substantiate a Financial Hardship claim (FWR)
> - Supporting documentation being submitted for Beneficiary when the Petitioner is the one requesting the Fee Waiver
> - Missing Fee/FWR

View the entire document with **DocumentCloud**

8/19/24, 3:29 PM  Agency Failures Make Obtaining Humanitarian Parole Almost Impossible for Afghans | American Immigration Council

Case 3:23-cv-30029-MGM    Document 80-9    Filed 08/21/24    Page 15 of 19

At the end of October, USCIS finally was ready to lift the nearly two-months hold on humanitarian parole adjudications and move forward "to begin to deny cases for those who are ineligible." At this time, the agency also suggested prioritizing processing applications for those individuals outside Afghanistan. Accordingly, the agency would need to update their standard operating procedures (SOP) and its website.



### February 2022 – Changes are made.

By February 2022, it is evident from records obtained that USCIS changed certain aspects of its protocols to review humanitarian parole applications. Emails show that USCIS personnel convened a meeting to relay direction from the secretary to develop ways to "better address protection needs of vulnerable Afghans." The email informing agency staff

about this meeting contains an attachment with a Lesson Plan on the humanitarian parole element of "targeted harm." The name of that document shows the lesson plan was revised in February 2022. The email goes on to state that once the changes have been finalized, the agency would revise the Afghan specific materials, the standard operating procedures, and the agency's public facing materials.

**Potential changes to protection processes** (p. 30)

> If you could please review the attached document and provide initial thoughts early this week. S1 has scheduled a follow-up meeting for Thursday morning. Sarah and team, once we lock down these changes for protection cases in general, will need to revise the Afghan specific materials accordingly. And of course the SOP and our public-facing materials. We don't have to have the exact language by Thursday morning, but should have a paper that outlines what we are recommending as a path forward.

View the entire document with **DocumentCloud**



∧

# The Results

This shifting landscape led to dismal statistics about the number of applications for humanitarian parole that USCIS approved for Afghan nationals. A March 17, 2022 report to the Congressional Research Service states that in Fiscal Year 2021, USCIS adjudicated 79 parole applications including both I-131 applications and government requests. The agency approved 67 of those applications and denied 5. The report also shows that during Fiscal Year 2022 up to March 4, 2022, USCIS had adjudicated 2,633, denying 2,251 of those applications. During this time period, the agency conditionally approved 150 of the applications submitted, or approximately 5%. Only 35 of those were of I-131 applications, while 115 were government requests and thousands have not yet been adjudicated.



8/19/24, 3:29 PM Agency Failures Make Obtaining Humanitarian Parole Almost Impossible for Afghans | American Immigration Council

Case 3:23-cv-30029-MGM    Document 80-9    Filed 08/21/24    Page 18 of 19

Government statistics covering a slightly different time period tell the same story. From January 1, 2020, to April 6, 2022, USCIS received 44,785 applications where the applicant's country of citizenship was Afghanistan, and only approved 114 of those applications.

Notably, government figures show that between March 1, 2021, and March 22, 2022, USCIS received **over $19 million** from humanitarian parole applications filed on behalf of Afghan nationals.

## Filing fees submitted for humanitarian parole applications

Aggregate data or statistics related to total amount of filing fees submitted to USCIS for humanitarian parole applications since March 1, 2021 to March 22, 2022, broken down by country of citizenship of intended beneficiaries.

Page 1 of 13 >

| Intended Beneficiary Country of Citizenship | Number of Accepted Applications | Total Fee Accepted |
|---|---:|---:|
| AFGHANISTAN | 33,209 | $19,095,175 |
| EL SALVADOR | 348 | $200,100 |
| MEXICO | 322 | $185,150 |
| HAITI | 298 | $171,350 |
| USA | 195 | $112,125 |
| UNKNOWN | 191 | $109,825 |
| CUBA | 163 | $93,725 |
| UKRAINE | 161 | $92,575 |
| HONDURAS | 110 | $63,250 |
| PHILIPPINES | 93 | $53,475 |

*\* Note that C "Benificiary Country of Citizenship" is not a required field. Therefore, it is possible for the applicant to list the wrong country, in the case of listing "USA" for an HP application or not list a country at all, which willd be marked as "Unknown". There are also instances where the applicant and beneficiary information are swapped on the application.*

These figures show that it was extremely difficult for Afghan applicants who directly requested humanitarian parole through the I-131 process to have their cases adjudicated even though the agency collected extensive fees from these applications. Applicants' best chances for being approved for humanitarian parole were when a U.S. agency requested the parole, an avenue that was available to only a handful of Afghans.

∧

8/19/24, 3:29 PM                     Agency Failures Make Obtaining Humanitarian Parole Almost Impossible for Afghans | American Immigration Council

Case 3:23-cv-30029-MGM    Document 80-9    Filed 08/21/24    Page 19 of 19

The developments in the humanitarian parole process revealed through government records highlight the insurmountable odds faced by Afghan nationals trying to reach the United States. It is evident from the available documents that USCIS was not prepared to adjudicate the high volume of humanitarian parole applications from Afghans who did not make it on those early flights to the United States. The shifts in adjudication protocols with no notice to the public, including USCIS' de-prioritization of processing applications from individuals who remained in Afghanistan and the temporary hold placed on adjudications in light of the high volume of applications received, undoubtedly contributed to the delays in adjudications. These circumstances, and not just the volume of applications, are the reason why humanitarian parole has failed to provide a feasible avenue for relief to vulnerable Afghans who have not been able to reach the United States.

202-507-7500
Registered 501(c)(3). EIN: 52-1549711
Copyright American Immigration Council. All rights reserved.
Photo Credits (/content/photo-credits) | Sitemap (/sitemap) | Terms of Use (/terms-of-use)

∧