**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| LESLEY LAMARCHE, *et al.*, <br><br>     Plaintiffs, <br><br> v. <br><br> KRISTI NOEM, *et al.*, <br><br>     Defendants. | Case No: 3:23-CV-30029-MGM <br><br> Hon. Mark G. Mastroianni |

## <u>DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6)</u>

YAAKOV M. ROTH
Acting Assistant Attorney General

WILLIAM C. PEACHEY
Director
Office of Immigration Litigation

YAMILETH G. DAVILA
Assistant Director

DAVID J. BYERLEY
ERHAN BEDESTANI
Trial Attorneys

*/s/ Jaime A. Scott*
JAIME A. SCOTT (DC Bar # 90027182)
Trial Attorney
U.S. Department of Justice
Office of Immigration Litigation
P.O. Box 868, Washington D.C. 20044
Tel: 202-305-3620
Email: Jaime.A.Scott@usdoj.gov

*Attorneys for Defendants*

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

LEGAL BACKGROUND .................................................................................................... 2

STATEMENT OF FACTS AND PROCEDURAL HISTORY............................................. 4

ARGUMENT ....................................................................................................................... 6

    I.    The Court Should Dismiss The Complaint Under Rule 12(b)(1). ..................................... 6

        A.    The Court lacks subject matter jurisdiction over parole adjudications because 8 U.S.C. § 1252(a)(2)(B)(ii) commits parole adjudications to agency discretion.................................. 6

        B.    8 U.S.C. § 1182(d)(5) provides that grants of humanitarian parole are limited to a case-by-case basis but grants the Secretary discretion over the process. ...................................... 10

    II.    The Court should Dismiss the Complaint Under Rule 12(b)(6). ...................................... 12

        A.    Conflation and distortion of the record is insufficient to state a claim......................... 14

        B.    Using agency discretion when deciding parole processes and determinations under 8 U.S.C. § 1182(d)(5)(A) is not arbitrary and capricious.......................................................... 15

    III.    Bad Faith Is Not A Valid Cause of Action. ..................................................................... 20

CONCLUSION................................................................................................................... 20

## TABLE OF AUTHORITIES

Page(s)

Cases

*Aguilar v. U.S. ICE of,*
   *DHS*, 510 F.3d 1 (1st Cir. 2007) ...................................................... 20

*Amanullah v. Nelson,*
   811 F.2d 1 (1st Cir. 1987) ........................................................ 6, 20

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ...................................................................... 12

*Atieh v. Riordan,*
   727 F.3d 73 (1st Cir. 2013) ....................................................... 13, 16

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ...................................................................... 12

*Bernardo ex rel. M & K Eng'g, Inc. v. Johnson,*
   814 F.3d 481 (1st Cir. 2016) ............................................................ 9

*Bertrand v. Sava,*
   684 F.2d 204 (2d. Cir. 1982) ......................................................... 14

*Biden v. Texas,*
   597 U.S. 785 (2022) ...................................................................... 10

*Bouarfa v. Mayorkas,*
   604 U.S. 6 (2024) ................................................................. 8, 9, 12

*Calvary Albuquerque Inc. v. Rubio,*
   No. 24-2066, --- F.4th ---, 2025 WL 1299417 (10th Cir. May 6, 2025) ................... 6

*Cheejati v. Blinken,*
   106 F.4th 388 (5th Cir. 2024) .......................................................... 7

*Davidson v. Mayorkas,*
   599 F. Supp. 3d 767 (W.D. Wis. 2022) ................................................. 11

*Dep't of Homeland Sec. v. Regents of the Univ. of California,*
   591 U.S. 1 (2020) ........................................................................ 16

*Dep't of State v. Muñoz,*
   602 U.S. 899 (2024) ....................................................................... 6

*Doe v. Noem,*
   No. 1:25-cv-10495-IT, 2025 WL 1099602 (D. Mass. Apr. 14, 2025) ....................... 7

*Encino Motorcars, LLC v. Navarro,*
   579 U.S. 211 (2016) ...................................................................... 17

*Eulitt v. Me. Dep't of Educ.,*
   386 F.3d 344 (1st Cir. 2004) ............................................................ 6

*FCC v. Fox Television Stations, Inc.,*
   556 U.S. 502 (2009) ................................................................. 16, 17

*FDA v. Wages and White Lion Invs., L.L.C.,*
   145 S. Ct. 898 (2025) ................................................................... 14

*Garcia-Mir v. Meese,*
   788 F.2d 1446 (11th Cir. 1986) ........................................................ 14

*Geda v. Dir. USCIS*,
   126 F.4th 835 (3d Cir. 2025) ........................................................................... 7, 8

*Haydary v. Garland*, No. 4:24 CV 836 JMB,
   2024 WL 4880406 (E.D. Mo. Nov. 25, 2024) ...................................................... 8

*Heckler v. Chaney*,
   470 U.S. 821 (1985) ........................................................................................... 11

*Jeanty v. Bulger*,
   204 F. Supp. 2d 1366 (S.D. Fla. 2002) ......................................................... 12, 15

*Kanapuram v. Dir., USCIS*,
   131 F.4th 1302 (11th Cir. 2025) .......................................................................... 7

*Kerry v. Din*,
   576 U.S. 86 (2015) ............................................................................................. 10

*Kleindienst v. Mandel*,
   408 U.S. 753 (1972) ........................................................................................... 10

*Kolster v. INS*,
   101 F.3d 785 (1st Cir. 1996) .............................................................................. 16

*Lewis v. United States*,
   483 F. Supp. 3d 382 (M.D. La. 2018) ............................................................... 20

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   572 U.S. 118 (2014) ............................................................................................. 4

*Lion Raisins, Inc. v. USDA*,
   636 F. Supp. 2d 1081 (E.D. Cal. 2009) ............................................................. 20

*Lovo v. Miller*,
   107 F.4th 199 (4th Cir. 2024) ............................................................................ 10

*Lujan v. Nat'l Wildlife Fed'n*,
   497 U.S. 871 (1990) ........................................................................................... 12

*Moise v. Bulger*,
   321 F.3d 1336 (11th Cir. 2003) ..................................................................... 12, 15

*Narenji v. Civiletti*,
   617 F.2d 745 (D.C. Cir. 1979) ........................................................................... 15

*Norton v. S. Utah Wilderness All.*,
   542 U.S. 55 (2004) ............................................................................................. 11

*Patel v. Garland*,
   596 U.S. 328 (2022) .......................................................................................... 7, 9

*Roe v. Mayorkas*,
   No. 22-cv-10808-ADB, 2024 U.S. Dist. LEXIS 208000 (D. Mass. Oct. 2, 2024) ................... 14

*Saddozai v. Frank*,
   No. 86-1652-Y, 1986 U.S. Dist. LEXIS 23691 (D. Mass. June 25, 1986) ............................. 15

*Thigulla v. Jaddou*,
   94 F.4th 770 (8th Cir. 2024) ............................................................................. 7, 8

*Town of Castle Rock v. Gonzales*,
   545 U.S. 748 (2005) ........................................................................................... 16

*Trump v. Hawaii*,
   585 U.S. 667 (2018) ............................................................................................. 6

*United States ex rel. Knauff v. Shaughnessy*,
   338 U.S. 537 (1950) ........................................................................................... 10

*V.U.C. v. USCIS*,
  557 F. Supp. 3d 218 (D. Mass. 2021) ................................................................... 11
*Ziae v. Garland*, No. 3:24-cv-01122-S-B,
  T, 2024 WL 5171622 (N.D. Tex. Nov. 8, 2024) ...................................................... 8

Statutes

5 U.S.C. § 701(a) .................................................................................................... 12
5 U.S.C. § 702 ........................................................................................................ 10
5 U.S.C. § 706(2)(A) .............................................................................................. 16
8 U.S.C. § 1182(d)(5) ......................................................................................... 2, 10
8 U.S.C. § 1182(d)(5)(A) ................................................................................. passim
8 U.S.C. § 1182(d)(5)(C) .......................................................................................... 4
8 U.S.C. § 1255 ........................................................................................................ 7
Pub. L. 119-1, 139 Stat. 3 ........................................................................................ 4

Regulations

8 C.F.R. § 212.5 ............................................................................................... 2, 3, 18

Other Authorities

*Humanitarian or Significant Public Benefit Parole for Noncitizens Outside the United States*,
  U.S. CITIZENSHIP AND IMMIGR. SERVS.,
  https://www.uscis.gov/humanitarian/humanitarian_parole (last updated Jan. 24, 2025). .... 3, 18
*Humanitarian Parole*, U.S. CUSTOMS AND BORDER PROTECTION (Aug. 5, 2024),
  https://www.help.cbp.gov/s/article/Article1321?language=en_US ......................................... 3
*Information for Afghan Nationals on Requests to USCIS for Humanitarian Parole*, U.S.
  CITIZENSHIP AND IMMIGR. SERVS., https://www.uscis.gov/humanitarian/humanitarian-or-
  significant-public-benefit-parole-for-noncitizens-outside-the-united-states/information (last
  updated Apr. 23, 2025). ............................................................................................ 3, 4, 18

## INTRODUCTION

This litigation quintessentially alleges that USCIS was wrong to recognize that the military evacuation from Afghanistan—which lasted between August 15-30, 2021 (hereinafter, "the Evacuation")—was over, and that it was a violation of the Administrative Procedure Act ("APA") to adjust to the new realities in Afghanistan post-September 2021. During the Evacuation, USCIS surged operational resources to approve pending humanitarian parole applications for Afghan beneficiaries as part of USCIS's contribution to address the crisis. Now, long after the Evacuation, Plaintiffs claim that USCIS's heroics were a binding "policy" that requires USCIS to operate under Evacuation conditions indefinitely. Therefore, Plaintiffs argue, the Court should order USCIS to *pretend* the Evacuation never concluded, and restore resources expended during that two-week period for *all* Afghans in Afghanistan or Pakistan indefinitely, and without regard to many significant changes of circumstance. Yet, as Plaintiffs' counsel eloquently explained, the Evacuation "was several years ago" and "what may make sense in a crisis situation doesn't necessarily make sense over the long term." Nov. 20, 2024 Tr. at 12:22-13:4. Defendants agree.

Plaintiffs raise APA claims challenging an alleged change of standards used by USCIS in the adjudication of 8 U.S.C. § 1182(d)(5)(A) parole applications after August 31, 2021. First Am. Compl. ("FAC") ¶¶ 72–86, ECF No. 80-1. Plaintiffs ask the Court to set aside USCIS's alleged "heightened adjudication standard for Afghan humanitarian parole" and adjudicate Plaintiffs' parole applications in accordance with USCIS standards in effect on August 31, 2021. *Id.*, Prayer for Relief. Plaintiffs' FAC, which demands USCIS operate within a fiction, should be dismissed because the court does not have jurisdiction to review 8 U.S.C. § 1182(d)(5)(A) parole determinations, and even if the Court did have jurisdiction, Plaintiffs' fail to state a claim that the alleged "new standards" are not in accordance with law or arbitrary and capricious. Additionally,

Plaintiffs' Bad Faith claim is not a freestanding cause of action. Defendants have received an unprecedented number of humanitarian parole applications since the Evacuation and have poured resources into adjudicating parole requests as quickly as possible. However, the crisis in Afghanistan and heightened interest in parole across all nationalities do not give Plaintiffs a cause of action. As such, the case should be dismissed pursuant to Rules 12(b)(1) and 12(b)(6).

## <u>LEGAL BACKGROUND</u>

Plaintiffs challenge the adjudication standard and policies related to "humanitarian parole," which is a colloquial term sometimes used for the parole authority vested with the Secretary of Homeland Security under 8 U.S.C. § 1182(d)(5)(A). This section provides, "The Secretary of Homeland Security may… in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission…." *Id.*; *see also* 8 C.F.R. § 212.5 (primary implementing regulation). Parole allows a beneficiary to come to the United States temporarily, but confers no immigration status. 8 U.S.C. § 1182(d)(5)(A). No statute or regulation defines § 1182(d)(5)(A)'s references to "urgent," "humanitarian reasons," or "significant public benefit," nor is any method or manner of consideration of requests for parole prescribed, other than the limitation that parole may be granted only on a "case-by-case" basis. *See id*. Instead, DHS has extensive discretion in determining whether and when any parole request warrants a favorable exercise of discretion, and over processes utilized in reaching those conclusions.

In the absence of any statute or regulation requiring acceptance or adjudication of applications for § 1182(d)(5)(A) parole for noncitizens abroad, USCIS allows anyone worldwide to apply for parole for themselves or on behalf of another person outside the United States by filing

a Form I-131, Application for Travel Document ("Form I-131").[1] The USCIS officers adjudicate

parole requests like those submitted by Plaintiffs on a "case-by-case" basis to determine if parole

is appropriate in the totality of the circumstances. *See supra* n.1. As part of that process, officers

may issue an applicant a Request for Evidence (RFE) or a Notice of Intent to Deny (NOID). *Id.*

USCIS provides notice of the decision to the parole requestor, and if conditionally approved, to a

U.S. embassy or consulate typically closest to the beneficiary's residence. *Id.* Conditionally

approved beneficiaries must then complete a Form DS-160, Application for a Nonimmigrant Visa,

and appear for an appointment with a Department of State consular section to verify their identity

and collect biometrics for additional security screening. *Id.* If the beneficiary remains eligible for

parole after these steps, the U.S. embassy or consulate will issue travel documents to the

beneficiaries on USCIS' behalf. *Id.* The travel document does not guarantee parole, but permits

beneficiaries to travel to the United States and serves as evidence that USCIS has authorized

parole. *Id.*; C.F.R. § 212.5(f). Once an individual with a travel document arrives at a U.S. port of

entry, U.S. Customs and Border Protection ("CBP") officers inspect the beneficiary and make a

discretionary determination whether to grant parole.[2]

In August 2021, U.S. Embassy Kabul suspended operations, making it impossible for

USCIS to fully process parole applications for individuals located in Afghanistan.[3] Therefore,

Afghan applicants currently located in Afghanistan or other locations without access to consular

services (*e.g.*, Iran) who initially appear eligible for parole will receive a Notice of Continued

---

[1] *Humanitarian or Significant Public Benefit Parole for Noncitizens Outside the United States*, U.S. CITIZENSHIP AND IMMIGR. SERVS., https://www.uscis.gov/humanitarian/humanitarian_parole (last updated Jan. 24, 2025).

[2] *Humanitarian Parole*, U.S. Customs and Border Protection (Aug. 5, 2024), https://www.help.cbp.gov/s/article/Article1321?language=en_US; *see also* 8 C.F.R. § 212.5.

[3] *Information for Afghan Nationals on Requests to USCIS for Humanitarian Parole*, U.S. CITIZENSHIP AND IMMIGR. SERVS., https://www.uscis.gov/humanitarian/humanitarian-or-significant-public-benefit-parole-for-noncitizens-outside-the-united-states/information-for-afghan-nationals-on-requests-to-uscis-for-parole (last updated Apr. 23, 2025).

Parole Processing explaining that parole applicants must arrange their own travel to a country with a U.S. embassy or consulate to continue the parole application process. *See supra* n.3. Applicants who do not appear initially eligible for parole receive a denial notice or a request for additional evidence. There are currently an extremely high number of parole requests causing adjudications to take longer than pre-Fall 2021 timeframes. *Id.*

The parole statute was recently amended by the January 29, 2025, Laken Riley Act. Pub. L. 119-1, 139 Stat. 3. The Laken Riley Act was unambiguously enacted with the intent of ensuring strict compliance with the requirements of the parole statute.[4] The Laken Riley Act extended exclusive standing to "[t]he attorney general of a State, or other authorized State officer" to enforce the "limitation under subparagraph (A) that parole be granted on a case-by-case basis and solely for urgent humanitarian reasons or a significant public benefit[.]" 8 U.S.C. § 1182(d)(5)(C). In § 1182(d)(5)(C), Congress designated states as the ones who have standing to enforce those limitations. Plaintiffs are not "attorney general[s] of a State or other authorized State officer[s]" who have exclusive statutory standing, and the Court "cannot apply its independent policy judgment to recognize a cause of action that Congress has denied[.]" *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 (2014).

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

On March 10, 2023, Plaintiffs filed a Complaint alleging that USCIS "unreasonably delayed and/or unlawfully withheld the adjudication of urgent applications filed by or on behalf of Plaintiffs who have pending applications, in violation of the APA." Compl., Count I ¶ 4, ECF

---

[4] 171 Cong Rec H 277, 281 (Jan. 22, 2025) (statement of Rep. Van Drew); 171 Cong Rec S 69, 72 (Jan. 9, 2025) (statement of Sen. Britt) (explaining a central purpose of the bill was to "ensure that States have standing to bring civil action against Federal officials who refuse… statutory limitations on grants of immigration parole"); *see also* 170 Cong Rec S. 3868, 3869 (May 23, 2024) (statement of Sen. Britt) (explaining "grants of parole have skyrocketed [from an average of 6,000 per year],… over 1.3 million people have been paroled in the past year" and that the Laken Riley Act was introduced to "stop this abuse of parole").

No. 1. Defendants moved to dismiss the Complaint. ECF No. 19, 27. On September 6, 2023, the Court granted that motion in part and denied it in part.[5] *See* ECF No. 31. On November 2, 2023, the Government produced thirteen individual administrative records and a programmatic record, which was filed with the Court on January 3, 2025. *See* ECF No. 36, 45. On January 2, 2024, Plaintiffs filed a motion for class certification and a motion for relief on the administrative record. *See* ECF Nos. 41, 43. On May 22, 2024, the Court denied Plaintiffs' motion for class certification, finding Plaintiffs failed the requirements for commonality, typicality, predominance, and superiority. ECF No. 74 at 14-18. The Court then directed Plaintiffs to file a motion to amend their complaint. ECF 74 at 18.

On August 21, 2024, Plaintiffs filed the FAC, ECF No. 80-1, 80-2, alleging broadly that Defendants violated the APA with regards to the processing of humanitarian parole applications filed on behalf of Afghan beneficiaries located in Afghanistan or Pakistan. Plaintiffs' FAC, styled as a class complaint, alleges that Defendants "effectively shut down the favorable adjudication of Afghan humanitarian parole applications filed on behalf of Afghans located in Afghanistan and Pakistan." FAC ¶ 80, ECF No. 80-1. Plaintiffs claim Defendants acted not in accordance with law (Count I) and their actions were arbitrary and capricious (Count II), *id.* ¶¶ 72–83, and ask the Court to order USCIS "to adjudicate each class member's parole application in accordance with the standards in effect prior to September 2021." *Id.*, Prayer for Relief ¶ 6. Plaintiffs also argue Defendants have acted in "bad faith" (Count IV). *Id.* ¶¶ 84–91.[6] On March 26, 2025, the Court granted Plaintiffs' motion to amend the complaint, which added new plaintiffs and broadened litigation to encompass Defendants' general handling of parole applications for Afghans in Afghanistan or Pakistan. Plaintiffs have expressly clarified that the FAC "is limited to plaintiffs

---

[5] The Secretary of State was dismissed as a Defendant in this case on September 6, 2023. ECF No. 31.
[6] The FAC also includes an argument for a declaratory judgment (Count III) which Plaintiffs agreed to dismiss.

whose applications are pending adjudication, determination, and/or final agency action by USCIS." ECF No. 92 at 3; *see also* ECF No. 101 at 13:19-21.[7]

## ARGUMENT

I. **The Court Should Dismiss The Complaint Under Rule 12(b)(1).**

A. **The Court lacks subject matter jurisdiction over parole adjudications because 8 U.S.C. § 1252(a)(2)(B)(ii) commits parole adjudications to agency discretion.**

Judicial review of "any decision or action" regarding parole under 8 U.S.C. § 1182(d)(5)(A) is precluded under 8 U.S.C. § 1252(a)(2)(B)(ii). "For more than a century," the Supreme Court "has recognized that the admission and exclusion of foreign nationals is a 'fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control.'" *Trump v. Hawaii*, 585 U.S. 667, 702 (2018) (quoting *Fiallo v. Bell*, 430 U. S. 787, 792 (1977)). "Congress may delegate to executive officials the discretionary authority to admit noncitizens 'immune from judicial inquiry or interference.'" *Dep't of State v. Muñoz*, 602 U.S. 899, 907 (2024) (quoting *Harisiades v. Shaughnessy*, 342 U. S. 580, 588-591 (1952)). Thus, Plaintiff's attempt to seek judicial relief fails.

The First Circuit has emphasized the breadth of the Executive's discretion in making parole decisions, describing the authority in § 1182(d)(5) as "close to plenary[,]" and review is therefore circumscribed. *Amanullah v. Nelson*, 811 F.2d 1, 6 (1st Cir. 1987);[8] *cf. Calvary Albuquerque Inc. v. Rubio*, No. 24-2066, --- F.4th ---, 2025 WL 1299417, at *7 (10th Cir. May 6, 2025) ("The decision to grant parole rests almost entirely in the hands of the [Secretary], and there are no discrete factual predicates specified by statute for the parole decision." (internal marks and

---

[7] Plaintiffs Lesley LaMarche, Latifa Rahimi, Sona Rahimi, Fazal Ahmad Fazli, Engeel Fazli, Mohammad Riaz Fasli, Mohammad Soman Fazli, Mohammad Subhan Fazli, Nabia Fazli, Farida Tahiry, Nasrullah Taheri, Aqila Sharafyar, Eqlima Tahiry, Najma Tahiry, Mohammad R. Tahiry, and Asila Taheri received denials and agreed to voluntarily dismiss.

[8] *Amanullah* remains binding on this court. *Eulitt v. Me. Dep't of Educ.*, 386 F.3d 344, 349 (1st Cir. 2004).

alterations omitted)). Although this Court once agreed with the *Roe* court[9] that 8 U.S.C. § 1252(a)(2)(B)(ii) did not divest this court of subject matter jurisdiction, ECF No. 31 at 2, case law has continued to develop since that ruling that favors revisitation of the jurisdictional bars in this case.[10] Notably, *Patel v. Garland*, 596 U.S. 328 (2022) has led to a slew of circuit-level decisions that make clear that a statutory grant of discretion, coupled with 8 U.S.C. § 1252(a)(2)(B)(ii) which bars review over "any [] decision or action" where "the authority for which is specified under this subchapter to be in the discretion of… the Secretary of Homeland Security," overcomes the presumption in favor of judicial review.

The Third, Fifth, Eighth, and Eleventh Circuits held that § 1252(a)(2)(B)(ii) barred review of direct and indirect challenges to an "Adjudication Hold Policy", which required inaction on certain green card applications under 8 U.S.C. § 1255, "because [the statute] provides the Secretary discretion over not only the final decision but the entire process for reaching that decision." *Geda v. Dir. USCIS*, 126 F.4th 835, 843 (3d Cir. 2025); *see also Kanapuram v. Dir., USCIS*, 131 F.4th 1302, 1307–08 (11th Cir. 2025); *Thigulla v. Jaddou*, 94 F.4th 770, 776 (8th Cir. 2024); *Cheejati v. Blinken*, 106 F.4th 388, 394 (5th Cir. 2024). Necessarily, none read "individual" into § 1252(a)(2)(B)(ii), ruling § 1252(a)(2)(B)(ii) precluded review of procedural or policy decisions broadly where § 1255(a) conferred "broad discretionary authority to control the process through which it would use its discretion[.]" *Geda*, 126 F.4th at 847. Further, as stated by the Supreme Court, "§ 1252(a)(2)(B)(ii) bars judicial review of decisions 'made discretionary by legislation'

---

[9] *Roe v. Mayorkas*, No. 1:22-cv-10808 (D. Mass.) is fully briefed for summary judgment, and a summary judgment hearing was held on May 8, 2025.
[10] Recently, another court in this district issued *Doe v. Noem*, No. 1:25-cv-10495-IT, 2025 WL 1099602 (D. Mass. Apr. 14, 2025), which concluded § 1252(a)(2)(B)(ii) did not deprive the court of jurisdiction to review a final rule notice "categorically truncat[ing] [] grants of parole *en masse* and without individual review" because it concluded "categorical truncation of [] previously awarded period of parole violates Section 1182(d)(5)(A)." *Id.* at *11. Although the government disagrees with *Doe*, it is distinguishable from this case, first because this case fails to allege any discrete decision or action and involves review of each application on its merits. Second, *Doe* was explicit that it was not dealing with claims of those outside the United States. *Id*. at *19.

and that complaints about an agency practice or policy for exercising statutory discretion would not overcome § 1252(a)(2)(B)(ii)." *Bouarfa v. Mayorkas*, 604 U.S. 6, 17 (2024); *see Thigulla*, 94 F.4th at 776 ("If the statute specifies that the decision is wholly discretionary, regulations or agency practice will not make the decision reviewable."). The legal analysis behind *Geda*, *Thigulla*, *Cheejati*, and *Kanapuram* apply even more so here, because § 1182(d)(5)(A)—unlike § 1255— requires no application process, and leaves the very existence of any process fully to the agency.

District Courts have followed the logic of *Geda*, *Thigulla*, *Cheejati*, and *Kanapuram* and have recognized that 8 U.S.C. § 1252(a)(2)(B)(ii) applies not only to an approval or denial of parole, but to the entire pace of adjudications of parole. *See Haydary v. Garland*, No. 4:24 CV 836 JMB, 2024 WL 4880406 at *5 (E.D. Mo. Nov. 25, 2024) (citing *Thigulla* as controlling because "parole decisions are subject to a variety of factors considered by the USCIS – these decisions and actions (or inactions) are similar to the Adjudication Hold Policy" of which the Court barred judicial review); *Ziae v. Garland*, No. 3:24-cv-01122-S-BT, 2024 WL 5171622, at *3 (N.D. Tex. Nov. 8, 2024) (the "broad language granting USCIS discretionary authority over Form I-131 adjudications is substantially similar" to § 1255 which the Fifth Circuit held "strips federal courts of jurisdiction to review any discretionary decision or action rendered by the Attorney General'— including 'not only the ultimate decision to adjust an applicant's immigration status but also…the pace at which that process is undertaken.'"), *R&R adopted*, 2024 WL 5173318 (N.D. Tex. Dec. 19, 2024). In *Geda*, the Third Circuit was clear that "the discrete acts undertaken…and the timing of those acts are determined by the Attorney General in his discretion, and that discretionary action cannot be reviewed by federal courts." 126 F.4th at 845. Although Plaintiffs do not challenge any discrete decision with any particularity, USCIS's decisions to, e.g., expedite certain cases (USCIS-0312); prioritize certain categories of individuals over others (USCIS-0413 (Afghans outside of

Afghanistan), USCIS-0904 (Afghans in Tajikistan)); increase RFE issuance despite lengthening processing times (USCIS-0723); issue continued processing notices to those inside Afghanistan rather than denying those cases for lack of an embassy (USCIS-0598-99); institute a fee-exempt reopening opportunity for denied Afghan applicants despite the diversion of resources that would cause (USCIS-0934), require medical screenings before issuance of boarding foils (USCIS-1261), and the like are exactly the sort of decisions which *Geda*, *Thigulla*, *Cheejati*, and *Kanapuram* held would be unreviewable, as *Haydary* and *Ziae* explained.

Defendants' position also finds support in *Bernardo ex rel. M & K Eng'g, Inc. v. Johnson*, 814 F.3d 481 (1st Cir. 2016), which joins most other circuits in finding that DHS's authority to revoke approved visa petitions under § 1155 conferred unreviewable discretion on the Secretary based on that statute's use of terms "may," "at any time," and "for what he deems to be good and sufficient cause." *Id.* at 485-87. The Supreme Court has "repeatedly observed" that "the word 'may' *clearly* connotes discretion," *Bouarfa*, 604 U.S. at 13 (citations omitted), as well as the principle that "'any' means that the provision applies to judgments 'of whatever kind[.]'" *Patel*, 596 U.S. at 338. So too here, Section 1182(d)(5)(A) states that the Secretary "may . . . in h[er] discretion parole" aliens into the United States "under such conditions as he may prescribe[,]" and § 1252(a)(2)(B)(ii) bars review of "any" "decision or action" "in the [Secretary's] discretion[.]" 8 U.S.C. § 1252(a)(2)(B)(ii). That includes decisions big and small.

Indeed, if Congress had intended § 1252(a)(2)(B)(ii) to be applicable only to a discrete "decision or action" in an "individual" case, it could have imported language from neighboring § 1252(a)(2)(A)(i) or (iii). *See* 8 U.S.C. § 1252(a)(2)(A)(i) (providing that "no court shall have jurisdiction to review— … any *individual determination*…"); § 1252(a)(2)(A)(iii) (providing that "no court shall have jurisdiction to review— the application of such section to *individual*

*aliens*…") (emphases added). The fact that Congress has specified when litigation is permitted and prohibited supports the position that § 1252(a)(2)(B)(ii) withdraws review of a "decision or action" relating to § 1182(d)(5) parole. "Where Congress intended to deny subject-matter jurisdiction over a particular class of claims, it did so unambiguously." *Biden v. Texas*, 597 U.S. 785, 799 (2022) (noting § 1252(a)(2) . . . "is entitled 'Matters not subject to judicial review' and provides that '*no court shall have jurisdiction to review*'"). "Nothing in the relevant immigration statutes…suggests that Congress wanted the Federal Judiciary to improperly second-guess the [Executive's] judgment with respect to American foreign policy." *Id.* at 816 (Kavanaugh, J., concurring). Thus, the Court lacks jurisdiction to review decisions or actions related to parole processing and procedures.

### B. 8 U.S.C. § 1182(d)(5) provides that grants of humanitarian parole are limited to a case-by-case basis but grants the Secretary discretion over the process.

Section 702 of the APA confers a general cause of action upon persons "adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. That cause of action is withdrawn where "statutes preclude judicial review" or the "agency action is committed to agency discretion by law." *Id.* § 701(a)(1)-(2). Thus, the waiver of sovereign immunity under the APA does not apply under either of these provisions. Further, an unadmitted, nonresident foreign national does not have any right to entry into the United States. *Kerry v. Din*, 576 U.S. 86, 88 (2015) (plurality op.) (citing *Kleindienst v. Mandel*, 408 U.S. 753, 762 (1972) ("It is clear that…an unadmitted and nonresident alien [] ha[s] no constitutional right of entry to this country as a nonimmigrant or otherwise."). The Supreme Court has further explained "[t]the exclusion of aliens is a fundamental act of sovereignty" that the Constitution entrusts to the political branches. *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542 (1950).

This Court has no authority to compel Defendants to adjudicate Plaintiff's parole applications under certain standards because nothing in 8 U.S.C. § 1182(d)(5)(A) or the regulations

*requires* Defendants to adjudicate parole requests at all, much less at a specific time. *Lovo v. Miller*, 107 F.4th 199, 216 (4th Cir. 2024) (where "neither Congress nor USCIS itself has ever bound USCIS to adjudicate these applications, the federal courts lack jurisdiction to consider Plaintiffs' APA claim [to compel adjudication]"); *accord V.U.C. v. USCIS*, 557 F. Supp. 3d 218, 222 (D. Mass. 2021). The only statutory limitations placed on the Secretary's exercise of parole authority relates to when parole may be *granted*. *See* 8 U.S.C. § 1182(d)(5)(A), (C). The court's authority under the APA to compel agency action can "proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004). Where an agency is not required to do something, a court cannot compel the agency to act. *See id.* at 64 n.1. Thus, the how, when, and procedural methodology (so long as parole is "solely [] granted on a case-by-case basis") for paroling are subject to agency discretion and may not be reviewed in an APA challenge. *See Heckler v. Chaney*, 470 U.S. 821, 830 (1985) ("review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion"). Per statute, parole is a *discretionary* and may only be *granted* on a case-by-case basis. 8 U.S.C. § 1182(d)(5)(A).

Although this Court previously ruled that "there exists a non-discretionary duty to act on and process the application[s]," ECF No. 31 at 5, the FAC no longer argues unreasonable delay as a cause of action, but rather that Defendants' general management of the adjudication process was not in accordance with the law and was arbitrary and capricious. But nothing in the statute or regulation requires USCIS to accept or adjudicate applications; rather, the statute grants the Secretary discretion to determine what cases might warrant a discretionary exercise of parole authority. "Complete discretion to make a determination necessarily includes the authority to implement practices and procedures for how that determination is made." *Davidson v. Mayorkas*,

599 F. Supp. 3d 767, 772 (W.D. Wis. 2022). Defendants would be well within their statutory discretion to decide that parole applications from broad categories of aliens—such as, e.g., members or supporters of terrorist organizations—would not merit a favorable exercise of parole discretion. *See Bourfa*, 604 U.S. at 18 ("[A] use-it-or-lose-it theory of agency discretion creates perverse incentives, encouraging an agency to act arbitrarily… or risk losing congressionally granted insulation from judicial review."); *see also Jeanty v. Bulger*, 204 F. Supp. 2d 1366, 1379 (S.D. Fla. 2002) (finding "a policy of denying parole to inadmissible Haitian nationals based on specific policy concerns" permissible under the statute, Supreme Court precedent, and the Constitution), *aff'd sub nom.*, *Moise v. Bulger*, 321 F.3d 1336 (11th Cir. 2003). The APA demands more before a Court can proceed to exercise jurisdiction over the inner working of an executive agency. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990) ("[R]espondent cannot seek *wholesale* improvement of this program by court decree…. Under the terms of the APA, respondent must direct its attack against some particular 'agency action'"). Since both 5 U.S.C. § 701(a)(1) and (a)(2) apply here, and Plaintiffs lack any interest in entry (or others' entry) into the United States, this Court should dismiss the FAC under Rule 12(b)(1).

## II.    The Court should Dismiss the Complaint Under Rule 12(b)(6).

Dismissal based on Rule 12(b)(6) is appropriate if a plaintiff's complaint fails to provide the grounds of their entitlement to relief beyond mere labels, conclusions, or formulaic recitation of the elements of a cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (the "tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements"). If the allegations give rise to an obvious alternative explanation, then the complaint may "stop[ ] short of the line between possibility and plausibility of 'entitle[ment] to

relief.'" *Iqbal*, 556 U.S. at 678. Plaintiffs incorporate by reference the programmatic administrative record already filed in this case, which fails to support their arguments and only shows that their arguments are legally and factually flawed. *See* FAC, Ex. A–J (ECF Nos. 80-2–80-11); USCIS-0001–USCIS-1318, ECF No. 45. [11]

Here, Plaintiffs assert Defendants implemented new, unfavorable parole adjudication standards for Afghan applications beginning in September 2021 which differed from alleged policies prior to September 2021 that offered more "lenient guidelines for case-by-case adjudications." FAC ¶¶ 73, 79. An obvious alternate explanation exists here: that Defendants are processing parole requests within the confines of 8 U.S.C. § 1182(d)(5)(A), within a once rarely-used process that was never designed for such large-scale processing, *see* USCIS-0194–95, and Defendants are merely contending with backlogs about which they have been transparent. *See, e.g.*, USCIS-0847–61. During the Evacuation, USCIS worked overtime and weekends to adjudicate (and grant) parole quickly in aid of the Evacuation. USCIS-0315, USCIS-0330 ("USCIS prioritized the requests for parole for individuals inside Afghanistan during the evacuation. Staff worked overtime and weekends to approve those cases that were approvable…"); USCIS-343 ("During the evacuation phase… HAB weighed the evacuation process heavily, against some traditional evidentiary requirements, and expedited all Afghan cases… to provide US operations on the ground in Kabul with information that would help summon individuals to the airport for evacuation"). Plaintiffs essentially claim that USCIS's heroism during the Evacuation set a binding, permanent "policy" that it was bound to follow indefinitely. Based on the record, Plaintiffs fail to state a claim that the Evacuation was itself a policy from which USCIS

---

[11] *Atieh*'s constraints on a 12(b)(6) motion in the APA context do not apply where, as here in the instant matter, the Court has a record by which to measure the plausibility of Plaintiffs' allegations. *See Atieh v. Riordan*, 727 F.3d 73, 76 n.4 (1st Cir. 2013).

later departed in violation of the APA. Indeed, it is doubtful that the "change-in-position doctrine" applies at all in this context. *See FDA v. Wages and White Lion Invs., L.L.C.*, 145 S. Ct. 898, 918 n.5 (2025) ("assum[ing], without deciding, that the change-in-position doctrine applies to an agency's divergence from a position articulated in nonbinding guidance documents," noting that the doctrine has traditionally been applied "when an agency shifts from a position expressed in a more formal setting").

### A. Conflation and distortion of the record is insufficient to state a claim.

Plaintiffs next attempt to prove their claims by pointing to the Department of Homeland Security's ("DHS") implementation of special parole processes for Cubans, Haitians, Nicaraguans, and Venezuelans ("CHNV") or Ukrainians (Uniting for Ukraine). FAC ¶¶ 59, Ex. I–J. Conflating the Form I-131 process used by Plaintiffs in this litigation with other unrelated processes administered at the departmental level—i.e., by a different office than the one adjudicating Plaintiffs' applications—does not establish the plausibility of Plaintiffs' claims, especially when the Court considers that over 115,000 Afghans were paroled through Operation Allies Welcome,[12] another process administered outside of the narrower Form I-131 process at issue here. Even if the conflation could be ignored, the fact that parole was granted to others does not mean that Plaintiffs are entitled to parole, or that the processing of their applications is under illegitimate means. *See Garcia-Mir v. Meese*, 788 F.2d 1446, 1451 (11th Cir. 1986) (that government may have generously granted discretionary parole in the past does not give rise to an entitlement to parole); *Bertrand v. Sava*, 684 F.2d 204, 217 (2d. Cir. 1982) (ruling that setting aside parole decisions as "illegitimate" by merely comparing Haitians to non-Haitians was ultra vires and "fatally flawed"); *see also Roe*

---

[12] *Statement from Secretary Mayorkas on the Two-Year Anniversary of Operation Allies Welcome*, DEP'T OF HOMELAND SECURITY, https://www.dhs.gov/archive/news/2023/08/29/statement-secretary-mayorkas-two-year-anniversary-operation-allies-welcome (last visited May 12, 2025).

*v. Mayorkas*, No. 22-cv-10808-ADB, 2024 U.S. Dist. LEXIS 208000, *60 nn.39-40 (D. Mass. Oct. 2, 2024) (rejecting argument that the response to Ukraine rendered response to Afghanistan arbitrary); *Saddozai v. Frank*, No. 86-1652-Y, 1986 U.S. Dist. LEXIS 23691, *12 (D. Mass. June 25, 1986) (rejecting argument that parole of 33 other Afghans means that plaintiff must be paroled). Merely pointing to favorable outcomes for others does not prove Plaintiffs' claim that USCIS implemented a "blanket policy" to the detriment of Afghan beneficiaries. Plaintiffs completely fail to acknowledge that through the Form I-131 process, Afghans received preferential treatment and experienced elevated approval rates as compared to others: far from a "categorical rule[]… [to] den[y], revo[ke], and fail[] to adjudicate Afghan humanitarian parole applications[,]" FAC ¶ 75. The record shows the approval rate of protection-related cases was 13% historically for all nationalities, whereas the approval rate was 45% for Afghans (as of August 1, 2023). *Compare* USCIS-0562 ("[O]ver the past six years[,]…the approval rate based on purely protection needs (refugee-like cases) has been approximately 13%...."), *with* USCIS-1146 ("the number of Afghan beneficiaries found initially eligible for parole based on adjudication on the merits (excluding closed cases) is approximately 45% (up from approximately 39% as of March 28th [2023])."). Plaintiffs nowhere square their allegations with the records before the Court, nor could they. And even if they had, neither the statute nor the Constitution forbids nation-specific parole guidance. *Jeanty*, 204 F. Supp. 2d at 1379 (holding Haitian-specific parole constraints permissible), *aff'd sub nom.*, *Moise*, 321 F.3d at 1337; *see Narenji v. Civiletti*, 617 F.2d 745, 747 (D.C. Cir. 1979) ("Distinctions on the basis of nationality may be drawn in the immigration field by the Congress or the Executive. So long as such distinctions are not wholly irrational they must be sustained.") (cited in *Kandamar v. Gonzales*, 464 F.3d 65, 73-74 (1st Cir. 2006)).

**B.  Using agency discretion when deciding parole processes and determinations under 8 U.S.C. § 1182(d)(5)(A) is not arbitrary and capricious.**

Plaintiffs further allege that Defendants acted arbitrarily and capriciously when they instituted the alleged "blanket policy to restrict favorable processing" of Afghan parole applicants. FAC ¶¶ 76–83. Further, Plaintiffs allege Defendants "ignore[d] serious reliance interests and fail[ed] to consider all relevant factors when issuing" this "policy." FAC ¶ 78, citing *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1 (2020). A court can set aside agency action if it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). When determining if the agency considered "impermissible" factors when creating a new policy, courts look at, generally, whether the agency's action was reasonable. *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 514-15 (2009). "This standard is quite narrow: a reviewing court 'may not substitute its judgment for that of the agency, even if it disagrees with the agency's conclusions.'" *Atieh*, 797 F.3d at 138 (internal citation omitted).

As an initial matter, Plaintiffs' claim there was a "blanket policy" to deny cases is utterly belied by the record, which shows that as of August 2023, the approval rate for Afghans was 45% (up from 39% five months prior). USCIS-1146. Even without the factitious blanket denial policy claim, Plaintiffs cannot show that they have *any* reliance interests in parole. An entirely discretionary benefit, such as parole under 8 U.S.C. § 1182(d)(5)(A), administered under a process that is itself discretionary, engenders no reliance interests. *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005) ("a benefit is not a protected entitlement if government officials may grant or deny it in their discretion"); *Kolster v. INS*, 101 F.3d 785, 789 (1st Cir. 1996) ("aliens do not have a cognizable reliance interest" in discretionary § 1182 relief); *Roe*, 2024 U.S. Dist. LEXIS 208000 at *60 nn. 39-40 ("[G]iven the unique nature and rarity of [humanitarian parole], the Court is not persuaded that it gives rise to reliance interests[.]"). And even if the Evacuation could be remotely or fairly considered a "policy" rather than a rapid response to emergent circumstances,

16

the two-week Evacuation is not a "longstanding" policy that creates reliance interests. *Cf. Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 222 (2016) (thirty-three years); *Fox TV Stations, Inc.*, 556 U.S. at 522 (thirty years). Parole is and always has been too discretionary to create the reliance interests Plaintiffs allege.

Second, Plaintiffs have not plausibly alleged any arbitrariness here. At most, Plaintiffs vaguely allege policy changes to the alleged detriment of Afghans in Afghanistan and Pakistan. Plaintiffs' FAC centers around the Evacuation during which time USCIS expedited and rapidly processed Afghan parole applications, FAC ¶¶ 34–44, and when the Evacuation was over, the emergency response stopped. *Id.* ¶¶ 45–49. During the Evacuation, "HAB weighed the evacuation process heavily, against some traditional evidentiary requirements, and expedited all Afghan cases…." USCIS-0343. The evidence Plaintiffs attach clearly states that "[t]he decision to expedite those cases initially was about getting people out on flights and now that the flights have ended, we need to go back to the 'normal' expedite process based on triage, not nationality," USCIS-0312, and that the Evacuation's high approval rates are "misleading because we were focusing on just **getting the approvals** out in hopes of the beneficiaries getting on an evacuation flight." USCIS-0315 (emphasis in original). Plaintiffs fail to point to any record evidence that shows how a return to "normal" parole processing after the Evacuation ended was arbitrary and capricious – indeed, the record is clear the emergent processing was *for the purpose of aiding the Evacuation*. USCIS-0312; USCIS-0343; USCIS-0543. "[W]hat may make sense in a crisis situation doesn't necessarily make sense over the long term[,]" Nov. 20, 2024 Tr. at 12:22-13:4, and Plaintiffs' claim otherwise in the FAC is meritless.

Next, Plaintiffs rely on the guidance from USCIS on November 5, 2021, noting Afghans seeking parole must leave Afghanistan to continue processing as evidence of an "effective

suspension" of parole grants to Afghans in Afghanistan and Pakistan. FAC ¶ 51. By contrast, the record shows that USCIS's "historic practice" was to "generally den[y] all requests for parole for beneficiaries who were in countries with no functioning U.S. embassy or consulate" because of the resource drain, and because "USCIS could not predict how long (months or years) it might take the beneficiary to get to a third country, if at all, and whether the beneficiary would still be eligible for parole at that time[.]" USCIS-0598-99. If anything, the record shows USCIS consistently changed approaches to help Afghans, not harm them. The suspension of operations at U.S. Embassy Kabul in late August 2021 resulted in the suspension of in-country consular services necessary to the parole process.[13] For instance, USCIS needed a U.S. embassy or consulate abroad to collect biometrics, conduct medical screening, and verify identify. 8 C.F.R. § 212.5(f); *see supra* n.1. Further, USCIS required individuals, in the midst of a global pandemic, to complete proper medical screening inaccessible in a country without consular services. *See* USCIS-1261. In the absence of a U.S. embassy or consulate in Afghanistan, USCIS therefore exercised its discretion to undertake initial review of the applications for Afghans in Afghanistan, and if initially found eligible, to administratively close requests ("purely for case tracking and workload management purposes" (USCIS-459)) pending notification that the beneficiary has relocated to a country that has U.S. consular services, such that processing may continue. *See* USCIS-0453, USCIS-0598-99.

Last, Plaintiffs further point to USCIS's prioritization of individuals located outside of Afghanistan in locations with U.S. embassies or consulates in support of their "blanket denial" argument. *Id.* ¶¶ 53–56. However, the then USCIS Director herself clearly stated that "we decided to prioritize [Afghans] outside Afghanistan because they clearly have a much more realistic path to the U.S." USCIS-0413-15. Plaintiffs nowhere explain what text in § 1182(d)(5)(A) bars such a

---

[13] *Supra* n.3; *see*, *e.g.*, USCIS-41, USCIS-50; USCIS-0561; USCIS-0649; USCIS-0712; USCIS-0730; USCIS-0734.

pragmatic approach to allocating resources to the areas of greatest effect. As Plaintiffs fail to articulate how the Secretary actions are not authorized by § 1182(d)(5), Plaintiffs do not state an APA claim by merely ignoring the rationales provided by the agency.

Perplexingly, Plaintiffs' also claim "USCIS decided that Afghans in Pakistan would not be able to consular process in Pakistan[,]" but not a scintilla of record evidence supports it. There are no facts in the record that even imply that parole for Afghans in Pakistan was "effectively" suspended. Pakistan has an operating embassy where individuals could continue parole processing,[14] and when USCIS discussed examples of countries where beneficiaries could not be processed, Pakistan was not among them. *See* USCIS-0712 ("Afghan beneficiaries who are in another location without a U.S. embassy or consulate that provides visa services, such as Iran or Russia, would similarly need to arrange travel to another country with a U.S. embassy or consulate….").[15]  Further, the record shows examples of where Afghan beneficiaries in Pakistan have been processed and approved. USCIS-566, USCIS-588 (noting an Afghan's relocation to Pakistan was "a good reason for us to reopen and reconsider."), USCIS-766.  Further, the record implies that Afghans in Pakistan were extended *favorable* inferences that alternatives to parole were not available there. USCIS-575; USCIS-0766; USCIS-0769.

Plaintiffs cannot show that the inability to complete an approval process that requires consular services in countries without consular services is tantamount to a "policy." Plaintiffs' request to order USCIS to rapidly approve Plaintiffs' applications as if the United States still had an ongoing military Evacuation from Afghanistan is to task the Court with ignoring the records in this case, and—perhaps more importantly—reality. As explained in *supra* Argument § II.A, merely pointing to favorable outcomes for others (including other Afghans) does not allege a

---

[14] *U.S. Embassy & Consulates In Pakistan*, https://pk.usembassy.gov/ (last visited May 2, 2025).
[15] This is not an exclusive list, but rather the most likely examples.

plausible claim here. Because Plaintiffs have not identified discrete and final agency actions that are arbitrary and capricious or in violation of law, Plaintiffs' claims fail.

### III.    Bad Faith Is Not A Valid Cause of Action.

In Count IV ("Bad Faith"), Plaintiffs allege that "USCIS has articulated no bona fide, facially legitimate, or reasonable basis for its failure and/or refusal to progress the humanitarian parole applications of Plaintiffs," FAC ¶ 89. While Defendants agree "facially legitimate and bona fide" would be the proper standard of review if both jurisdiction and a constitutional claim were shown, *Amanullah*, 811 F.2d at 10, Count IV is not a freestanding cause of action. The FAC identifies no federal statute or waiver of sovereign immunity upon which this claim is predicated. *See* FAC at 21. Theories, arguments, and sub-components of other causes of action are usually not causes of action in and of themselves. *See Aguilar v. U.S. ICE of DHS*, 510 F.3d 1, 16 (1st Cir. 2007) ("A pattern and practice claim is not a freestanding cause of action but merely a method of proving an underlying legal violation."); *Lewis v. United States*, 483 F. Supp. 3d 382, 395 (M.D. La. 2018) (agreeing "bias" and "estoppel" are not freestanding causes of action for which sovereign immunity has been waived); *Lion Raisins, Inc. v. USDA*, 636 F. Supp. 2d 1081, 1114 (E.D. Cal. 2009) ("[Plaintiff] has not advanced any argument that a compensable, independent claim for 'bad faith' is cognizable in tort, contract, or under an applicable federal statute"). Thus, Plaintiffs' bad faith claim should be dismissed to the extent it is brought as a standalone claim.

## <u>CONCLUSION</u>

For the above reasons, Defendants ask that the Court GRANT its Motion to Dismiss and dismiss Plaintiffs' entire Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

Dated: May 30, 2025                         Respectfully submitted,

                                            YAAKOV M. ROTH
                                            Acting Assistant Attorney General

                                            WILLIAM C. PEACHEY
                                            Director
                                            Office of Immigration Litigation

                                            YAMILETH G. DAVILA
                                            Assistant Director

                                            DAVID J. BYERLEY
                                            ERHAN BEDESTANI
                                            Trial Attorneys

                                            */s/ Jaime A. Scott*
                                            JAIME A. SCOTT (DC Bar # 90027182)
                                            Trial Attorney
                                            U.S. Department of Justice
                                            Office of Immigration Litigation
                                            P.O. Box 868, Washington D.C. 20044
                                            Tel: 202-305-3620
                                            Email: Jaime.A.Scott@usdoj.gov

                                            *Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed on May 30, 2025, through the ECF system will

be sent electronically to the registered participants as identified on the Notice of Electronic Filing

(NEF).

Respectfully Submitted,

*/s/ Jaime A. Scott*
JAIME A. SCOTT
Trial Attorney
Department of Justice
Office of Immigration Litigation

*Attorney for Defendants*